**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ORTHOPHOENIX, LLC, | |
| Plaintiff | C.A. No. _____ |
| v. | |
| STRYKER CORPORATION;<br>JOHN AND/OR JANE DOES 1-100, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Orthophoenix, LLC ("Orthophoenix") alleges as follows:

### PARTIES

1.      Orthophoenix is a Delaware limited liability company with a principal place of business located at 2515 McKinney Avenue, Suite 1000-B, Dallas, Texas 75201.

2.      Defendant Stryker Corporation ("Stryker") is a Michigan corporation with a principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002. Stryker has appointed The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025, as its agent for service of process.

3.      Defendants John and/or Jane Does 1-100 ("Does") are orthopedic surgeons using the infringing products manufactured by Defendant Stryker. Does' identities are not presently known to Orthophoenix; however, on information and belief, Defendant Stryker is in possession of documents and information from which Does' identities can be readily ascertained.

## JURISDICTION AND VENUE

4.      This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5.      This Court has personal jurisdiction over Defendant Stryker because, among other reasons, Defendant Stryker has established minimum contacts with the forum state of Delaware.  Defendant Stryker, directly and/or through third-party intermediaries, makes, uses, imports, offers for sale, and/or sells products or performs infringing medical procedures within the state of Delaware.  Thus, Defendant Stryker has purposefully availed itself of the benefits of the State of Delaware and the exercise of jurisdiction over Stryker would not offend traditional notions of fair play and substantial justice.

6.      Venue is proper in this District under 28 U.S.C. §§ 1391 (b)-(c) and 1400(b) because Defendant is subject to personal jurisdiction in this District.

## BACKGROUND

7.      In 1994 Dr. Mark Reiley, an orthopedic surgeon from Berkeley, California, Mr. Arie Scholten, an engineer and inventor of surgical products, and Dr. Karen Talmadge, a Harvard University biochemist, founded Kyphon Inc. ("Kyphon"). Kyphon quickly came to be recognized as the global leader in restoring spinal function through minimally invasive therapies via its innovative, and then disruptive, technology. Kyphon relentlessly pursued novel solutions and their translation into practice.  Dr. Reiley performed the first balloon kyphoplasty in 1998; today, over 11,000 physicians throughout the world have been trained to perform balloon kyphoplasty.

8.      Due to Kyphon's dedication to developing pioneering medical technologies, it was awarded over 500 U.S. Patents and Applications.

9.      Kyphon became the industry leader and Dr. Karen Talmadge, then Executive Vice President, Co-Founder, and Chief Science Officer was given the Patient Quality of Life Award in November 2004 by the International Myeloma Foundation. This award recognized the impact of balloon kyphoplasty in helping myeloma patients with spinal fractures return to their daily lives.  In the same year, Kyphon was named the top emerging medical device company in the industry by a group of 150 medical device CEOs.

10.     The significant value of Kyphon and its patents is reflected in the $4.2 billion purchase price Medtronic, Inc. ("Medtronic") paid for Kyphon in 2007.

11.     Medtronic is a world leader in medical device technologies and therapies. Medtronic specializes in developing and manufacturing medical device technologies and therapies to treat chronic disease worldwide.  On April 26, 2013, Orthophoenix completed a transaction to acquire the Kyphon technology, which includes approximately 500 patents and applications.

12.     On May 22, 2013, Orthophoenix, through its licensing agent, entered into a confidentiality and forbearance agreement (FBA) with Stryker to facilitate Orthophoenix and Stryker conducting discussions regarding the Orthophoenix patent portfolio.  These discussions continued until the initial expiration of the FBA, at which time Orthophoenix and Stryker extended the FBA through September 30, 2013. Orthophoenix believes these discussions were useful, but ultimately no agreement was reached over the approximate four and a half month period.

## ASSERTED PATENTS

13.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,248,110 (the "'110 patent"). The '110 patent is entitled "Systems And Methods For Treating Fractured Or Diseased Bone Using Expandable Bodies." The '110 patent issued on June 19, 2001. A true and correct copy of the '110 patent is attached hereto as Exhibit A.

14.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,981,981 (the "'981 patent"). The '981 patent is entitled "Inflatable Device For Use In Surgical Protocol Relating To Fixation Of Bone." The '981 patent issued on January 3, 2006. A true and correct copy of the '981 patent is attached hereto as Exhibit B.

15.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,663,647 (the "'647 patent"). The '647 patent is entitled "Inflatable Device For Use In Surgical Protocol Relating To Fixation Of Bone." The '647 patent issued on December 16, 2003. A true and correct copy of the '647 patent is attached hereto as Exhibit C.

16.     Orthophoenix is the owner by assignment of U.S. Patent No. 7,044,954 (the "'954 patent"). The '954 patent is entitled "Method For Treating A Vertebral Body." The '954 patent issued on May 16, 2006. A true and correct copy of the '954 patent is attached hereto as Exhibit D.

17.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,280,456 (the "'456 patent"). The '456 patent is entitled "Methods For Treating Bone." The '456 patent issued on August 28, 2001. A true and correct copy of the '456 patent is attached hereto as Exhibit E.

18.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,623,505 (the "'505 patent"). The '505 patent is entitled "Expandable Structures For Deployment

In Interior Body Regions."  The '505 patent issued on September 23, 2003.  A true and correct copy of the '505 patent is attached hereto as Exhibit F.

19.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,440,138 (the "'138 patent").  The '138 patent is entitled "Structures and Methods For Creating Cavities In Interior Body Regions."  The '138 patent issued on August 27, 2002.  A true and correct copy of the '138 patent is attached hereto as Exhibit G.

20.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,863,672 (the "'672 patent").  The '672 patent is entitled "Structures And Methods For Creating Cavities In Interior Body Regions."  The '672 patent issued on March 8, 2005.  A true and correct copy of the '672 patent is attached hereto as Exhibit H.

21.     Orthophoenix is the owner by assignment of U.S. Patent No. 7,153,307 (the "'307 patent").  The '307 patent is entitled "Systems And Methods For Placing Materials Into Bone."  The '307 patent issued on December 26, 2006.  A true and correct copy of the '307 patent is attached hereto as Exhibit I.

22.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,241,734 (the "'734 patent").  The '734 patent is entitled "Systems And Methods For Placing Materials Into Bone."  The '734 patent issued on June 5, 2001.  A true and correct copy of the '734 patent is attached hereto as Exhibit J.

## COUNT I
## (Infringement of U.S. Patent No. 6,248,110)

23.     Orthophoenix references and incorporates by reference paragraphs 1 through 22 of this Complaint.

24.     Stryker has been and still is infringing at least Claim 3 of the '110 patent, literally and under the doctrine of equivalents, by using surgical instruments, including

but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of example only, Stryker directly infringes the '110 patent by using the iVAS Inflatable Vertebral Augmentation System to perform the method described in Claim 3.

25.     Defendants Does have been and still are infringing at least Claim 3 of the '110 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker, in the manner instructed and taught by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation System is approved for use by the FDA.

26.     Stryker has also infringed indirectly and continues to infringe indirectly the '110 patent by active inducement under 35 U.S.C. § 271(b).

27.     Upon information and belief, Stryker gained knowledge of the '110 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product. *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/ HowtoMarketYourDevice/PremarketSubmissions/PremarketNotification510k/ucm13457 1.htm.  On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked with the '110 patent.  On information and belief, by analyzing the Kyphon Kyphx

Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it

is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '110

patent at least as early as 2010.

28.     On information and belief, Stryker has intended, and continues to intend,

to induce patent infringement by third-party physicians and has had knowledge that the

inducing acts would cause infringement or has been willfully blind to the possibility that

its inducing acts would cause infringement.  For example, Stryker provides training and

instruction materials to physicians on how to use the infringing surgical instruments,

including but not limited to the iVAS Inflatable Vertebral Augmentation System, to

perform surgical procedures during which physicians use the surgical instruments to

compact cancellous bone.  By using the infringing surgical instruments, including the

iVAS Inflatable Vertebral Augmentation System, to compact cancellous bone as

instructed and trained by Stryker, physicians directly infringe at least Claim 3 of the '110

patent.  By continuing to provide instruction and training to physicians on how to use its

surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to

perform procedures during which physicians compact cancellous bone in the manner

described in Claim 3 of the '110 patent, Stryker has and continues to specifically intend

to induce infringement of the '110 patent.

29.     Since at least 2010, Stryker has been and still is willfully infringing the

'110 patent.  At least as early as 2010, Stryker had actual knowledge of the '110 patent.

Despite having actual knowledge of the '110 patent, Stryker has continued to willfully,

wantonly, and deliberately infringe the '110 patent.  Accordingly, Orthophoenix seeks

enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional

case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

30.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '110 patent.

31.     As a result of Defendants' infringement of the '110 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

32.     Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '110 patent, Orthophoenix will be greatly and irreparably harmed.

## COUNT II
## (Infringement of U.S. Patent No. 6,981,981)

33.     Orthophoenix references and incorporates by reference paragraphs 1 through 32 of this Complaint.

34.     Stryker has been and still is infringing at least Claim 1 of the '981 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of example only, Stryker directly infringes the '981 patent by using the iVAS Inflatable Vertebral Augmentation System to perform the method described in Claim 1.

35.     Defendants Does have been and still are infringing at least Claim 1 of the '981 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker in the manner instructed and taught by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation System is approved for use by the FDA.

36.     Stryker has also infringed indirectly and continues to infringe indirectly the '981 patent by active inducement under 35 U.S.C. § 271(b).

37.     Upon information and belief, Stryker had knowledge of the '981 patent since at least as early as 2012.  Stryker cited the '981 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,246,627.

38.     On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, in surgical procedures during which physicians use the surgical instruments to compact cancellous bone and fill the void created through such compacting with filling material. By using the infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to compact cancellous bone then fill the void created through such compacting with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '981 patent.  By continuing to provide instruction and

training to physicians on how to use its surgical instruments, including the iVAS

Inflatable Vertebral Augmentation System, to perform procedures during which

physicians compact cancellous bone then fill the void created through such compacting

with filling material in the manner described in Claim 1 of the '981 patent, Stryker has

and continues to specifically intend to induce infringement of the '981 patent.

39.     Stryker has also infringed indirectly and continues to infringe indirectly

the '981 patent by contributory infringement under 35 U.S.C. § 271(c).

40.     Stryker has and continues to intentionally commit contributory

infringement by selling, offering to sell, or importing the infringing surgical instruments,

including but not limited to the iVAS Inflatable Vertebral Augmentation System, with the

knowledge that the iVAS Inflatable Vertebral Augmentation System will be used by

physicians to directly infringe at least Claim 1 of the '981 patent.

41.     Stryker had knowledge of the '981 patent since at least 2012.  Since at

least 2012, Stryker has had knowledge that the surgical instruments, including the iVAS

Inflatable Vertebral Augmentation System, are material components to practicing the

surgical procedures claimed in the '981 patent, that the surgical instruments are not staple

articles or commodities of commerce suitable for substantial non-infringing use, and that

the instruments are especially made and/or adapted for use in infringing the '981 patent.

For example, despite having knowledge that the iVAS Inflatable Vertebral Augmentation

System is used by physicians to perform surgical procedures infringing the '981 patent,

Stryker continues to provide instruction and training to physicians on how to use the

iVAS Inflatable Vertebral Augmentation System in a manner that directly infringes at

least Claim 1 of the '981 patent.  Stryker does not provide instructions or training on the

use of the iVAS Inflatable Vertebral Augmentation System in a manner that does not infringe the '981 patent.  Furthermore, upon information and belief, the FDA has only approved the iVAS Inflatable Vertebral Augmentation System for use in surgical procedures that infringe the '981 patent.

42.     Since at least 2012, Stryker has been and still is willfully infringing the '981 patent.  At least as early as 2012, Stryker had actual knowledge of the '981 patent. Despite having actual knowledge of the '981 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '981 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

43.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '981 patent.

44.     As a result of Defendants' infringement of the '981 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

45.     Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '981 patent, Orthophoenix will be greatly and irreparably harmed.

**COUNT III**
**(Infringement of U.S. Patent No. 6,663,647)**

46.     Orthophoenix references and incorporates by reference paragraphs 1 through 45 of this Complaint.

47.     Stryker has been and still is infringing at least Claim 37 of the '647 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System.

48.     Defendant Does have been and still are infringing at least Claim 37 of the '647 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker.

49.     Stryker has also infringed indirectly and continues to infringe indirectly the '647 patent by active inducement under 35 U.S.C. § 271(b).

50.     Upon information and belief, Stryker gained knowledge of the '647 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product.  *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/ HowtoMarketYourDevice/PremarketSubmissions/PremarketNotification510k/ucm13457

1.htm.  On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked with the '647 patent.  On information and belief, by analyzing the Kyphon Kyphx Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '647 patent at least as early as 2010.

51.     On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, during the performance of surgical procedures during which physicians use devices described by Claim 37.  By using the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, during procedures during which physicians use devices described by Claim 37 as instructed and trained by Stryker, physicians directly infringe at least Claim 37 of the '647 patent.  By continuing to provide instruction and training on the use of the iVAS Inflatable Vertebral Augmentation System to physicians despite its knowledge that the iVAS Inflatable Vertebral Augmentation System infringes the '647 patent, Stryker has and continues to specifically intend to induce infringement of the '647 patent.

52.     Since at least 2010, Stryker has been and still is willfully infringing the '647 patent.  At least as early as 2010, Stryker had actual knowledge of the '647 patent.  Despite having actual knowledge of the '647 patent, Stryker has continued to willfully,

wantonly, and deliberately infringe the '647 patent.  Accordingly, Orthophoenix seeks

enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional

case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees

and expenses.

53.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been

met with respect to the '647 patent.

54.     As a result of Defendants' infringement of the '647 patent, Orthophoenix

has suffered monetary damages in an amount adequate to compensate for Defendants'

infringement, but in no event less than a reasonable royalty for the use made of the

invention by Defendants, together with interest and costs as fixed by the Court, and

Orthophoenix will continue to suffer damages in the future unless Defendants' infringing

activities are enjoined by this Court.

55.     Unless a permanent injunction is issued enjoining Defendants' and their

agents, servants, employees, representatives, affiliates, and all others acting or in active

concert therewith from infringing the '647 patent, Orthophoenix will be greatly and

irreparably harmed.

## COUNT IV
### (Infringement of U.S. Patent No. 7,044,954)

56.     Orthophoenix references and incorporates by reference paragraphs 1

through 55 of this Complaint.

57.     Stryker has been and still is infringing at least Claim 1 of the '954 patent,

literally and under the doctrine of equivalents, by using surgical instruments, including

but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of

example only, Stryker directly infringes the '954 patent by using the iVAS Inflatable

Vertebral Augmentation System to perform the method described in Claim 1.

58.     Defendants Does have been and still are infringing at least Claim 1 of the

'954 patent, literally and under the doctrine of equivalents, by using, without license or

authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral

Augmentation System Does purchased from Stryker in the manner instructed and taught

by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation

System is approved for use by the FDA.

59.     Stryker has also infringed indirectly and continues to infringe indirectly

the '954 patent by active inducement under 35 U.S.C. § 271(b).

60.     At least after being served with the Complaint in this action, Stryker has

had knowledge of the '954 patent.

61.     On information and belief, Stryker has intended, and continues to intend,

to induce patent infringement by third-party physicians and has had knowledge that the

inducing acts would cause infringement or has been willfully blind to the possibility that

its inducing acts would cause infringement.  For example, Stryker provides training and

instruction materials to physicians on how to use the infringing surgical instruments,

including but not limited to the iVAS Inflatable Vertebral Augmentation System, during

the performance of surgical procedures during which physicians use surgical instruments

to compact cancellous bone then fill the void created through such compacting with

filling material.  By using the infringing surgical instruments, including the iVAS

Inflatable Vertebral Augmentation System, to compact cancellous bone then fill the void

created through such compacting with filling material as instructed and trained by

Stryker, physicians directly infringe at least Claim 1 of the '954 patent.  By continuing to

provide instruction and training to physicians on how to use its surgical instruments,

including the iVAS Inflatable Vertebral Augmentation System, to perform procedures

during which physicians compact cancellous bone then fill the void created through such

compacting with filling material in the manner described in Claim 1 of the '954 patent,

Stryker has and continues to specifically intend to induce infringement of the '954 patent.

62.     Stryker has also infringed indirectly and continues to infringe indirectly

the '954 patent by contributory infringement under 35 U.S.C. § 271(c).

63.     Stryker has and continues to intentionally commit contributory

infringement by selling, offering to sell, or importing the infringing surgical instruments,

including but not limited to the iVAS Inflatable Vertebral Augmentation System, with the

knowledge that the iVAS Inflatable Vertebral Augmentation System will be used by

physicians to directly infringe at least Claim 1 of the '954 patent.

64.     Stryker had knowledge of the '954 patent since at least after being served

with the Complaint in this action.  Stryker has had knowledge that the surgical

instruments, including the iVAS Inflatable Vertebral Augmentation System, are material

components to practicing the surgical procedures claimed in the '954 patent, that the

surgical instruments are not staple articles or commodities of commerce suitable for

substantial non-infringing use, and that the instruments are especially made and/or

adapted for use in infringing the '954 patent.  For example, despite having knowledge

that the iVAS Inflatable Vertebral Augmentation System is used by physicians to perform

surgical procedures infringing the '954 patent, Stryker continues to provide instruction

and training to physicians on how to use the iVAS Inflatable Vertebral Augmentation

System in a manner that directly infringes at least Claim 1 of the '954 patent.  Stryker

does not provide instructions or training on the use of the iVAS Inflatable Vertebral

Augmentation System in a manner that does not infringe the '954 patent.  Furthermore,

upon information and belief, the FDA has only approved the iVAS Inflatable Vertebral

Augmentation System for use in surgical procedures that infringe the '954 patent.

65.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been

met with respect to the '954 patent.

66.     As a result of Defendants' infringement of the '954 patent, Orthophoenix

has suffered monetary damages in an amount adequate to compensate for Defendants'

infringement, but in no event less than a reasonable royalty for the use made of the

invention by Defendants, together with interest and costs as fixed by the Court, and

Orthophoenix will continue to suffer damages in the future unless Defendants' infringing

activities are enjoined by this Court.

67.     Unless a permanent injunction is issued enjoining Defendants and their

agents, servants, employees, representatives, affiliates, and all others acting or in active

concert therewith from infringing the '954 patent, Orthophoenix will be greatly and

irreparably harmed.

## COUNT V
### (Infringement of U.S. Patent No. 6,280,456)

68.     Orthophoenix references and incorporates by reference paragraphs 1

through 67 of this Complaint.

69.     Stryker has been and still is infringing at least Claim 1 of the '456 patent,

literally and under the doctrine of equivalents, by using surgical instruments, including

but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of

example only, Stryker directly infringes the '456 patent by using the iVAS Inflatable

Vertebral Augmentation System to perform the method described in Claim 1.

70.     Defendants Does have been and still are infringing at least Claim 1 of the

'456 patent, literally and under the doctrine of equivalents, by using, without license or

authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral

Augmentation System Does purchased from Stryker in the manner instructed and taught

by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation

System is approved for use by the FDA.

71.     Stryker has also infringed indirectly and continues to infringe indirectly

the '456 patent by active inducement under 35 U.S.C. § 271(b).

72.     Upon information and belief, Stryker gained knowledge of the '456 patent

at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander

Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter,

which is a component of the iVAS Inflatable Vertebral Augmentation System, in its

request to market the iVAS Balloon Catheter in the United States, which was submitted

to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a

"predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon

Catheter is "substantially equivalent" to the Kyphon product.  *See, e.g.*,

http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/

HowtoMarketYourDevice/PremarketSubmissions/PremarketNotification510k/ucm13457

1.htm.  On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked

with the '456 patent.  On information and belief, by analyzing the Kyphon Kyphx

Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it

is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '456 patent at least as early as 2010. Alternatively, upon information and belief, Stryker had knowledge of the '456 patent since at least as early as 2010. Stryker cited the '456 patent in the following U.S. Patent, which was issued in 2010: U.S. Patent No. D626,233. Alternatively, upon information and belief, Stryker had knowledge of the '456 patent since at least as early as 2012. Stryker cited the '456 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,267,939.

73.     On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement. For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, during the performance of surgical procedures during which physicians use surgical instruments to compact cancellous bone. By using the infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to compact cancellous bone as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '456 patent. By continuing to provide instruction and training to physicians on how to use its surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to perform procedures during which physicians compact cancellous bone in the manner described in Claim 1 of the '456 patent, Stryker has and continues to specifically intend to induce infringement of the '456 patent.

74.    Stryker has also infringed indirectly and continues to infringe indirectly the '456 patent by contributory infringement under 35 U.S.C. § 271(c).

75.    Stryker has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, with the knowledge that the iVAS Inflatable Vertebral Augmentation System will be used by physicians to directly infringe at least Claim 1 of the '456 patent.

76.    Stryker had knowledge of the '456 patent since at least 2010.  Since at least 2010, Stryker has had knowledge that the surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, are material components to practicing the surgical procedures claimed in the '456 patent, that the surgical instruments are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the instruments are especially made and/or adapted for use in infringing the '456 patent. For example, despite having knowledge that the iVAS Inflatable Vertebral Augmentation System is used by physicians to perform surgical procedures infringing the '456 patent, Stryker continues to provide instruction and training to physicians on how to use the iVAS Inflatable Vertebral Augmentation System in a manner that directly infringes at least Claim 1 of the '456 patent.  Stryker does not provide instructions or training on the use of the iVAS Inflatable Vertebral Augmentation System in a manner that does not infringe the '456 patent.  Furthermore, upon information and belief, the FDA has only approved the iVAS Inflatable Vertebral Augmentation System for use in surgical procedures that infringe the '456 patent.

77.     Since at least 2010, Stryker has been and still is willfully infringing the '456 patent.  At least as early as 2010, Stryker had actual knowledge of the '456 patent.  Despite having actual knowledge of the '456 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '456 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

78.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '456 patent.

79.     As a result of Defendants' infringement of the '456 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

80.     Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '456 patent, Orthophoenix will be greatly and irreparably harmed.

## COUNT VI
## (Infringement of U.S. Patent No. 6,623,505)

81.     Orthophoenix references and incorporates by reference paragraphs 1 through 80 of this Complaint.

82.    Stryker has been and still is infringing at least Claim 1 of the '505 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System.

83.    Defendant Does have been and still are infringing at least Claim 1 of the '505 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System, Does purchased from Stryker.

84.    Stryker has also infringed indirectly and continues to infringe indirectly the '505 patent by active inducement under 35 U.S.C. § 271(b).

85.    Upon information and belief, Stryker gained knowledge of the '505 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product.  *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/ HowtoMarketYourDevice/PremarketSubmissions/PremarketNotification510k/ucm13457 1.htm.  On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked

with the '505 patent.  On information and belief, by analyzing the Kyphon Kyphx

Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it

is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '505

patent at least as early as 2010.

      86.     On information and belief, Stryker has intended, and continues to intend,

to induce patent infringement by third-party physicians and has had knowledge that the

inducing acts would cause infringement or has been willfully blind to the possibility that

its inducing acts would cause infringement.  For example, Stryker provides training and

instruction materials to physicians on how to use the infringing surgical instruments,

including the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral

Augmentation System, during the performance of surgical procedures during which

physicians use devices described by Claim 1.  By using the infringing surgical

instruments, including but not limited to the iVAS Balloon Catheter, a component of the

iVAS Inflatable Vertebral Augmentation System, during procedures during which

physicians use devices described by Claim 1 as instructed and trained by Stryker,

physicians directly infringe at least Claim 1 of the '505 patent.  By continuing to provide

instruction and training on the use of the iVAS Balloon Catheter, a component of the

iVAS Inflatable Vertebral Augmentation System, to physicians despite its knowledge that

the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation

System, infringes the '505 patent, Stryker has and continues to specifically intend to

induce infringement of the '505 patent.

      87.     Since at least 2010, Stryker has been and still is willfully infringing the

'505 patent.  At least as early as 2010, Stryker had actual knowledge of the '505 patent.

Despite having actual knowledge of the '505 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '505 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

88.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '505 patent.

89.     As a result of Defendants' infringement of the '505 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

90.     Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '505 patent, Orthophoenix will be greatly and irreparably harmed.

## COUNT VII
## (Infringement of U.S. Patent No. 6,440,138)

91.     Orthophoenix references and incorporates by reference paragraphs 1 through 90 of this Complaint.

92.     Stryker has been and still is infringing at least Claim 1 of the '138 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering

to sell, or importing, without license or authority, surgical instruments including, but not limited to, the Aliquot Micro-reamer.

93.    By way of example only, with reference to Claim 1 of the '138 patent, the Aliquot Micro-reamer manufactured, sold, offered for sale, or imported by Stryker includes a cannula having an axis establishing a percutaneous path leading to inside a bone.  The Aliquot Micro-reamer includes a shaft that carries a cavity-forming structure adapted to be deployed inside bone by movement within and along the axis of the cannula.  The cavity-forming structure comprises a surface which directly contacts and shears cancellous bone in response to rotating the shaft within and about the axis of the cannula.

94.    Defendant Does have been and still are infringing at least Claim 1 of the '138 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Aliquot Micro-reamer Does purchased from Stryker.

95.    Stryker has also infringed indirectly and continues to infringe indirectly the '138 patent by active inducement under 35 U.S.C. § 271(b).

96.    Upon information and belief, Stryker had knowledge of the '138 patent since at least as early as 2012.  Stryker cited the '138 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,246,627.

97.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and

instruction materials to physicians on how to use the infringing surgical instruments, including the Aliquot Micro-reamer, during the performance of surgical procedures during which physicians create cavities in cancellous bone.  By using the infringing surgical instruments, including but not limited to the Aliquot Micro-reamer, during procedures during which physicians create cavities in cancellous bone as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '138 patent.  By continuing to provide instruction and training on the use of the Aliquot Micro-reamer to physicians despite its knowledge that the Aliquot Micro-reamer infringes the '138 patent, Stryker has and continues to specifically intend to induce infringement of the '138 patent.

98.     Since at least 2012, Stryker has been and still is willfully infringing the '138 patent.  At least as early as 2012, Stryker had actual knowledge of the '138 patent.  Despite having actual knowledge of the '138 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '138 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

99.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '138 patent.

100.    As a result of Defendants' infringement of the '138 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and

Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

101.    Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '138 patent, Orthophoenix will be greatly and irreparably harmed.

**COUNT VIII**
**(Infringement of U.S. Patent No. 6,863,672)**

102.    Orthophoenix references and incorporates by reference paragraphs 1 through 101 of this Complaint.

103.    Stryker has been and still is infringing at least Claim 19 of the '672 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the Aliquot Directional Bone Tamp.  By way of example only, Stryker directly infringes the '672 patent by performing the method of treating a vertebral body described in Claim 19.

104.    Defendants Does have been and still are infringing at least Claim 19 of the '672 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Aliquot Directional Bone Tamp Does purchased from Stryker in the manner instructed and taught by Stryker, and in the manner for which the Aliquot Directional Bone Tamp is approved for use by the FDA.

105.    Stryker has also infringed indirectly and continues to infringe indirectly the '672 patent by active inducement under 35 U.S.C. § 271(b).

106.    Upon information and belief, Stryker had knowledge of the '672 patent since at least as early as 2011.  Stryker cited the '672 patent in the following U.S. Patent, which was issued in 2011: U.S. Patent No. 8,038,679.  Alternatively, upon information and belief, Stryker had knowledge of the '672 patent since at least as early as 2012.  Stryker cited the '672 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,246,627.  Alternatively, upon information and belief, Stryker had knowledge of the '672 patent since at least as early as April 2013.  Stryker cited the '672 patent in the following U.S. Patent, which was issued in April 2013: U.S. Patent No. 8,425,518.

107.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Aliquot Directional Bone Tamp, during the performance of surgical procedures during which physicians use the infringing surgical instruments to create cavities in the cancellous bone of a vertebral body.  By using the infringing surgical instruments, including the Aliquot Directional Bone Tamp, to create cativities in cancellous bone as instructed and trained by Stryker, physicians directly infringe at least Claim 19 of the '672 patent.  By continuing to provide instruction and training to physicians on how to use the Aliquot Directional Bone Tamp to perform surgical procedures in the manner described in Claim 19 of the '672 patent, Stryker has and continues to specifically intend to induce infringement of the '672 patent.

108.    Stryker has also infringed indirectly and continues to infringe indirectly the '672 patent by contributory infringement under 35 U.S.C. § 271(c).

109.    Stryker has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing the infringing surgical instruments, including but not limited to the Aliquot Directional Bone Tamp, with the knowledge that the surgical instruments will be used by physicians to directly infringe at least Claim 19 of the '672 patent.

110.    Stryker had knowledge of the '672 patent since at least 2011.  Since at least 2011, Stryker has had knowledge that the surgical instruments, including the Aliquot Directional Bone Tamp, are material components to practicing the surgical procedures claimed in the '672 patent, that the surgical instruments are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the instruments, including the Aliquot Directional Bone Tamp, are especially made and/or adapted for use in infringing the '672 patent.  For example, despite having knowledge that the Aliquot Directional Bone Tamp is used by physicians to perform surgical procedures infringing the '672 patent, Stryker continues to provide instruction and training to physicians on how to use the Aliquot Directional Bone Tamp in a manner that directly infringes at least Claim 19 of the '672 patent.  Stryker does not provide instructions or training on the use of the Aliquot Directional Bone Tamp in a manner that does not infringe the '672 patent.  Furthermore, upon information and belief, the FDA has only approved the Aliquot Directional Bone Tamp for use in surgical procedures that infringe the '672 patent.

111.    Since at least 2011, Stryker has been and still is willfully infringing the
'672 patent.  At least as early as 2011, Stryker had actual knowledge of the '672 patent.
Despite having actual knowledge of the '672 patent, Stryker has continued to willfully,
wantonly, and deliberately infringe the '672 patent.  Accordingly, Orthophoenix seeks
enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional
case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees
and expenses.

112.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been
met with respect to the '672 patent.

113.    As a result of Defendants' infringement of the '672 patent, Orthophoenix
has suffered monetary damages in an amount adequate to compensate for Defendants'
infringement, but in no event less than a reasonable royalty for the use made of the
invention by Defendants, together with interest and costs as fixed by the Court, and
Orthophoenix will continue to suffer damages in the future unless Defendants' infringing
activities are enjoined by this Court.

114.    Unless a permanent injunction is issued enjoining Defendants and their
agents, servants, employees, representatives, affiliates, and all others acting or in active
concert therewith from infringing the '672 patent, Orthophoenix will be greatly and
irreparably harmed.

## COUNT IX
### (Infringement of U.S. Patent No. 7,153,307)

115.    Orthophoenix references and incorporates by reference paragraphs 1
through 114 of this Complaint.

116.    Stryker has been and still is infringing at least Claim 1 of the '307 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components.

117.    Defendant Does have been and still are infringing at least Claim 1 of the '307 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components Does purchased from Stryker.

118.    Stryker has also infringed indirectly and continues to infringe indirectly the '307 patent by active inducement under 35 U.S.C. § 271(b).

119.    At least after being served with the Complaint in this action, Stryker has had knowledge of the '307 patent.

120.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components, during the performance of surgical procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material.  By using the infringing

surgical instruments, including but not limited to the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components, during procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '307 patent.  By continuing to provide instruction and training on the use of the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components to physicians despite its knowledge that the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components infringe the '307 patent, Stryker has and continues to specifically intend to induce infringement of the '307 patent.

121.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '307 patent.

122.    As a result of Defendants' infringement of the '307 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

123.    Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active

concert therewith from infringing the '307 patent, Orthophoenix will be greatly and irreparably harmed.

## COUNT X
## (Infringement of U.S. Patent No. 6,241,734)

124.    Orthophoenix references and incorporates by reference paragraphs 1 through 123 of this Complaint.

125.    Stryker has been and still is infringing at least Claim 1 of the '734 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components.

126.    Defendant Does have been and still are infringing at least Claim 1 of the '734 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components Does purchased from Stryker.

127.    Stryker has also infringed indirectly and continues to infringe indirectly the '734 patent by active inducement under 35 U.S.C. § 271(b).

128.    Upon information and belief, Stryker had knowledge of the '734 patent since at least as early as 2012.  Stryker cited the '734 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,303,599.  Alternatively, upon information and belief, Stryker had knowledge of the '734 patent since at least as early as March 2013.  Stryker cited the '734 patent in the following U.S. Patent, which was issued in March 2013: U.S. Patent No. 8,403,936.

129.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components, during the performance of surgical procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material.  By using the infringing surgical instruments, including but not limited to the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components during procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '734 patent.  By continuing to provide instruction and training on the use of the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components to physicians despite its knowledge that the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components infringe the '734 patent, Stryker has and continues to specifically intend to induce infringement of the '734 patent.

130.    Since at least 2012, Stryker has been and still is willfully infringing the '734 patent.  At least as early as 2012, Stryker had actual knowledge of the '734 patent.

Despite having actual knowledge of the '734 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '734 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

131.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '734 patent.

132.    As a result of Defendants' infringement of the '734 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

133.    Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '734 patent, Orthophoenix will be greatly and irreparably harmed.

## PRAYER FOR RELIEF

Orthophoenix prays for the following relief:

1.    A judgment that Defendants have infringed one or more claims of the '110, '981, '954, '307, '456, '734, '647, '505, '138 and/or the '672 patents;

2.    A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all

others acting in active concert or participation with Defendants, from infringing the '110, '981, '954, '307, '456, '734, '647, '505, '138 and/or the '672 patents;

3.      An award of damages resulting from Defendants' acts of infringement in accordance with 35 U.S.C. § 284;

4.      A judgment and order finding that this is an exceptional case within the meaning of 35 U.S.C. § 285 and awarding to Orthophoenix its reasonable attorneys' fees against Stryker.

5.      A judgment and order requiring Defendants to provide accountings and to pay supplemental damages to Orthophoenix, including, without limitation, prejudgment and post-judgment interest; and

6.      Any and all other relief to which Orthophoenix may show itself to be entitled.

## JURY TRIAL DEMANDED

Orthophoenix hereby demands a trial by jury of all issues so triable.

October 1, 2013

OF COUNSEL:

Marc A. Fenster
Daniel P. Hipskind
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard 12th Floor
Los Angeles, California 90025
mfenster@rawklaw.com
dhipskind@raklaw.com
(310) 826-7474

BAYARD, P.A.

 /s/ Stephen B. Brauerman
Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com

*Attorneys for Plaintiff,*
*Orthophoenix, LLC*