**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

ORTHOPHOENIX, LLC,

      Plaintiff/Counterclaim Defendant,

      v.

STRYKER CORPORATION; JOHN AND/OR
JANE DOES 1-100,

      Defendants/Counterclaim Plaintiff.

Civil Action No. 13-1628-LPS

**DEFENDANT STRYKER'S OPENING BRIEF IN SUPPORT**
**OF ITS MOTION FOR LEAVE TO AMEND COUNTERCLAIMS AND**
**JOIN COUNTERCLAIM DEFENDANTS**

Of Counsel:

Gregory J. Vogler
Sandra A. Frantzen
Deborah A. Laughton
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
gvogler@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
dlaughton@mcandrews-ip.com

Dated: May 14, 2014

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Stryker Corporation*

## TABLE OF CONTENTS

I.     NATURE AND STAGE OF THE PROCEEDINGS ............................................................ 1

II.    SUMMARY OF THE ARGUMENT ............................................................................... 2

III.   STATEMENT OF FACTS ............................................................................................. 2

IV.   ARGUMENT ................................................................................................................ 6

      A.    Motion For Leave To Amend Stryker's Counterclaims Against Orthophoenix Should Be Granted .............................................................. 6

            1.    Stryker's Proposed Amendment Is Timely, Not Unduly Prejudical And Is Brought In Good Faith ..................................... 6

            2.    Orthophoenix Cannot Establish Futility ....................................... 7

      B.    Motion For Leave To Join Medtronic And IP Nav Should Be Granted .................................................................................................... 9

V.    CONCLUSION ........................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007).................................................................. 8

*Bogosian v. Gulf Oil Corp.*,
  561 F.2d 434 (3d Cir. 1977.......................................................... 10

*Cemar, Inc. v. Nissan Motor Corp.*,
  No. 87-165-CMW, 1990 WL 3038 (D. Del. Jan. 08, 1990).............................. 10

*Dole v. Arco Chem. Co.*,
  921 F.2d 484 (3d Cir. 1990) ......................................................... 6

*F.D.I.C. v. Bathgate*,
  27 F.3d 850 (3d Cir. 1994) .......................................................... 9

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................. 6

*In re Ins. Brokerage Antitrust Litig.*,
  579 F.3d 241 (3d Cir. 2009) ......................................................... 7

*In re Rembrandt Techs., LP Patent Litig.*,
  No. 07-1848, 2009 WL 1868646 (D. Del. June 29, 2009) .......................... 7, 8, 9

*In re Uranium Antitrust Litig.*,
  617 F.2d 1248 (7th Cir. 1980) ...................................................... 10

*Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*,
  No. 07-127, 2011 WL 678707 (D. Del. Feb. 28, 2011)................................. 8

*Trueposition, Inc. v. Allen Telecom, Inc.*,
  No. 01-823 GMS, 2002 WL 1558531 (D. Del. July 16, 2002) ....................... 7, 11

*W. Penn Allegheny Health Sys., Inc. v. UPMC*,
  627 F.3d 85 (3d Cir. 2010) .......................................................... 8

**STATUTES**

15 U.S.C. § 1........................................................................ 7, 10

**RULES**

Fed. R. Civ. P. 13(h) ................................................................. 9

Fed. R. Civ. P. 15(a)(2)...........................................................................................................6

Fed. R. Civ. P. 20(a)(2)(A)&(B)............................................................................................10

Defendant Stryker Corporation ("Stryker") submits this Opening Brief in Support of its Motion for Leave to Amend Counterclaims and Join Counterclaim Defendants (the "Motion") pursuant to Federal Rules of Civil Procedure 13, 15, and 20.

## I.      NATURE AND STAGE OF THE PROCEEDINGS

Stryker is a worldwide leader in the manufacture and sale of innovative medical products, including products used in minimally invasive surgeries for treatment of vertebral compression fractures.  These products include Stryker's iVas system, Verteport system, Aliquot system, and Cortoss material, which Stryker started selling years ago.

On April 25, 2013, a company called Orthophoenix, LLC ("Orthophoenix"), the plaintiff in this case, was formed as a corporate entity in Delaware.  One day later, one of Stryker's competitors in the vertebral product market, Medtronic Inc. ("Medtronic"), transferred several patents relating to treatment of vertebral compression fractures to Orthophoenix.  Importantly, as will be discussed below, these patents were not originally owned by Medtronic either but were transferred to Medtronic from yet another company.

Within a few weeks of the transfer of these patents to Orthophoenix, a company called IP Navigation Group, LLC ("IP Nav"), which shares an office and a CEO with Orthophoenix, approached Stryker suggesting that Stryker take a license to the newly-acquired patents.  At the time, Stryker advised IP Nav that the patents were invalid and/or not infringed and, thus, a license was unnecessary.

On October 1, 2013, the newly-formed Orthophoenix sued Stryker for infringement of ten of the patents owned by Medtronic only a few months earlier.   D.I. 1.  On November 18, 2013, Stryker responded to Orthophoenix's patent infringement complaint by denying all allegations of infringement and by filing counterclaims against Orthophoenix for a declaration of

non-infringement, invalidity, and unenforceability as to all ten patents.  D.I. 8.  On December 12,

2013, Orthophoenix responded to Stryker's counterclaims.  D.I. 11.

As of the filing date of this motion, no scheduling order has been entered in the case and

no discovery has been noticed or taken.

## II.     SUMMARY OF THE ARGUMENT

Stryker brings this motion to seek leave to file its First Amended Answer, Affirmative

Defenses, and Counterclaims ("Amended Counterclaims") (attached as Exhibit 1 to the Motion

(red-lined version attached as Exhibit 2)).   Specifically, Stryker seeks leave to amend its

counterclaims to plead antitrust violations under Title 15 of the United States Code based on

Orthophoenix's anticompetitive actions.   Because IP Nav and Medtronic acted in concert and

combination with Orthophoenix in committing the asserted anticompetitive actions, Stryker also

seeks leave to join IP Nav and Medtronic as Counterclaim Defendants.

Granting this Motion will not prejudice Orthophoenix and will promote judicial

efficiency by consolidating all disputes into one action.  Moreover, IP Nav and Medtronic should

be joined because they are also liable for the antitrust violations, and the antitrust violations arise

out of the same occurrences and involve the same questions of law and fact.

## III.    STATEMENT OF FACTS

Instead of filing a separate lawsuit against Orthophoenix, IP Nav, and Medtronic, Stryker

seeks to file its Amended Counterclaims in this case to allege a Counterclaim of Conspiracy in

Restraint of Trade against the three entities.   (*See* Exhibit 1, Counterclaim 11, ¶¶ 100-138.)

Briefly summarized, Stryker alleges that Orthophoenix, IP Nav, and Medtronic engaged in

concerted activity affecting interstate commerce including, but not limited to, substantial efforts

to assert knowingly invalid and/or non-infringed patents against competitors such as Stryker in

an effort to unfairly and illegally restrain trade in violation of antitrust laws.  (*Id.*)  As described in greater detail in the Amended Counterclaims, Stryker alleges the following:

1.      The patents-in-suit and a number of related patents were initially owned by a third-party named Kyphon.  (*Id.* at ¶ 105.)  Kyphon owned certain fundamental patents covering a procedure called kyphoplasty but, knowing these patents were set to expire in 2009, Kyphon attempted to extend its patent monopoly by seeking additional patents on trivial add-on subject matter that was clearly not patentable under established law.  These "add-on" patents ultimately issued into the patents-in-suit and other related patents.  Several years ago, Kyphon began suing its competitors (including Medtronic but not including Stryker).  Medtronic knew that certain Kyphon patents (including certain patents-in-suit) were invalid in view of the prior art and unenforceable due to repeated instances of fraud on the Patent Office.  (*Id.* at ¶¶ 106-113.)  As explained in the Amended Counterclaims, in several lawsuits involving Kyphon, Medtronic repeatedly filed court pleadings and other documents admitting to patent invalidity and unenforceability. (*Id.*)

2.      Medtronic later became the owner of Kyphon's patent portfolio, which included the patents that Medtronic knew were invalid and unenforceable.   (*Id.* at ¶ 105.) During its ownership of these patents, Medtronic never accused Stryker of infringing any of the former Kyphon patents, and certainly never asserted against Stryker the patents that Medtronic knew were invalid and unenforceable.

3.      As alleged in the Amended Counterclaims, on April 26, 2013, after the original kyphoplasty patents expired, Medtronic transferred the remaining patents to Orthophoenix, a company that had been formed only the day before, apparently for the sole purpose of seeking to extract unwarranted licensing royalties or other monetary payments from Medtronic's

competitors.  (*Id.* at ¶¶ 120-122.)  Based on, among other things, the lengthy litigation history surrounding the patents, Orthophoenix knew or should have known that Medtronic had previously admitted in court filings that one or more of the patents were invalid and/or unenforceable.  (*Id.* at ¶¶ 123, 129.)

4.      As alleged in the Amended Counterclaims, in May 2013, IP Nav, a patent monetization company known for being behind hundreds of patent infringement lawsuits around the United States, contacted Stryker claiming to be Orthophoenix's agent and demanded that Stryker take a license to the patents-in-suit as well as other unidentified patents relating to vertebral augmentation technology.  (*Id.* at ¶¶ 114, 118.)  Stryker advised IP Nav, a company that shares an address and CEO with Orthophoenix, that the patents were not infringed and/or invalid.  (*Id.* at ¶¶ 115-117, 119-120.)  Indeed, as alleged in the Amended Counterclaims, Stryker provided IP Nav with thirteen detailed preliminary briefs and claim charts, numbering over 300 pages in total, which establish non-infringement and/or invalidity of the identified Orthophoenix patents.  (*Id.* at ¶ 116.)  At this time, IP Nav, Orthophoenix's agent, knew or should have known that Medtronic had previously admitted in court filings that one or more of the patents were invalid and/or unenforceable and that it was attempting to extract royalties for invalid and/or unenforceable patents.  (*Id.* at ¶¶ 123, 129.)

5.      Nonetheless, once Stryker refused to accept IP Nav's demands, Orthophoenix filed suit against Stryker and several other Medtronic competitors in this District.  (*Id.* at ¶¶ 117, 131.)

6.      Medtronic knew that Orthophoenix and/or IP Nav would attempt to extract unwarranted licensing royalties or other monetary payments from Medtronic's competitors by threatening expensive "shakedown" patent litigation and then, if unable to extract royalties,

improperly asserting at least certain of those patents against Stryker and other competitors of Medtronic.  (*Id.* at ¶¶ 118-125.)  As alleged in the Amended Counterclaims, Stryker believes that discovery will show that as part of this transaction or a related transaction, Medtronic has received or will receive additional consideration for these patents based on their licensing or assertion by Orthophoenix and/or IP Nav.  (*Id.* at ¶ 121.)

7.     Stryker believes that discovery will further show that Medtronic conspired with IP Nav and/or Orthophoenix to assert admittedly invalid and non-infringed Medtronic patents against Medtronic's competitors including Stryker.  (*Id.* at ¶ 125.)  As alleged in the Amended Counterclaims, these three entities know and should have known that the claims of infringement of the patents-in-suit alleged in the complaint are objectively baseless, unreasonable, and unsupported, at least because the patents-in-suit are invalid.  (*Id.* at ¶ 129.)  This is not only because Medtronic previously admitted invalidity and unenforceability of certain patents but also because, prior to filing the instant lawsuit, Stryker provided to Orthophoenix and IP Nav detailed bases in fact and law as to why each of the patents-in-suit are invalid and/or not infringed. Medtronic cannot purge its court admissions through agreements with third parties to assert the invalid patents in its stead.

8.     As alleged in the Amended Counterclaims, all three parties' actions and conduct constitute an agreement, conspiracy or combination between two or more entities or persons to restrain trade. (*Id.* at ¶ 128.)  The illegal conduct by those parties is intended to improperly extort royalties from Medtronic's competitors through threats and costly patent litigation involving invalid and/or non-infringed patents, ultimately increasing the costs of medical devices to the consuming public without basis.  (*Id.*)

In view of the foregoing and the entirety of the Amended Counterclaims, Stryker now respectfully requests that it be permitted to file its Amended Counterclaims.

## IV.    ARGUMENT

### A.    Motion For Leave To Amend Stryker's Counterclaims Against Orthophoenix Should Be Granted

This Court should grant Stryker's motion for leave to amend its counterclaims.  Federal Rule of Civil Procedure 15 provides that leave to amend pleadings should be freely given when justice so requires.  Fed. R. Civ. P. 15(a)(2).  The Third Circuit has adopted a "liberal approach" to amendment of pleadings.  *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990).  Leave should be freely granted unless there is undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, or futility of amendment.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Dole*, 921 F.2d at 487.  Because none of these factors are present here, Stryker respectfully submits the Court should grant the present motion.

### 1.    Stryker's Proposed Amendment Is Timely, Not Unduly Prejudical And Is Brought In Good Faith

During the meet and confer process, Orthophoenix did not contend that Stryker had unduly delayed in seeking leave to file its Amended Counterclaims, that Stryker had a bad faith or dilatory motive, or that Orthophoenix would suffer any undue prejudice if the Motion was granted.

Indeed, Stryker has not delayed in seeking to amend its pleadings.  This case is in its earliest stages—there is no scheduling order and discovery has not commenced.  Stryker is seeking leave to amend before any deadlines to amend or join parties have issued.

Moreover, Stryker has acted in good faith and without dilatory motive.  This is Stryker's first request to amend its pleadings, the Amended Counterclaims were raised several times with

- 6 -

Orthophoenix such that Orthophoenix had notice of the antitrust counterclaims well before Stryker's Motion was filed, and there is no dilatory motive behind this amendment.

Finally, granting the relief sought by the Motion will not prejudice Orthophoenix.   "To show undue prejudice, [a party] must demonstrate that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence unless the leave to amend is denied." *Trueposition, Inc. v. Allen Telecom, Inc.*, No. 01-823 GMS, 2002 WL 1558531, at *2 (D. Del. July 16, 2002).   Undue prejudice cannot be shown here and Orthophoenix does not allege it. Since this case is in its infancy, Orthophoenix will have full opportunity to conduct discovery and present facts and evidence.   Moreover, it would be more disruptive for the parties and the Court if Stryker had to file a separate and independent cause of action against Orthophoenix, IP Nav, and Medtronic when this cause of action is related to the underlying action against Stryker.

### 2.      Orthophoenix Cannot Establish Futility

The only objection that Orthophoenix raised to Stryker's motion was a claim of futility. However, Stryker's antitrust counterclaim alleging conspiracy in restraint of trade is not futile as it states a claim upon which relief can be granted.   *In re Rembrandt Techs., LP Patent Litig.*, No. 07-1848, 2009 WL 1868646, at *4 (D. Del. June 29, 2009) ("Futility of amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted.").   The Sherman Act declares illegal, among other things, "every contract, combination…or conspiracy, in restraint of trade or commerce among the several states." 15 U.S.C. § 1 *et seq*; *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 267 (3d Cir. 2009).   Throughout its Amended Counterclaims (Exhibit 1), Stryker sets forth specific facts and details regarding Orthophoenix's, IP Nav's, and Medtronic's concerted, predatory, anticompetitive actions that give rise to antitrust violations under the Sherman Act.   (*Id*. at ¶¶ 100-138.)   For example, as explained above and

- 7 -

outlined in detail in the Amended Counterclaims, Orthophoenix, IP Nav, and Medtronic have agreed to enforce knowingly invalid and/or unenforceable patents, attempted to extort royalties involving non-infringed and invalid patents, and/or created a barrier to entry into the relevant market under the threat of baseless litigation resulting in increased litigation costs and product costs.  (*See, e.g., id.* at ¶¶ 105-114, 118-125, 128-137.)  This states a cause of action upon which relief may be granted.  *See Bell Atl. v. Twombly*, 550 U.S. 544, 556 (2007); *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 99-100 (3d Cir. 2010).

During the meet and confer process, Orthophoenix alleged that its litigation activities are protected under the *Noerr-Pennington* doctrine, citing *Magnetar Techs. Corp. v. Six Flags Theme Parks Inc.*, No. 07-127, 2011 WL 678707 (D. Del. Feb. 28, 2011).  However, in *Magnetar*, unlike this case, the defendants asserted a Section 2 monopolization counterclaim simply because its competitor had sent prelitigation letters threatening suit and then sued for patent infringement.  *Id.* at *2-*3.  Unlike this case, defendants did "not assert any facts demonstrating that this litigation is objectively baseless" and the defendants' allegations of *Walker Process* fraud were also deficient.  *Id.* at *3.  Not surprisingly, this court concluded that defendants had failed to adequately plead their claim and that plaintiffs' patent infringement suit was protected under the *Noerr-Pennington* doctrine.  *Id.*

Here, in sharp contrast, Stryker has sufficiently pled facts to support its claim of conspiracy in restraint of trade.  Unlike *Magnetar*, the Amended Counterclaims lay out detailed allegations regarding how the present, objectively baseless litigation is part of an overall scheme improperly constituting a conspiracy in restraint of trade.  These allegations adequately support a claim for conspiracy in restraint of trade under governing law.  *See, e.g., W. Penn.,* 627 F.3d at 102; *Rembrandt,* 2009 WL 1868646, at *6 ("Furthermore, taking the allegations of the proposed

- 8 -

amendments as true, and viewing them in the light most favorable to Plaintiffs, Rembrandt has failed to show that the proposed amendments are futile."). Accordingly, Stryker's allegations are not futile and its Motion should be granted.[1]

### B.    Motion For Leave To Join Medtronic And IP Nav Should Be Granted

This Court should also grant Stryker's motion for leave to join Counterclaim Defendants Medtronic and IP Nav instead of requiring Stryker to file a separate lawsuit against those parties.

The Federal Rules of Civil Procedure authorize a court to join additional parties to adjudicate a counterclaim that is already before the court or that is being asserted at the same time the addition of a nonparty is sought. *See F.D.I.C. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (district court properly permitted counterclaim against additional defendants because the same counterclaim was also asserted against one of the original defendants at the time joinder was sought). Rules 19 and 20 of the Federal Rules of Civil Procedure govern the addition of a person as a party to a counterclaim or crossclaim. Fed. R. Civ. P. 13(h). A court may join a party as a counterclaim defendant if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence,

---

[1] During the meet and confer process, Plaintiff also suggested that Stryker did not allege that the entire litigation was objectively baseless or that Stryker and IP Nav/Orthophoenix are competitors. Even if legally relevant to futility (which Stryker does not concede), Plaintiff's suggestions are inaccurate (as Stryker has explained to Plaintiff) because Stryker does, in fact, make these allegations. (*See, e.g.,* Ex. 1 at ¶ 129 (""the claims of infringement of the patents-in-suit…are objectively baseless, unreasonable, and unsupported….Stryker provided to Orthophoenix and IP Nav detailed basis as to why each of the patents-in-suit are invalid and/or not infringed"); *id.* at ¶ 116 (before the lawsuit was filed, Stryker provided "thirteen detailed preliminary briefs and claim charts…which establish summary judgment of non-infringement and/or invalidity of the Orthophoenix patents"); and *id.* at ¶ 103 ("The relevant product market is the minimally invasive vertebral compression fracture treatment product market…including licensing of such technology.  IP Nav and Orthophoenix compete with Stryker relative to licensing of such technology.").

or series of transactions or occurrences"; and (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)&(B).

As explained above, Stryker's Amended Counterclaims establish a cause of action under the Sherman Act. (*See* Exhibit 1, Counterclaim 11.) The Sherman Act declares illegal, among other things, "[e]very contract, combination . . . or conspiracy, in restraint of trade or commerce among the several states . . . ." 15 U.S.C. § 1. Here, Orthophoenix, Medtronic, and IP Nav are jointly liable for their conspiracy in restraint of trade. *See Cemar, Inc. v. Nissan Motor Corp.*, No. 87-165-CMW, 1990 WL 3038, at *2 (D. Del. Jan. 08, 1990) ("When individuals form a conspiracy, any act done by one of the conspirators is considered under the law to be an act done by all the conspirators."); *see also In re Uranium Antitrust Litig.*, 617 F.2d 1248, 1257 (7th Cir. 1980) ("Anti-trust liability under Section 1 of the Sherman Act is joint and several.") (citing *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977)). In addition, because Orthophoenix, Medtronic, and IP Nav acted in agreement, concert, or combination in restraint of trade, Stryker's right to relief arises out of the same series of transactions or occurrences, and involves the same questions of fact and law. Accordingly, Medtronic and IP Nav should be joined in this action as Counterclaim Defendants.

## V.     CONCLUSION

For the reasons set forth above, Stryker respectfully requests that the Court grant its Motion For Leave to Amend Counterclaims and Join Counterclaim Defendants. Furthermore, judicial efficiency weighs heavily in favor of allowing Stryker's amendment. Stryker's antitrust counterclaims relate to the same parties and the same technology and patents-in-suit, and involve substantially overlapping facts and issues. (*See, e.g., id.* at ¶¶ 105-113, 118-125.) Rather than having a second lawsuit between Stryker and Orthophoenix, IP Nav and Medtronic, judicial

- 10 -

efficiency weighs in favor of amendment to allow these counterclaims to be brought as part of the current suit.  *See Trueposition*, 2002 WL 1558531, at *2 (allowing amendment because the products, technology, and parties are the same, the facts and issues substantially overlap, and a second action could be instituted if the motion was denied).

<div style="margin-left:50%">

YOUNG  CONAWAY  STARGATT  &  TAYLOR, LLP

*/s/ Anne Shea Gaza*

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys    for    Defendant/Counterclaim Plaintiff Stryker Corporation*

</div>

Of Counsel:

Gregory J. Vogler
Sandra A. Frantzen
Deborah A. Laughton
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
gvogler@mcandrews-ip.com
sfrantzen@mcandrews-ip.com
dlaughton@mcandrews-ip.com

Dated:  May 14, 2014

## CERTIFICATE OF SERVICE

I, Anne Shea Gaza, hereby certify that on May 14, 2014, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Richard D. Kirk, Esquire
> Stephen B. Bauerman, Esquire
> Vanessa R. Tiradentes, Esquire
> Bayard, P.A.
> 222 Delaware Avenue, Suite 900
> P.O. Box 25130
> Wilmington, DE 19899-5130
> *rkirk@bayardlaw.com*
> *sbrauerman@bayardlaw.com*
> *vtiradentes@bayardlaw.com*
>
> *Attorneys for Plaintiff/Counterclaim Defendant*

I further certify that on May 14, 2014, I caused a true and correct copy of the foregoing document to be served by e-mail on the above-listed counsel of record and on the following:

> Marc A. Fenster, Esquire
> Daniel P. Hipskind, Esquire
> Russ, August & Kabat
> 12424 Wilshire Boulevard, Twelfth Floor
> Los Angeles, CA 90025
> *mfenster@raklaw.com*
> *dhipskind@raklaw.com*
>
> *Attorneys for Plaintiff /Counterclaim Defendant*

Dated:   May 14, 2014

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/  Anne Shea Gaza*
Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 N. King Street
Wilmington, Delaware 19801
*agaza@ycst.com*
*swilson@ycst.com*

*Attorneys for Defendant/Counterclaim Plaintiff  Stryker Corporation*