IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORTHOPHOENIX, LLC.,<br><br>        Plaintiff,<br><br>v.<br><br>STRYKER CORPORATION;<br>JOHN AND/OR JANE DOES 1-100;<br><br>        Defendants. | C.A. No. 13-1628-LPS<br><br><br>**JURY TRIAL DEMANDED** |
| STRYKER CORPORATION,<br><br>        Counterclaim Plaintiff,<br><br>v.<br><br>ORTHOPHOENIX, LLC;<br>IP NAVIGATION GROUP, LLC;<br>MEDTRONIC, INC,<br><br>        Counterclaim Defendants. | C.A. No. 13-1628-LPS<br><br><br>**JURY TRIAL DEMANDED** |

**STRYKER CORPORATION'S SECOND AMENDED ANSWER,
AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Stryker Corporation ("Stryker"), through its counsel, hereby sets forth its

Answer, Defenses and Counterclaims to the First Amended Complaint for Patent Infringement

(D.I. 259) filed by Plaintiff Orthophoenix, LLC ("Plaintiff" or "Orthophoenix") as follows:

**PARTIES**

1.        Orthophoenix is a Delaware limited liability company with a principal place of
business located at 2515 McKinney Avenue, Suite 1000-B, Dallas, Texas 75201.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of Plaintiff's Complaint, and, accordingly, denies the allegations set forth in paragraph 1 of the Complaint.

2.     Defendant Stryker Corporation ("Stryker") is a Michigan corporation with a principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan 49002.  Stryker has appointed The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan  48025, as its agent for service of process.

**ANSWER**:

Admitted.

3.     Defendants John and/or Jane Does 1-100 ("Does") are orthopedic surgeons using the infringing products manufactured by Defendant Stryker.  Does' identities are not presently known to Orthophoenix; however, on information and belief, Defendant Stryker is in possession of documents and information from which Does' identities can be readily ascertained.

**ANSWER**:

Stryker denies that Does are orthopedic surgeons using any infringing product manufactured by Stryker.  As such, Stryker denies the allegations set forth in paragraph 3 of the Complaint.

### JURISDICTION AND VENUE

4.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  Accordingly, this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER**:

Stryker admits that this is an action for patent infringement, and that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) if Orthophoenix had standing to bring suit.  For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing, Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss

Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker

denies that this Court has subject matter jurisdiction.  Stryker further denies the merits of this

action, and therefore, except as expressly admitted, denies all other allegations set forth in

paragraph 4 of the Complaint.


5.      This Court has personal jurisdiction over Defendant Stryker because, among other
reasons, Defendant Stryker has established minimum contacts with the forum state of Delaware.
Defendant Stryker, directly and/or through third-party intermediaries, makes, uses, imports,
offers for sale, and/or sells products or performs infringing medical procedures within the state
of Delaware.  Thus, Defendant Stryker has purposefully availed itself of the benefits of the State
of Delaware and the exercise of jurisdiction over Stryker would not offend traditional notions of
fair play and substantial justice.

**ANSWER**:

Stryker admits that it is subject to personal jurisdiction in this District for this particular

action.  Except as expressly admitted, Stryker denies all other allegations set forth in paragraph 5

of the Complaint.


6.      Venue is proper in this District under 28 U.S.C. §§ 1391 (b)-(c) and 1400 (b)
because Defendant is subject to personal jurisdiction in this District.

**ANSWER**:

Stryker admits that venue is technically proper as to Stryker in this District under 28

U.S.C. §§ 1391(b)-(c) and 1400(b), but avers that venue is more appropriate in the Western

District of Michigan under 28 U.S.C. § 1404.  The remaining allegations contained in paragraph

6 are conclusions of law that need not be admitted or denied.  To the extent a response is

required; Stryker denies the remaining allegations set forth in paragraph 6 of the Complaint.

## BACKGROUND

7.      In 1994 Dr. Mark Reiley, an orthopedic surgeon from Berkeley, California, Mr.
Arie Scholten, an engineer and inventor of surgical products, and Dr. Karen Talmadge, a
Harvard University biochemist, founded Kyphon Inc. ("Kyphon").  Kyphon quickly came to be

3

recognized as the global leader in restoring spinal function through minimally invasive therapies via its innovative, and then disruptive, technology.  Kyphon relentlessly pursued novel solutions and their translation into practice.  Dr. Reiley performed the first balloon kyphoplasty in 1998; today, over 11,000 physicians throughout the world have been trained to perform balloon kyphoplasty.

**ANSWER:**

Stryker denies the allegation that "Kyphon quickly came to be recognized as the global leader in restoring spinal function through minimally invasive therapies" and that Kyphon "pursued novel solutions and their translation into practice" at least to the extent that this averment is a reference to the asserted patents.  Stryker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 7 of Plaintiff's Complaint, and, accordingly, denies the allegations.

8.     Due to Kyphon's dedication to developing pioneering medical technologies, it was awarded over 500 U.S. Patents and Applications.

**ANSWER:**

Stryker denies that Kyphon had a "dedication to developing pioneering medical technologies" at least to the extent that this averment is a reference to the asserted patents.  Stryker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 8 of Plaintiff's Complaint, and, accordingly, denies the allegations.

9.     Kyphon became the industry leader and Dr. Karen Talmadge, then Executive Vice President, Co-Founder, and Chief Science Officer was given the Patient Quality of Life Award in November 2004 by the International Myeloma Foundation.  This award recognized the impact of balloon kyphoplasty in helping myeloma patients with spinal fractures return to their daily lives.  In the same year, Kyphon was named the top emerging medical device company in the industry by a group of 150 medical device CEOs.

**ANSWER:**

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 9 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

10.     The significant value of Kyphon and its patents is reflected in the $4.2 billion purchase price Medtronic, Inc. ("Medtronic") paid for Kyphon in 2007.

**ANSWER**:

To the extent that this paragraph avers that the asserted patents have significant value,

this averment is denied.  Stryker is without knowledge or information sufficient to form a belief

as to the truth of the remaining allegations contained in paragraph 10 of Plaintiff's Complaint,

and, accordingly, denies the remaining allegations.

11.     Medtronic is a world leader in medical device technologies and therapies. Medtronic specializes in developing and manufacturing medical device technologies and therapies to treat chronic disease worldwide.  On April 26, 2013 Orthophoenix completed a transaction to acquire the Kyphon technology, which includes approximately 500 patents and applications.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 11 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

12.     On May 22, 2013, Orthophoenix, through its licensing agent, entered into a confidentiality and forbearance agreement (FBA) with Stryker to facilitate Orthophoenix and Stryker conducting discussions regarding the Orthophoenix patent portfolio.  These discussions continued until the initial expiration of the FBA, at which time Orthophoenix and Stryker extended the FBA through September 30, 2013.  Orthophoenix believes these discussions were useful, but ultimately no agreement was reached over the approximate four and a half month period.

**ANSWER**:

Stryker admits that, after being contacted first by IP Navigation Group, LLC ("IP Nav") and at the request of IP Nav, on May 22, 2013, Stryker entered into a confidentiality and forbearance agreement (FBA) with IP Nav, which later identified its confidential client as Orthophoenix.  Stryker admits that, at the request of IP Nav, it engaged in discussions with IP Nav regarding certain patents purportedly owned by Orthophoenix in which Stryker explained to IP Nav how Orthophoenix's patents were not infringed and/or were invalid, including providing IP Nav with thirteen detailed preliminary briefs, numbering over 300 pages in total, which establish summary judgment of non-infringement and/or invalidity of the Orthophoenix patents. Stryker admits that the FBA was extended through September 30, 2013.  Stryker admits that ultimately no agreement was reached with respect to any patents discussed.  Stryker is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 12 of Plaintiff's Complaint, and, accordingly, denies the allegations.

## ASSERTED PATENTS

13.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,248,110 (the "'110 patent").  The '110 patent is entitled "Systems And Methods For Treating Fractured Or Diseased Bone Using Expandable Bodies."  The '110 patent issued on June 19, 2001.  A true and correct copy of the '110 patent is attached hereto as Exhibit A.

**ANSWER**:

Stryker admits that the '110 patent is entitled "Systems And Methods For Treating Fractured Or Diseased Bone Using Expandable Bodies" and that it issued June 19, 2001.  Stryker admits that Exhibit A attached to Plaintiff's Complaint purports to be a copy of the '110 patent. Stryker denies the allegations in paragraph 13 insofar as they allege that the '110 patent discloses or claims a patentable invention.  For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits,

Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 6,248,110.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 13 of Plaintiff's Complaint, and, accordingly, denies the allegations.

14.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,981,981 (the "'981 patent").  The '981 patent is entitled "Inflatable Device For Use In Surgical Protocol Relating To Fixation Of Bone."  The '981 patent issued on January 3, 2006.  A true and correct copy of the '981 patent is attached hereto as Exhibit B.

**ANSWER**:

Stryker admits that the '981 patent is entitled "Inflatable Device For Use In Surgical Protocol Relating To Fixation Of Bone" and that it issued January 3, 2006.  Stryker admits that Exhibit B attached to Plaintiff's Complaint purports to be a copy of the '981 patent.  Stryker denies the allegations in paragraph 14 insofar as they allege that the '981 patent discloses or claims a patentable invention.  For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 6,981,981.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 14 of Plaintiff's Complaint, and, accordingly, denies the allegations.

15.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,663,647 (the "'647 patent").  The '647 patent is entitled "Inflatable Device For Use In Surgical Protocol Relating To Fixation Of Bone."  The '647 patent issued on December 16, 2003.  A true and correct copy of the '647 patent is attached hereto as Exhibit C.

**ANSWER**:

Stryker admits that the '647 patent is entitled "Inflatable Device For Use In Surgical Protocol Relating To Fixation Of Bone" and that it issued December 16, 2003. Stryker admits that Exhibit C attached to Plaintiff's Complaint purports to be a copy of the '647 patent. Stryker denies the allegations in paragraph 15 insofar as they allege that the '647 patent discloses or claims a patentable invention. For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 6,663,647. Stryker is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 15 of Plaintiff's Complaint, and, accordingly, denies the allegations.

16.     Orthophoenix is the owner by assignment of U.S. Patent No. 7,044,954 (the "'954 patent"). The '954 patent is entitled "Method For Treating A Vertebral Body." The '954 patent issued on May 16, 2006. A true and correct copy of the '954 patent is attached hereto as Exhibit D.

**ANSWER**:

Stryker admits that the '954 patent is entitled "Method For Treating A Vertebral Body" and that it issued May 16, 2006. Stryker admits that Exhibit D attached to Plaintiff's Complaint purports to be a copy of the '954 patent. Stryker denies the allegations in paragraph 16 insofar as they allege that the '954 patent discloses or claims a patentable invention. For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 7,044,954. Stryker is without

sufficient information or knowledge to form a belief as to the truth of the remaining allegations

set forth in paragraph 16 of Plaintiff's Complaint, and, accordingly, denies the allegations.

17.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,280,456 (the "'456 patent'). The '456 patent is entitled "Methods For Treating Bone." The '456 patent issued on August 28, 2001. A true and correct copy of the '456 patent is attached hereto as Exhibit E.

**ANSWER**:

Stryker admits that the '456 patent is entitled "Methods For Treating Bone" and that it

issued August 28, 2001. Stryker admits that Exhibit E attached to Plaintiff's Complaint purports

to be a copy of the '456 patent. Stryker denies the allegations in paragraph 17 insofar as they

allege that the '456 patent discloses or claims a patentable invention. Stryker is without

sufficient information or knowledge to form a belief as to the truth of the remaining allegations

set forth in paragraph 17 of Plaintiff's Complaint, and, accordingly, denies the allegations. For

the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's

Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of

Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation

that Orthophoenix is the owner by assignment of U.S. Patent No. 6,280,456.

18.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,623,505 (the "'505 patent"). The '505 patent is entitled "Expandable Structures For Deployment In Interior Body Regions." The '505 patent issued on September 23, 2003. A true and correct copy of the '505 patent is attached hereto as Exhibit F.

**ANSWER**:

Stryker admits that the '505 patent is entitled "Expandable Structures For Deployment In

Interior Body Regions" and that it issued September 23, 2003. Stryker admits that Exhibit F

attached to Plaintiff's Complaint purports to be a copy of the '505 patent. Stryker denies the

allegations in paragraph 18 insofar as they allege that the '505 patent discloses or claims a

patentable invention.  For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of

Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to

Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits,

Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No.

6,623,505. Stryker is without sufficient information or knowledge to form a belief as to the truth

of the remaining allegations set forth in paragraph 18 of Plaintiff's Complaint, and, accordingly,

denies the allegations.

19.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,440,138 (the "'138
patent").  The '138 patent is entitled "Structures and Methods For Creating Cavities In Interior
Body Regions."  The '138 patent issued on August 27, 2002.  A true and correct copy of the '138
patent is attached hereto as Exhibit G.

**ANSWER**:

Stryker admits that the '138 patent is entitled "Structures And Methods For Creating

Cavities In Interior Body Regions" and that it issued August 27, 2002.  Stryker admits that

Exhibit G attached to Plaintiff's Complaint purports to be a copy of the '138 patent.  Stryker

denies the allegations in paragraph 19 insofar as they allege that the '138 patent discloses or

claims a patentable invention.  For the reasons set forth in Stryker's Motion to Dismiss Due to

Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion

to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits,

Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No.

6,440,138.  Stryker is without sufficient information or knowledge to form a belief as to the truth

of the remaining allegations set forth in paragraph 19 of Plaintiff's Complaint, and, accordingly,

denies the allegations.

20.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,863,672 (the "'672 patent"). The '672 patent is entitled "Structures And Methods For Creating Cavities In Interior Body Regions." The '672 patent issued on March 8, 2005. A true and correct copy of the '672 patent is attached hereto as Exhibit H.

**ANSWER**:

Stryker admits that the '672 patent is entitled "Structures And Methods For Creating Cavities In Interior Body Regions" and that it issued March 8, 2005. Stryker admits that Exhibit H attached to Plaintiff's Complaint purports to be a copy of the '672 patent. Stryker denies the allegations in paragraph 20 insofar as they allege that the '672 patent discloses or claims a patentable invention. For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 6,863,672. Stryker is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 20 of Plaintiff's Complaint, and, accordingly, denies the allegations.

21.     Orthophoenix is the owner by assignment of U.S. Patent No. 7,153,307 (the "'307 patent"). The '307 patent is entitled "Systems And Methods For Placing Materials Into Bone." The '307 patent issued on December 26, 2006. A true and correct copy of the '307 patent is attached hereto as Exhibit I.

**ANSWER**:

Stryker admits that the '307 patent is entitled "Systems And Methods For Placing Materials Into Bone" and that it issued December 26, 2006. Stryker admits that Exhibit I attached to Plaintiff's Complaint purports to be a copy of the '307 patent. Stryker denies the allegations in paragraph 21 insofar as they allege that the '307 patent discloses or claims a patentable invention. For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of

Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 7,153,307.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 21 of Plaintiff's Complaint, and, accordingly, denies the allegations.

22.     Orthophoenix is the owner by assignment of U.S. Patent No. 6,241,734 (the "'734 patent").  The '734 patent is entitled "Systems And Methods For Placing Materials Into Bone." The '734 patent issued on June 5, 2001.  A true and correct copy of the '734 patent is attached hereto as Exhibit J.

**ANSWER**:

Stryker admits that the '734 patent is entitled "Systems And Methods For Placing Materials Into Bone" and that it issued June 5, 2001.  Stryker admits that Exhibit J attached to Plaintiff's Complaint purports to be a copy of the '734 patent.  Stryker denies the allegations in paragraph 22 insofar as they allege that the '734 patent discloses or claims a patentable invention.  For the reasons set forth in Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's Motion to Supplement the Record Relating to Stryker's Motion to Dismiss Due to Lack of Standing and Stryker's associated supportive briefing and exhibits, Stryker denies the allegation that Orthophoenix is the owner by assignment of U.S. Patent No. 6,241,734.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the remaining allegations set forth in paragraph 22 of Plaintiff's Complaint, and, accordingly, denies the allegations.

**COUNT I**
**(Infringement of U.S. Patent No. 6,248,110)**

23.     Orthophoenix references and incorporates by reference paragraphs 1 through 22 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-22 above as though stated herein.

24.     Stryker has been and still is infringing at least Claim 3 of the '110 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of example only, Stryker directly infringes the '110 patent by using the iVAS Inflatable Vertebral Augmentation System to perform the method described in Claim 3.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 24 of the Complaint.

25.     Defendants Does have been and still are infringing at least Claim 3 of the '110 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker, in the manner instructed and taught by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation System is approved for use by the FDA.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 25 of the Complaint.

26.     Stryker has also infringed indirectly and continues to infringe indirectly the '110 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 26 of the Complaint.

27.     Upon information and belief, Stryker gained knowledge of the '110 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon

Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product. *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarketYourDevice/PremarketSubmissions/PremarketNotification510k/ucm134571.htm.   On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked with the '110 patent.   On information and belief, by analyzing the Kyphon Kyphx Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '110 patent at least as early as 2010.

**ANSWER**:

Stryker admits that it had knowledge of the '110 patent at least as early as 2010.  Stryker admits that the Kyphon Kyphx Xpander Inflatable Bone Tamp was listed as a "predicate device" to Stryker's iVAS Balloon Catheter in Stryker's 510(k) submission to the FDA and that the iVAS Balloon Catheter is a component of the iVAS Inflatable Vertebral Augmentation System. Stryker denies that it was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the extent that phrase has any bearing on this lawsuit or alleged infringement.  The term "substantial equivalence" as used in Stryker's 510(k) notification is limited to the definition of substantial equivalence found in the Federal Food, Drug and Cosmetic Act, as amended and as applied under 21C.F.R. § 807, Subpart E under which a device can be marketed without premarket approval or reclassification, and is not intended to have any bearing whatsoever on the resolution of patent infringement suits or any other patent matters. Stryker further denies that the cited website supports that allegation.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the allegation that the Kyphx Xpander Inflatable Bone Tamp was marked with the '110 patent, and, accordingly, denies the allegation.  Except as expressly admitted, Stryker denies the remaining allegations set forth in paragraph 27 of Plaintiff's Complaint.

28.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing

acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, to perform surgical procedures during which physicians use the surgical instruments to compact cancellous bone.  By using the infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to compact cancellous bone as instructed and trained by Stryker, physicians directly infringe at least Claim 3 of the '110 patent.  By continuing to provide instruction and training to physicians on how to use its surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to perform procedures during which physicians compact cancellous bone in the manner described in Claim 3 of the '110 patent, Stryker has and continues to specifically intend to induce infringement of the '110 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 28 of the Complaint.

29.     Since at least 2010, Stryker has been and still is willfully infringing the '110 patent.  At least as early as 2010, Stryker had actual knowledge of the '110 patent.  Despite having actual knowledge of the '110 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '110 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

Stryker admits that it had knowledge of the '110 patent at least as early as 2010.  Stryker

admits that Orthophoenix seeks enhanced damages and a finding that this is an exceptional case

but denies that Orthophoenix is entitled to such damages or finding.  Stryker denies the

remaining allegations set forth in paragraph 29 of the Complaint.

30.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '110 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 30 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

31.     As a result of Defendants' infringement of the '110 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 31 of the Complaint.


32.     Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '110 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 32 of the Complaint.

**COUNT II**
**(Infringement of U.S. Patent No. 6,981,981)**

33.     Orthophoenix references and incorporates by reference paragraphs 1 through 32 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-32 above as though stated herein.


34.     Stryker has been and still is infringing at least Claim 1 of the '981 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of example only, Stryker directly infringes the '981 patent by using the iVAS Inflatable Vertebral Augmentation System to perform the method described in Claim 1.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 34 of the Complaint.


35.     Defendants Does have been and still are infringing at least Claim 1 of the '981 patent, literally and under the doctrine of equivalents, by using, without license or authority,

surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker in the manner instructed and taught by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation System is approved for use by the FDA.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 35 of the Complaint.

36.     Stryker has also infringed indirectly and continues to infringe indirectly the '981 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 36 of the Complaint.

37.     Upon information and belief, Stryker had knowledge of the '981 patent since at least as early as 2012.  Stryker cited the '981 patent in the following U.S. Patent, which was issued in 2012:  U.S. Patent No. 8,246,627.

**ANSWER**:

Stryker admits that it had knowledge of the '981 patent at least as early as 2012.  Stryker admits that the '981 patent is cited on the face of U.S. Patent No. 8,246,627, which the U.S. Patent and Trademark Office issued as a patent to Stryker Corporation on August 21, 2012 as being new and non-obvious over what is disclosed in the '981 patent.  Stryker denies the remaining allegations set forth in paragraph 37 of the Complaint.

38.     On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, in surgical procedures during which physicians use the surgical instruments to compact cancellous bone and fill the void created through such compacting with filling material.  By using the infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to compact cancellous bone then fill the void created through such compacting with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '981 patent.  By continuing to provide

instruction and training to physicians on how to use its surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to perform procedures during which physicians compact cancellous bone then fill the void created through such compacting with filling material in the manner described in Claim 1 of the '981 patent, Stryker has and continues to specifically intend to induce infringement of the '981 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 38 of the Complaint.

39.     Stryker has also infringed indirectly and continues to infringe indirectly the '981 patent by contributory infringement under 35 U.S.C. § 271(c).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 39 of the Complaint.

40.     Stryker has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, with the knowledge that the iVAS Inflatable Vertebral Augmentation System will be used by physicians to directly infringe at least Claim 1 of the '981 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 40 of the Complaint.

41.     Stryker had knowledge of the '981 patent since at least 2012.  Since at least 2012, Stryker has had knowledge that the surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, are material components to practicing the surgical procedures claimed in the '981 patent, that the surgical instruments are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the instruments are especially made and/or adapted for use in infringing the '981 patent.  For example, despite having knowledge that the iVAS Inflatable Vertebral Augmentation System is used by physicians to perform surgical procedures infringing the '981 patent, Stryker continues to provide instruction and training to physicians on how to use the iVAS Inflatable Vertebral Augmentation System in a manner that directly infringes at least Claim 1 of the '981 patent.  Stryker does not provide instructions or training on the use of the iVAS Inflatable Vertebral Augmentation System in a manner that does not infringe the '981 patent.  Furthermore, upon information and belief, the FDA has only approved the iVAS Inflatable Vertebral Augmentation System for use in surgical procedures that infringe the '981 patent.

**ANSWER**:

As set forth in Stryker's response to paragraph 37 above, Stryker admits that it had knowledge of the '981 patent since at least 2012.  Stryker denies the remaining allegations set forth in paragraph 41 of the Complaint.

42.     Since at least 2012, Stryker has been and still is willfully infringing the '981 patent.  At least as early as 2012, Stryker had actual knowledge of the '981 patent.  Despite having actual knowledge of the '981 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '981 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. §284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

As set forth in Stryker's response to paragraph 37 above, Stryker admits that it had knowledge of the '981 patent since at least 2012.  Stryker admits that Orthophoenix seeks enhanced damages and a finding that this is an exceptional case but denies that Orthophoenix is entitled to such damages or finding.  Stryker denies the remaining allegations set forth in paragraph 42 of the Complaint.

43.     To the extent applicable, the requirements of 35 U.S.C. §287(a) have been met with respect to the '981 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 43 of Plaintiff's Complaint, and, accordingly, denies the allegations.

44.     As a result of Defendants' infringement of the '981 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 44 of the Complaint.

45.     Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '981 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 45 of the Complaint.

## COUNT III
## (Infringement of U.S. Patent No. 6,663,647)

46.     Orthophoenix references and incorporates by reference paragraphs 1 through 45 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-45 above as though stated herein.

47.     Stryker has been and still is infringing at least Claim 37 of the '647 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 47 of the Complaint.

48.     Defendant Does have been and still are infringing at least Claim 37 of the '647 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 48 of the Complaint.

49.     Stryker has also infringed indirectly and continues to infringe indirectly the '647 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 49 of the Complaint.


50.     Upon information and belief, Stryker gained knowledge of the '647 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product. *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarket Yo urDevice/PremarketSubmissions/PremarketNotification510k/ucm134571.htm.   On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked with the '647 patent.  On information and belief, by analyzing the Kyphon Kyphx Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '647 patent at least as early as 2010.

**ANSWER**:

Stryker admits that it had knowledge of the '647 patent at least as early as 2010.  Stryker

admits that the Kyphon Kyphx Xpander Inflatable Bone Tamp was listed as a "predicate device"

to Stryker's iVAS Balloon Catheter in Stryker's 510(k) submission to the FDA and that the

iVAS Balloon Catheter is a component of the iVAS Inflatable Vertebral Augmentation System.

Stryker denies that it was representing to the FDA that Stryker iVAS Balloon Catheter is

"substantially equivalent" to the extent that phrase has any bearing on this lawsuit or alleged

infringement.   The term "substantial equivalence" as used in Stryker's 510(k) notification is

limited to the definition of substantial equivalence found in the Federal Food, Drug and

Cosmetic Act, as amended and as applied under 21 C.F.R. § 807, Subpart E under which a

device can be marketed without premarket approval or reclassification, and is not intended to

have any bearing whatsoever on the resolution of patent infringement suits or any other patent

matters. Stryker further denies that the cited website supports that allegation.  Stryker is without

sufficient information or knowledge to form a belief as to the truth of the allegation that the

Kyphx Xpander Inflatable Bone Tamp was marked with the '647 patent, and, accordingly, denies

the allegation.  Except as expressly admitted, Stryker denies the remaining allegations set forth in

paragraph 50 of Plaintiff's Complaint.

51.     On information and belief, Stryker has intended, and continues to intend, to
induce patent infringement by third-party physicians and has had knowledge that the inducing
acts would cause infringement or has been willfully blind to the possibility that its inducing acts
would cause infringement.  For example, Stryker provides training and instruction materials to
physicians on how to use the infringing surgical instruments, including the iVAS Inflatable
Vertebral Augmentation System, during the performance of surgical procedures during which
physicians use devices described by Claim 37.  By using the infringing surgical instruments,
including but not limited to the iVAS Inflatable Vertebral Augmentation System, during
procedures during which physicians use devices described by Claim 37 as instructed and trained
by Stryker, physicians directly infringe at least Claim 37 of the '647 patent.  By continuing to
provide instruction and training on the use of the iVAS Inflatable Vertebral Augmentation
System to physicians despite its knowledge that the iVAS Inflatable Vertebral Augmentation
System infringes the '647 patent, Stryker has and continues to specifically intend to induce
infringement of the '647 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 51 of the Complaint.

52.     Since at least 2010, Stryker has been and still is willfully infringing the '647
patent.  At least as early as 2010, Stryker had actual knowledge of the '647 patent.  Despite
having actual knowledge of the '647 patent, Stryker has continued to willfully, wantonly, and
deliberately infringe the '647 patent.  Accordingly, Orthophoenix seeks enhanced damages
pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of
35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

Stryker admits that it had knowledge of the '647 patent since at least 2010.  Stryker

admits that Orthophoenix seeks enhanced damages and a finding that this is an exceptional case

but denies that Orthophoenix is entitled to such damages or finding.   Stryker denies the remaining allegations set forth in paragraph 52 of the Complaint.

53.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '647 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53 of Plaintiff's Complaint, and, accordingly, denies the allegations.

54.     As a result of Defendants' infringement of the '647 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 54 of the Complaint.

55.     Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '647 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 55 of the Complaint.

**COUNT IV**
**(Infringement of U.S. Patent No. 7,044,954)**

56.     Orthophoenix references and incorporates by reference paragraphs 1 through 55 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs 1-55 above as though stated herein.

57.     Stryker has been and still is infringing at least Claim 1 of the '954 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of example only, Stryker directly infringes the '954 patent by using the iVAS Inflatable Vertebral Augmentation System to perform the method described in Claim 1.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 57 of the Complaint.

58.     Defendants Does have been and still are infringing at least Claim 1 of the '954 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker in the manner instructed and taught by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation System is approved for use by the FDA.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 58 of the Complaint.

59.     Stryker has also infringed indirectly and continues to infringe indirectly the '954 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 59 of the Complaint.

60.     At least after being served with the Complaint in this action, Stryker has had knowledge of the '954 patent.

**ANSWER**:

Admitted.

61.     On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing

acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, during the performance of surgical procedures during which physicians use surgical instruments to compact cancellous bone then fill the void created through such compacting with filling material.  By using the infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to compact cancellous bone then fill the void created through such compacting with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '954 patent. By continuing to provide instruction and training to physicians on how to use its surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, to perform procedures during which physicians compact cancellous bone then fill the void created through such compacting with filling material in the manner described in Claim 1 of the '954 patent, Stryker has and continues to specifically intend to induce infringement of the '954 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 61 of the Complaint.

62.     Stryker has also infringed indirectly and continues to infringe indirectly the '954 patent by contributory infringement under 35 U.S.C. § 271(c).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 62 of the Complaint.

63.     Stryker has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, with the knowledge that the iVAS Inflatable Vertebral Augmentation System will be used by physicians to directly infringe at least Claim 1 of the '954 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 63 of the Complaint.

64.     Stryker had knowledge of the '954 patent since at least after being served with the Complaint in this action.  Stryker has had knowledge that the surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, are material components to practicing the surgical procedures claimed in the '954 patent, that the surgical instruments are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the instruments are especially made and/or adapted for use in infringing the '954 patent.  For example, despite having knowledge that the iVAS Inflatable Vertebral Augmentation System is

used by physicians to perform surgical procedures infringing the '954 patent, Stryker continues to provide instruction and training to physicians on how to use the iVAS Inflatable Vertebral Augmentation System in a manner that directly infringes at least Claim 1 of the '954 patent. Stryker does not provide instructions or training on the use of the iVAS Inflatable Vertebral Augmentation System in a manner that does not infringe the '954 patent.  Furthermore, upon information and belief, the FDA has only approved the iVAS Inflatable Vertebral Augmentation System for use in surgical procedures that infringe the '954 patent.

**ANSWER**:

Stryker admits that it had knowledge of the '954 patent since at least after being served

with the Complaint in this action.  Stryker denies the remaining allegations set forth in paragraph

64 of the Complaint.

65.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '954 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 65 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

66.    As a result of Defendants' infringement of the '954 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 66 of the Complaint.

67.    Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '954 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 67 of the Complaint.

**COUNT V**
**(Infringement of U.S. Patent No. 6,280,456)**

68.     Orthophoenix references and incorporates by reference paragraphs 1 through 67 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-67 above as though stated herein.

69.     Stryker has been and still is infringing at least Claim 1 of the '456 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System.  By way of example only, Stryker directly infringes the '456 patent by using the iVAS Inflatable Vertebral Augmentation System to perform the method described in Claim 1.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 69 of the Complaint.

70.     Defendants Does have been and still are infringing at least Claim 1 of the '456 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Inflatable Vertebral Augmentation System Does purchased from Stryker in the manner instructed and taught by Stryker, and in the manner for which the iVAS Inflatable Vertebral Augmentation System is approved for use by the FDA.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 70 of the Complaint.

71.     Stryker has also infringed indirectly and continues to infringe indirectly the '456 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 71 of the Complaint.

72.     Upon information and belief, Stryker gained knowledge of the '456 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product. *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarket Yo urDevice/PremarketSubmissions/PremarketNotification510k/ucm134571.htm.   On  information and belief, the Kyphon Kyphx Xpander Inflatable Bone Tamp was marked with the '456 patent.   On information and belief, by analyzing the Kyphon Kyphx Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '456 patent at least as early as 2010.  Alternatively, upon information and belief, Stryker had knowledge of the '456 patent since at least as early as 2010. Stryker cited the '456 patent in the following U.S. Patent, which was issued in 2010: U.S. Patent No. D626,233.  Alternatively, upon information and belief, Stryker had knowledge of the '456 patent since at least as early as 2012. Stryker cited the '456 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,267,939.

**ANSWER**:

Stryker admits that it had knowledge of the '456 patent at least as early as 2010.  Stryker admits that the Kyphon Kyphx Xpander Inflatable Bone Tamp was listed as a "predicate device" to Stryker's iVAS Balloon Catheter in Stryker's 510(k) submission to the FDA and that the iVAS Balloon Catheter is a component of the iVAS Inflatable Vertebral Augmentation System. Stryker denies that it was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the extent that phrase has any bearing on this lawsuit or alleged infringement.  The term "substantial equivalence" as used in Stryker's 510(k) notification is limited to the definition of substantial equivalence found in the Federal Food, Drug and Cosmetic Act, as amended and as applied under 21 C.F.R. § 807, Subpart E under which a device can be marketed without premarket approval or reclassification, and is not intended to have any bearing whatsoever on the resolution of patent infringement suits or any other patent matters. Stryker further denies that the cited website supports that allegation.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the allegation that the

Kyphx Xpander Inflatable Bone Tamp was marked with the '456 patent, and, accordingly, denies

the allegation.  Stryker admits that the '456 patent is cited on the face of U.S. Patent Nos.

D626,233, which the U.S. Patent and Trademark Office issued as a patent to Stryker Spine on

October 26, 2010, as being new and non-obvious over what is disclosed in the '456 patent.

Stryker admits that the '456 patent is cited on the face of U.S. Patent No. 8,267,939, which the

U.S. Patent and Trademark Office issued as a patent to Stryker Spine on September 18, 2012, as

being new and non-obvious over what is disclosed in the '456 patent. Except as expressly

admitted, Stryker denies the remaining allegations set forth in paragraph 72 of Plaintiff's

Complaint.

73.     On information and belief, Stryker has intended, and continues to intend, to
induce patent infringement by third-party physicians and has had knowledge that the inducing
acts would cause infringement or has been willfully blind to the possibility that its inducing acts
would cause infringement. For example, Stryker provides training and instruction materials to
physicians on how to use the infringing surgical instruments, including but not limited to the
iVAS Inflatable Vertebral Augmentation System, during the performance of surgical procedures
during which physicians use surgical instruments to compact cancellous bone. By using the
infringing surgical instruments, including the iVAS Inflatable Vertebral Augmentation System,
to compact cancellous bone as instructed and trained by Stryker, physicians directly infringe at
least Claim 1 of the '456 patent. By continuing to provide instruction and training to physicians
on how to use its surgical instruments, including the iVAS Inflatable Vertebral Augmentation
System, to perform procedures during which physicians compact cancellous bone in the manner
described in Claim 1 of the '456 patent, Stryker has and continues to specifically intend to
induce infringement of the '456 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 73 of the Complaint.

74.     Stryker has also infringed indirectly and continues to infringe indirectly the '456
patent by contributory infringement under 35 U.S.C. § 271(c).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 74 of the Complaint.

75.     Stryker has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing the infringing surgical instruments, including but not limited to the iVAS Inflatable Vertebral Augmentation System, with the knowledge that the iVAS Inflatable Vertebral Augmentation System will be used by physicians to directly infringe at least Claim 1 of the '456 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 75 of the Complaint.


76.     Stryker had knowledge of the '456 patent since at least 2010.  Since at least 2010, Stryker has had knowledge that the surgical instruments, including the iVAS Inflatable Vertebral Augmentation System, are material components to practicing the surgical procedures claimed in the '456 patent, that the surgical instruments are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the instruments are especially made and/or adapted for use in infringing the '456 patent.  For example, despite having knowledge that the iVAS Inflatable Vertebral Augmentation System is used by physicians to perform surgical procedures infringing the '456 patent, Stryker continues to provide instruction and training to physicians on how to use the iVAS Inflatable Vertebral Augmentation System in a manner that directly infringes at least Claim 1 of the '456 patent. Stryker does not provide instructions or training on the use of the iVAS Inflatable Vertebral Augmentation System in a manner that does not infringe the '456 patent.  Furthermore, upon information and belief, the FDA has only approved the iVAS Inflatable Vertebral Augmentation System for use in surgical procedures that infringe the '456 patent.

**ANSWER**:

As set forth in Stryker's response to paragraph 72 above, Stryker admits that it had

knowledge of the '456 patent since at least 2010.  Stryker denies the remaining allegations set

forth in paragraph 76 of the Complaint.


77.     Since at least 2010, Stryker has been and still is willfully infringing the '456 patent. At least as early as 2010, Stryker had actual knowledge of the '456 patent.  Despite having actual knowledge of the '456 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '456 patent. Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

As set forth in Stryker's response to paragraph 72 above, Stryker admits that it had

knowledge of the '456 patent since at least 2010.   Stryker admits that Orthophoenix seeks

enhanced damages and a finding that this is an exceptional case but denies that Orthophoenix is

entitled to such damages or finding.   Stryker denies the remaining allegations set forth in

paragraph 77 of the Complaint.

78.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met
with respect to the '456 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 78 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

79.     As a result of Defendants' infringement of the '456 patent, Orthophoenix has
suffered monetary damages in an amount adequate to compensate for Defendants' infringement,
but in no event less than a reasonable royalty for the use made of the invention by Defendants,
together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer
damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 79 of the Complaint.

80.     Unless a permanent injunction is issued enjoining Defendants and their agents,
servants, employees, representatives, affiliates, and all others acting or in active concert
therewith from infringing the '456 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 80 of the Complaint.

**COUNT VI**
**(Infringement of U.S. Patent No. 6,623,505)**

81.     Orthophoenix references and incorporates by reference paragraphs 1 through 80 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-80 above as though stated herein.


82.     Stryker has been and still is infringing at least Claim 1 of the '505 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 82 of the Complaint.


83.     Defendant Does have been and still are infringing at least Claim 1 of the '505 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System, Does purchased from Stryker.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 83 of the Complaint.


84.     Stryker has also infringed indirectly and continues to infringe indirectly the '505 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 84 of the Complaint.


85.     Upon information and belief, Stryker gained knowledge of the '505 patent at least as early as 2010.  In 2010, Stryker indicated that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device" to its Stryker iVAS Balloon Catheter, which is a component of the iVAS Inflatable Vertebral Augmentation System, in its request to market the iVAS Balloon Catheter in the United States, which was submitted to the FDA.  By indicating that the Kyphon Kyphx Xpander Inflatable Bone Tamp was a "predicate device," Stryker was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the Kyphon product. *See, e.g.*, http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarket Yo

urDevice/PremarketSubmissions/PremarketNotification510k/ucm134571.htm.   On information and belief, the Kyphx Xpander Inflatable Bone Tamp was marked with the '505 patent.   On information and belief, by analyzing the Kyphon Kyphx Xpander Inflatable Bone Tamp product in sufficient detail to represent to the FDA that it is a predicate device to the iVAS Balloon Catheter, Stryker gained knowledge of the '505 patent at least as early as 2010.

**ANSWER**:

Stryker admits that it had knowledge of the '505 patent at least as early as 2010.  Stryker admits that the Kyphon Kyphx Xpander Inflatable Bone Tamp was listed as a "predicate device" to Stryker's iVAS Balloon Catheter in Stryker's 510(k) submission to the FDA and that the iVAS Balloon Catheter is a component of the iVAS Inflatable Vertebral Augmentation System. Stryker denies that it was representing to the FDA that Stryker iVAS Balloon Catheter is "substantially equivalent" to the extent that phrase has any bearing on this lawsuit or alleged infringement.  The term "substantial equivalence" as used in Stryker's 510(k) notification is limited to the definition of substantial equivalence found in the Federal Food, Drug and Cosmetic Act, as amended and as applied under 21 C.F.R. § 807, Subpart E under which a device can be marketed without premarket approval or reclassification, and is not intended to have any bearing whatsoever on the resolution of patent infringement suits or any other patent matters. Stryker further denies that the cited website supports that allegation.  Stryker is without sufficient information or knowledge to form a belief as to the truth of the allegation that the Kyphx Xpander Inflatable Bone Tamp was marked with the '505 patent, and, accordingly, denies the allegation.  Except as expressly admitted, Stryker denies the remaining allegations set forth in paragraph 85 of Plaintiff's Complaint.

86.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement. For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the iVAS Balloon

Catheter, a component of the iVAS Inflatable Vertebral Augmentation System, during the performance of surgical procedures during which physicians use devices described by Claim 1. By using the infringing surgical instruments, including but not limited to the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System, during procedures during which physicians use devices described by Claim 1 as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '505 patent. By continuing to provide instruction and training on the use of the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System, to physicians despite its knowledge that the iVAS Balloon Catheter, a component of the iVAS Inflatable Vertebral Augmentation System, infringes the '505 patent, Stryker has and continues to specifically intend to induce infringement of the '505 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 86 of the Complaint.

87.     Since at least 2010, Stryker has been and still is willfully infringing the '505 patent.  At least as early as 2010, Stryker had actual knowledge of the '505 patent.  Despite having actual knowledge of the '505 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '505 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

As set forth in Stryker's response to paragraph 85 above, Stryker admits that it had

knowledge of the '505 patent since at least 2010.  Stryker denies the remaining allegations set

forth in paragraph 87 of the Complaint.

88.     To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '505 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 88 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

89.     As a result of Defendants' infringement of the '505 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 89 of the Complaint.

90.     Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '505 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 90 of the Complaint.

## COUNT VII
## (Infringement of U.S. Patent No. 6,440,138)

91.     Orthophoenix references and incorporates by reference paragraphs 1 through 90 of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-90 above as though stated herein.

92.     Stryker has been and still is infringing at least Claim 1 of the '138 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the Aliquot Micro-reamer.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 92 of the Complaint.

93.     By way of example only, with reference to Claim 1 of the '138 patent, the Aliquot Micro-reamer manufactured, sold, offered for sale, or imported by Stryker includes a cannula having an axis establishing a percutaneous path leading to inside a bone.  The Aliquot Micro-reamer includes a shaft that carries a cavity-forming structure adapted to be deployed inside bone

by movement within and along the axis of the cannula.  The cavity-forming structure comprises a surface which directly contacts and shears cancellous bone in response to rotating the shaft within and about the axis of the cannula.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 93 of the Complaint.

94.    Defendant Does have been and still are infringing at least Claim 1 of the '138 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Aliquot Micro-reamer Does purchased from Stryker.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 94 of the Complaint.

95.    Stryker has also infringed indirectly and continues to infringe indirectly the '138 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 95 of the Complaint.

96.    Upon information and belief, Stryker had knowledge of the '138 patent since at least as early as 2012. Stryker cited the '138 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,246,627.

**ANSWER**:

Stryker admits that it had knowledge of the '138 patent at least as early as 2012.  Stryker admits that the '138 patent is cited on the face of U.S. Patent No. 8,246,627, which the U.S. Patent and Trademark Office issued as a patent to Stryker Corporation on August 21, 2012 as being new and non-obvious over what is disclosed in the '138 patent.  Stryker denies the remaining allegations set forth in paragraph 96 of the Complaint.

97.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing

acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Aliquot Micro-reamer, during the performance of surgical procedures during which physicians create cavities in cancellous bone.  By using the infringing surgical instruments, including but not limited to the Aliquot Micro-reamer, during procedures during which physicians create cavities in cancellous bone as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '138 patent.  By continuing to provide instruction and training on the use of the Aliquot Micro-reamer to physicians despite its knowledge that the Aliquot Micro-reamer infringes the '138 patent, Stryker has and continues to specifically intend to induce infringement of the '138 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 97 of the Complaint.

98.    Since at least 2012, Stryker has been and still is willfully infringing the '138 patent.  At least as early as 2012, Stryker had actual knowledge of the '138 patent.  Despite having actual knowledge of the '138 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '138 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

As set forth in Stryker's response to paragraph 96 above, Stryker admits that it had knowledge of the '138 patent since at least 2012.  Stryker admits that Orthophoenix seeks enhanced damages and a finding that this is an exceptional case but denies that Orthophoenix is entitled to such damages or finding.  Stryker denies the remaining allegations set forth in paragraph 98 of the Complaint.

99.    Stryker has also infringed indirectly and continues to infringe indirectly the '138 patent by contributory infringement under 35 U.S.C. § 271(c).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 99 of the Complaint.

100.    On information and belief, Stryker offers to sell or sells within the United States or imports into the United States devices that are a component of the patented invention of the '138 patent or an apparatus for use in practicing a patented process of the '138 patent,

constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of the '138 patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use. As an example, Stryker's iVAS Curette and/or Aliquot Microreamer each is a component of the patented invention of the '138 patent and an apparatus for use in practicing a patented process of the '138 patent, constituting a material part of the invention. Stryker knows that iVAS Curette and/or Aliquot Microreamer each is especially made or especially adapted for use in an infringement of the '138 patent and not a staple article or commodity of commerce suitable for substantial noninfringing use. For instance, using iVAS Curette and/or Aliquot Microreamer each as intended infringes the '138 patent. Stryker was put on notice of the infringing nature as stated above.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 100 of the Complaint.

101.    Orthophoenix incorporates by reference its Preliminary Infringement Contentions served pursuant to the Delaware Default Standard for Discovery Paragraph 4(c) for further explanations regarding Stryker's infringement of the asserted patents (e.g., the '138 patent).

**ANSWER**:

Stryker admits that Orthophoenix seeks to incorporate by reference its Preliminary Infringement Contentions served pursuant to the Delaware Default Standard for Discovery Paragraph 4(c).   Stryker denies the merits of Orthophoenix's Preliminary Infringement Contentions and denies infringement to the extent it is alleged in those contentions.   Stryker denies the remaining allegations set forth in paragraph 101 of the Complaint.

102.    Stryker has also infringed and continues to infringe the '138 patent under 35 U.S.C. § 271(f).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 102 of the Complaint.

103.    On information and belief, Stryker supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention of the '138 patent, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the '138 patent if such combination occurred within the United States. As an example, Stryker supplies or causes to be supplied in or from United States its iVAS Curette and/or Aliquot Microreamer, and actively induces the combination of iVAS Curette and/or Aliquot

Microreamer each with a cannula (e.g., via customer support, marketing communications, brochures, instructions for use, etc.) outside of the United States.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 103 of the Complaint.


104.    On information and belief, Stryker supplies or causes to be supplied in or from the United States a component of a patented invention of the '138 patent that is especially made or especially adapted for use in the invention and not a staple article or commodity of commerce suitable for substantial noninfringing use, where such component is uncombined in whole or in part, knowing that such component is so made or adapted and intending that such component will be combined outside of the United States in a manner that would infringe the patent if such combination occurred within the United States. As an example, Stryker supplies or causes to be supplied in or from United States its iVAS Curette and/or Aliquot Microreamer, which infringes the '138 patent if it is used with a cannula, as iVAS Curette and/or Aliquot Microreamer each is intended to be used. As such, iVAS Curette and/or Aliquot Microreamer each is not a staple article or commodity of commerce suitable for substantial noninfringing use. Stryker intends that iVAS Curette and/or Aliquot Microreamer each will be combined with a cannula outside of the United States in a manner that would infringe the '138 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 104 of the Complaint.


105.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '138 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 105 of Plaintiff's Complaint, and, accordingly, denies the

allegations.


106.    As a result of Defendants' infringement of the '138 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 106 of the Complaint.


107.    Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '138 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 107 of the Complaint.


## COUNT VIII
## (Infringement of U.S. Patent No. 6,863,672)

108.    Orthophoenix references and incorporates by reference the foregoing paragraphs of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-107 above, as well as any other responses to foregoing paragraphs, as though stated herein.


109.    Stryker has been and still is infringing at least Claim 19 of the '672 patent, literally and under the doctrine of equivalents, by using surgical instruments, including but not limited to the Aliquot Directional Bone Tamp.  By way of example only, Stryker directly infringes the '672 patent by performing the method of treating a vertebral body described in Claim 19.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 109 of the Complaint.


110.    Defendants Does have been and still are infringing at least Claim 19 of the '672 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Aliquot Directional Bone Tamp Does purchased from Stryker in the manner instructed and taught by Stryker, and in the manner for which the Aliquot Directional Bone Tamp is approved for use by the FDA.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 110 of the Complaint.

111.    Stryker has also infringed indirectly and continues to infringe indirectly the '672 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 111 of the Complaint.


112.    Upon information and belief, Stryker had knowledge of the '672 patent since at least as early as 2011.  Stryker cited the '672 patent in the following U.S. Patent, which was issued in 2011: U.S. Patent No. 8,038,679.  Alternatively, upon information and belief, Stryker had knowledge of the '672 patent since at least as early as 2012.  Stryker cited the '672 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,246,627.  Alternatively, upon information and belief, Stryker had knowledge of the '672 patent since at least as early as April 2013.  Stryker cited the '672 patent in the following U.S. Patent, which was issued in April 2013: U.S. Patent No. 8,425,518.

**ANSWER**:

Stryker admits that it had knowledge of the '672 patent at least as early as 2011.  Stryker admits that the '672 patent is cited on the face of U.S. Patent No. 8,038,679, which the U.S. Patent and Trademark Office issued as a patent to Stryker Trauma GMBH, Germany on October 18, 2011 as being new and non-obvious over what is disclosed in the '672 patent.  Stryker admits that the '672 patent is cited on the face of U.S. Patent No. 8,246,627, which the U.S. Patent and Trademark Office issued as a patent to Stryker Corporation on August 21, 2012 as being new and non-obvious over what is disclosed in the '672 patent.  Stryker admits that the '672 patent is cited on the face of U.S. Patent No. 8,425,518, which the U.S. Patent and Trademark Office issued as a patent to Stryker Trauma GMBH, Germany on April 23, 2013 as being new and non-obvious over what is disclosed in the '672 patent.  Except as expressly admitted, Stryker denies the remaining allegations set forth in paragraph 112 of the Complaint.


113.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts

would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Aliquot Directional Bone Tamp, during the performance of surgical procedures during which physicians use the infringing surgical instruments to create cavities in the cancellous bone of a vertebral body.  By using the infringing surgical instruments, including the Aliquot Directional Bone Tamp, to create cavities in cancellous bone as instructed and trained by Stryker, physicians directly infringe at least Claim 19 of the '672 patent.  By continuing to provide instruction and training to physicians on how to use the Aliquot Directional Bone Tamp to perform surgical procedures in the manner described in Claim 19 of the '672 patent, Stryker has and continues to specifically intend to induce infringement of the '672 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 113 of the Complaint.


114.    Stryker has also infringed indirectly and continues to infringe indirectly the '672 patent by contributory infringement under 35 U.S.C. § 271(c).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 114 of the Complaint.


115.    Stryker has and continues to intentionally commit contributory infringement by selling, offering to sell, or importing the infringing surgical instruments, including but not limited to the Aliquot Directional Bone Tamp, with the knowledge that the surgical instruments will be used by physicians to directly infringe at least Claim 19 of the '672 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 115 of the Complaint.


116.    Stryker had knowledge of the '672 patent since at least 2011.  Since at least 2011, Stryker has had knowledge that the surgical instruments, including the Aliquot Directional Bone Tamp, are material components to practicing the surgical procedures claimed in the '672 patent, that the surgical instruments are not staple articles or commodities of commerce suitable for substantial non-infringing use, and that the instruments, including the Aliquot Directional Bone Tamp, are especially made and/or adapted for use in infringing the '672 patent.  For example, despite having knowledge that the Aliquot Directional Bone Tamp is used by physicians to perform surgical procedures infringing the '672 patent, Stryker continues to provide instruction and training to physicians on how to use the Aliquot Directional Bone Tamp in a manner that directly infringes at least Claim 19 of the '672 patent.  Stryker does not provide instructions or training on the use of the Aliquot Directional Bone Tamp in a manner that does not infringe the

'672 patent.  Furthermore, upon information and belief, the FDA has only approved the Aliquot Directional Bone Tamp for use in surgical procedures that infringe the '672 patent.

**ANSWER**:

As set forth in Stryker's response to paragraph 112 above, Stryker admits that it had knowledge of the '672 patent since at least 2011.  Stryker denies the remaining allegations set forth in paragraph 116 of the Complaint.

117.    Since at least 2011, Stryker has been and still is willfully infringing the '672 patent. At least as early as 2011, Stryker had actual knowledge of the '672 patent.  Despite having actual knowledge of the '672 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '672 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

As set forth in Stryker's response to paragraph 112 above, Stryker admits that it had knowledge of the '672 patent since at least 2011.  Stryker admits that Orthophoenix seeks enhanced damages and a finding that this is an exceptional case but denies that Orthophoenix is entitled to such damages or finding.  Stryker denies the remaining allegations set forth in paragraph 117 of the Complaint.

118.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '672 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 118 of Plaintiff's Complaint, and, accordingly, denies the allegations.

119.    As a result of Defendants' infringement of the '672 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement,

but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 119 of the Complaint.

120.    Unless a permanent injunction is issued enjoining Defendants and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '672 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 120 of the Complaint.

## COUNT IX
## (Infringement of U.S. Patent No. 7,153,307

121.    Orthophoenix references and incorporates by reference the foregoing paragraphs of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-120 above as though stated herein.

122.    Stryker has been and still is infringing at least Claim 1 of the '307 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 122 of the Complaint.

123.    Defendant Does have been and still are infringing at least Claim 1 of the '307 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components Does purchased from Stryker.

**ANSWER**:

    Stryker denies the allegations set forth in paragraph 123 of the Complaint.


    124.    Stryker has also infringed indirectly and continues to infringe indirectly the '307 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

    Stryker denies the allegations set forth in paragraph 124 of the Complaint.


    125.    At least after being served with the Complaint in this action, Stryker has had knowledge of the '307 patent.

**ANSWER**:

    Admitted.


    126.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components, during the performance of surgical procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material.  By using the infringing surgical instruments, including but not limited to the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components, during procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '307 patent. By continuing to provide instruction and training on the use of the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components to physicians despite its knowledge that the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components infringe the '307 patent, Stryker has and continues to specifically intend to induce infringement of the '307 patent.

**ANSWER**:

    Stryker denies the allegations set forth in paragraph 126 of the Complaint.

127.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '307 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of

the allegations contained in paragraph 127 of Plaintiff's Complaint, and, accordingly, denies the

allegations.

128.    As a result of Defendants' infringement of the '307 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 128 of the Complaint.

129.    Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '307 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 129 of the Complaint.

**COUNT X**
**(Infringement of U.S. Patent No. 6,241,734**

130.    Orthophoenix references and incorporates by reference the foregoing paragraphs of this Complaint.

**ANSWER**:

Stryker incorporates by reference its responses to the preceding allegations of paragraphs

1-129 above, as well as any other responses to foregoing paragraphs, as though stated herein.

131.    Stryker has been and still is infringing at least Claim 1 of the '734 patent, literally and under the doctrine of equivalents, by manufacturing, using, selling, offering to sell, or importing, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 131 of the Complaint.

132.    Defendant Does have been and still are infringing at least Claim 1 of the '734 patent, literally and under the doctrine of equivalents, by using, without license or authority, surgical instruments including, but not limited to, the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components Does purchased from Stryker.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 132 of the Complaint.

133.    Stryker has also infringed indirectly and continues to infringe indirectly the '734 patent by active inducement under 35 U.S.C. § 271(b).

**ANSWER**:

Stryker denies the allegations set forth in paragraph 133 of the Complaint.

134.    Upon information and belief, Stryker had knowledge of the '734 patent since at least as early as 2012. Stryker cited the '734 patent in the following U.S. Patent, which was issued in 2012: U.S. Patent No. 8,303,599.  Alternatively, upon information and belief, Stryker had knowledge of the '734 patent since at least as early as March 2013.  Stryker cited the '734 patent in the following U.S. Patent, which was issued in March 2013: U.S. Patent No. 8,403,936.

**ANSWER**:

Stryker admits that it had knowledge of the '734 patent at least as early as 2012.  Stryker admits that the '734 patent is cited on the face of U.S. Patent No. 8,303,599, which the U.S. Patent and Trademark Office issued as a patent to Stryker Leibinger GmbH & Co. KG on November 6, 2012 as being new and non-obvious over what is disclosed in the '734 patent.

Stryker admits that the '734 patent is cited on the face of U.S. Patent No. 8,403,936, which the

U.S. Patent and Trademark Office issued as a patent to Stryker Leibinger GmbH & Co. KG on

March 26, 2013 as being new and non-obvious over what is disclosed in the '734 patent.  Except

as expressly admitted, Stryker denies the remaining allegations of paragraph 134 in Plaintiff's

Complaint.

135.    On information and belief, Stryker has intended, and continues to intend, to induce patent infringement by third-party physicians and has had knowledge that the inducing acts would cause infringement or has been willfully blind to the possibility that its inducing acts would cause infringement.  For example, Stryker provides training and instruction materials to physicians on how to use the infringing surgical instruments, including the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components, during the performance of surgical procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material.  By using the infringing surgical instruments, including but not limited to the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components during procedures during which physicians create cavities in cancellous bone and fill the cavities with filling material as instructed and trained by Stryker, physicians directly infringe at least Claim 1 of the '734 patent. By continuing to provide instruction and training on the use of the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components to physicians despite its knowledge that the Cortoss Bone Augmentation System, the Verteport Access and Delivery System, the iVAS Inflatable Vertebral Augmentation System, and Aliquot Components infringe the '734 patent, Stryker has and continues to specifically intend to induce infringement of the '734 patent.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 135 of the Complaint.

136.    Since at least 2012, Stryker has been and still is willfully infringing the '734 patent.  At least as early as 2012, Stryker had actual knowledge of the '734 patent.  Despite having actual knowledge of the '734 patent, Stryker has continued to willfully, wantonly, and deliberately infringe the '734 patent.  Accordingly, Orthophoenix seeks enhanced damages pursuant to 35 U.S.C. § 284 and a finding that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Orthophoenix to its attorneys' fees and expenses.

**ANSWER**:

As set forth in Stryker's response to paragraph 134 above, Stryker admits that it had knowledge of the '734 patent since at least as early as 2012.  Stryker admits that Orthophoenix seeks enhanced damages and a finding that this is an exceptional case but denies that Orthophoenix is entitled to such damages or finding.  Stryker denies the remaining allegations set forth in paragraph 136 of the Complaint.

137.    To the extent applicable, the requirements of 35 U.S.C. § 287(a) have been met with respect to the '734 patent.

**ANSWER**:

Stryker is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 137 of Plaintiff's Complaint, and, accordingly, denies the allegations.

138.    As a result of Defendants' infringement of the '734 patent, Orthophoenix has suffered monetary damages in an amount adequate to compensate for Defendants' infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendants, together with interest and costs as fixed by the Court, and Orthophoenix will continue to suffer damages in the future unless Defendants' infringing activities are enjoined by this Court.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 138 of the Complaint.

139.    Unless a permanent injunction is issued enjoining Defendants' and their agents, servants, employees, representatives, affiliates, and all others acting or in active concert therewith from infringing the '734 patent, Orthophoenix will be greatly and irreparably harmed.

**ANSWER**:

Stryker denies the allegations set forth in paragraph 139 of the Complaint.

**RESPONSE TO PRAYER FOR RELIEF**

To the extent that any response to Plaintiff's Prayer for Relief is appropriate, Stryker denies that Plaintiff is entitled to any relief whatsoever.

## DEMAND FOR JURY TRIAL

The request for a jury trial set forth in the Complaint requires no response.

## STRYKER'S AFFIRMATIVE DEFENSES

### STRYKER'S FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### STRYKER'S SECOND AFFIRMATIVE DEFENSE

Stryker has not engaged and is not engaging in any act that constitutes direct infringement, induced infringement, or contributory infringement, either literally or under the doctrine of equivalents, of any valid and enforceable claim of any of the patents-in-suit.

### STRYKER'S THIRD AFFIRMATIVE DEFENSE

Stryker has not engaged and is not engaging in any act that constitutes willful infringement of any valid and enforceable claim of any of the patents-in-suit.

### STRYKER'S FOURTH AFFIRMATIVE DEFENSE

The claims of the patents-in-suit are invalid for failure to meet one or more of the conditions of patentability as specified in Title 35 of the United States Code, including 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq*. and/or non-statutory obviousness-type double patenting.  No claim of any of the patents-in-suit can be validly construed to cover any product or action of Stryker.

### STRYKER'S FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred in whole or in part by prosecution history estoppel.

### STRYKER'S SIXTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred or otherwise limited under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

### STRYKER'S SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's right to seek damages is limited or barred, including without limitation by 35 U.S.C. §§ 286 and 287.

### STRYKER'S EIGHTH AFFIRMATIVE DEFENSE

Plaintiff is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

### STRYKER'S NINTH AFFIRMATIVE DEFENSE

Plaintiff may not seek injunctive relief against Stryker because the alleged damages are not immediate or irreparable.

### STRYKER'S TENTH AFFIRMATIVE DEFENSE

Plaintiff has suffered no damages.

### STRYKER'S ELEVENTH AFFIRMATIVE DEFENSE

The '138 and '672 Patents are unenforceable due to inequitable conduct.  For the reasons set forth in greater detail below (paragraphs 139-222, which are incorporated herein by reference), the '138 patent and '672 patent are each unenforceable as a result of inequitable conduct before the United States Patent and Trademark Office ("the Patent Office") during prosecution of the '138 patent.  Specifically, Mr. Daniel D. Ryan, an attorney who prosecuted the '138 patent, knowingly and deliberately made false and improper statements in a Petition for Revival of the application for the '138 patent (which had been abandoned) and, as Medtronic previously alleged, failed to disclose material prior art references before and during the prosecution of the '138 patent with the intent to deceive the Patent Office into allowing the claims of the '138 patent.  Ryan's inequitable conduct in connection with improperly reviving the '138 patent renders the '672 patent, which claims priority to the '138 patent, unenforceable.

## STRYKER'S TWELFTH AFFIRMATIVE DEFENSE

This is an exceptional case, and Stryker is entitled to an award of attorneys' fees pursuant to 35 U.S.C. § 285.

## RESERVATION OF AFFIRMATIVE DEFENSE

Stryker reserves all other affirmative defenses that may now exist or in the future may become available based on discovery or other proceedings and further factual investigation, and specifically reserves the right to amend its pleadings to assert any such additional defenses or claims.

## <u>STRYKER'S COUNTERCLAIMS</u>

1.     Defendant   and   Counterclaim-Plaintiff   Stryker   Corporation   ("Stryker") counterclaims   against   Plaintiff   and   Counterclaim-Defendant   Orthophoenix,   LLC ("Orthophoenix")   and   Counterclaim-Defendants   Medtronic,   Inc   ("Medtronic")   and   IP Navigation Group, LLC ("IP Nav") as follows:

## PARTIES

2.     Stryker Corporation is a Michigan Corporation with its principal place of business at 2825 Airview Boulevard, Kalamazoo, Michigan, 49002.

3.     By its Complaint, Orthophoenix is a Delaware limited liability company with a principal place of business located at 2515 McKinney Avenue, Suite 1000-B, Dallas, Texas 75201.

4.     On information and belief, IP Nav is a Delaware limited liability company with a principal place of business located at 2515 McKinney Avenue, Suite 1000, Dallas, Texas 75201.

5.     On information and belief, Medtronic is a corporation organized under the laws of the State of Minnesota and has a principal place of business at 710 Medtronic Parkway, Minneapolis, Minnesota 55432.

## JURISDICTION AND VENUE

6.     These Counterclaims seek injunctive relief and damages arising under the antitrust laws of the United States, Title 15 of the United States Code, and a declaratory judgment of non-infringement, patent invalidity, and unenforceability arising under the Patent Laws of the United States, Title 35 of the United States Code.

7.     This Court has jurisdiction over the subject matter of these Counterclaims pursuant to 15 U.S.C. §§ 4, 15, 26, and 1121 and 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

8.     On information and belief, this Court has personal jurisdiction, general and specific over Counterclaim-Defendants because they have sufficient minimum contacts to establish personal jurisdiction in this district.

9.     The venue requirements of 15 U.S.C. §§ 15(a), 22, and 26 and 28 U.S.C. §§ 1391 and 1400(b) are technically satisfied, although venue is more appropriate in the Western District of Michigan under 28 U.S.C. § 1404.

## FIRST COUNTERCLAIM AS TO ORTHOPHOENIX, LLC
### (DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF THE '110 PATENT)

10.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-9.

11.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,248,110 ("the '110 patent") and that Stryker is infringing the '110 patent directly and by inducement.

12.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '110 patent.  Stryker has not induced, and is not inducing, the infringement of any valid and enforceable claim of the '110 patent.

13.     The '110 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

14.     The '110 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

15.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability, and non-infringement of the '110 patent.

16.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

17.     Stryker is entitled to judgment by this Court declaring all claims of the '110 patent invalid, unenforceable, and/or not infringed by Stryker.

18.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

**SECOND COUNTERCLAIM AS TO ORTHOPHOENIX, LLC**
**(DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND**
**UNENFORCEABILITY OF THE '981 PATENT)**

19.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-18.

20.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,981,981 ("the '981 patent") and that Stryker is infringing the '981 patent directly and by inducement and contributory infringement.

21.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '981 patent.  Stryker has not induced or contributed to, and is not inducing or contributing to, the infringement of any valid and enforceable claim of the '981 patent.

22.     The '981 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

23.     The '981 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

24.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability and non-infringement of the '981 patent.

25.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

26.     Stryker is entitled to judgment by this Court declaring all claims of the '981 patent invalid, unenforceable, and/or not infringed by Stryker.

27.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

**THIRD COUNTERCLAIM AS TO ORTHOPHOENIX, LLC**
**(DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND**
**UNENFORCEABILITY OF THE '647 PATENT)**

28.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-27.

29.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,663,647 ("the '647 patent") and that Stryker is infringing the '647 patent directly and by inducement.

30.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '647 patent.  Stryker has not induced, and is not inducing, the infringement of any valid and enforceable claim of the '647 patent.

31.     The '647 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

32.     The '647 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

33.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability, and non-infringement of the '647 patent.

34.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

35.     Stryker is entitled to judgment by this Court declaring all claims of the '647 patent invalid, unenforceable, and/or not infringed by Stryker.

36.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

## FOURTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC (DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF THE '954 PATENT)

37.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-36.

38.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 7,044,954 ("the '954 patent") and that Stryker is infringing the '954 patent directly and by inducement and contributory infringement.

39.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '954 patent.  Stryker has not induced or contributed to, and is not inducing or contributing to, the infringement of any valid and enforceable claim of the '954 patent.

40.     The '954 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

41.     The '954 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

42.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability, and non-infringement of the '954 patent.

43.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

44.     Stryker is entitled to judgment by this Court declaring all claims of the '954 patent invalid, unenforceable, and/or not infringed by Stryker.

45.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

## FIFTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC
## (DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND
## UNENFORCEABILITY OF THE '456 PATENT)

46.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-45.

47.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,280,456 ("the '456 patent") and that Stryker is infringing the '456 patent directly and by inducement and contributory infringement.

48.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '456 patent.  Stryker has not induced or contributed to, and is not inducing or contributing to, the infringement of any valid and enforceable claim of the '456 patent.

49.     The '456 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not

limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

50.     The '456 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

51.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability, and non-infringement of the '456 patent.

52.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

53.     Stryker is entitled to judgment by this Court declaring all claims of the '456 patent invalid, unenforceable, and/or not infringed by Stryker.

54.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

## SIXTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC
## (DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND
## UNENFORCEABILITY OF THE '505 PATENT)

55.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-54.

56.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,626,505 ("the '505 patent") and that Stryker is infringing the '505 patent directly and by inducement.

57.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any

valid and enforceable claim of the '505 patent.  Stryker has not induced, and is not inducing, the infringement of any valid and enforceable claim of the '505 patent.

58.     The '505 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

59.     The '505 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

60.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability, and non-infringement of '505 patent.

61.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

62.     Stryker is entitled to judgment by this Court declaring all claims of the '505 patent invalid, unenforceable, and/or not infringed by Stryker.

63.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

**SEVENTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC**
**(DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND**
**UNENFORCEABILITY OF THE '138 PATENT)**

64.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-63.

65.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,440,138 ("the '138 patent") and that Stryker is infringing the '138 patent directly and by inducement.

66.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '138 patent.  Stryker has not induced, and is not inducing, the infringement of any valid and enforceable claim of the '138 patent.

67.     The '138 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

68.     The '138 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

69.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability, and non-infringement of the '138 patent.

70.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

71.     Stryker is entitled to judgment by this Court declaring all claims of the '138 patent invalid, unenforceable, and/or not infringed by Stryker.

72.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

**EIGHTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC**

**(DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND
UNENFORCEABILITY OF THE '672 PATENT)**

73.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-72.

74.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,863,672 ("the '672 patent") and that Stryker is infringing the '672 patent directly and by inducement and contributory infringement.

75.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '672 patent.  Stryker has not induced or contributed to, and is not inducing or contributing to, the infringement of any valid and enforceable claim of the '672 patent.

76.     The '672 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

77.     The '672 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

78.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability and non-infringement of the '672 patent.

79.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

80.     Stryker is entitled to judgment by this Court declaring all claims of the '672 patent invalid, unenforceable, and/or not infringed by Stryker.

81.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

### NINTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC (DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF THE '307 PATENT)

82.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-81.

83.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 7,153,307 ("the '307 patent") and that Stryker is infringing the '307 patent directly and by inducement.

84.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '307 patent.  Stryker has not induced, and is not inducing, the infringement of any valid and enforceable claim of the '307 patent.

85.     The '307 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* non-statutory obviousness-type double patenting.

86.     The '307 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

87.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability and non-infringement of the '307 patent.

88.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

89.     Stryker is entitled to judgment by this Court declaring all claims of the '307 patent invalid, unenforceable, and/or not infringed by Stryker.

90.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

## TENTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC
## (DECLARATION OF NON-INFRINGEMENT, INVALIDITY AND UNENFORCEABILITY OF THE '734 PATENT)

91.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-90.

92.     Orthophoenix, by its Complaint, alleges that it is the owner of U.S. Patent No. 6,241,734 ("the '734 patent") and that Stryker is infringing the '734 patent directly and by inducement.

93.     No accused product or method made, used, sold, offered for sale, or imported by Stryker constitutes an infringement, either literal or under the doctrine of equivalents, of any valid and enforceable claim of the '734 patent.  Stryker has not induced, and is not inducing, the infringement of any valid and enforceable claim of the '734 patent.

94.     The '734 patent is invalid for failure to meet one or more conditions of patentability as specified in the Patent Laws (Title 35 of the U.S. Code), including, but not

limited to, 35 U.S.C. §§ 101, 102, 103, and/or 112 *et seq.* and/or non-statutory obviousness-type double patenting.

95.     The '734 patent is unenforceable under principles of equity, including waiver, laches, estoppel, patent misuse, acquiescence, and/or unclean hands.

96.     An actual, justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer as to the invalidity, unenforceability and non-infringement of the '734 patent.

97.     The baseless allegations of patent infringement made by Orthophoenix against Stryker are causing irreparable damage to Stryker.

98.     Stryker is entitled to judgment by this Court declaring all claims of the '734 patent invalid, unenforceable, and/or not infringed by Stryker.

99.     Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

**ELEVENTH COUNTERCLAIM AS TO ALL COUNTERCLAIM DEFENDANTS (CONSPIRACY IN RESTRAINT OF TRADE)**

100.    Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-99.

**Trade and Commerce**

101.    Counterclaim-Defendants are engaged in concerted activity affecting interstate commerce including substantial efforts to assert invalid and/or non-infringed patents seeking, among other things, injunctive relief or licensing against competitors throughout the United States.

102.    Counterclaim-Defendants' predatory actions that give rise to the antitrust claims asserted herein have an intended and substantial effect within the United States, including raising

prices for medical devices and harming Stryker's ability to compete in interstate commerce related to minimally invasive vertebral compression fracture treatment products.

## The Relevant Markets

103.   The relevant product market is the minimally invasive vertebral compression fracture treatment product market, which includes kyphoplasty and vertebroplasty, including licensing of such technology.  Medtronic competes against Stryker in that market.  IP Nav and Orthophoenix compete with Stryker relative to licensing of such technology.

104.   The relevant geographic market is the United States.

## Medtronic's Prior Admissions of Invalidity and/or Unenforceability Regarding the Patents-In-Suit

105.   By Orthophoenix's Complaint, the patents-in-suit are part of a portfolio of patents that was owned by Kyphon Inc. ("Kyphon") prior to Medtronic's acquisition of Kyphon in 2007.

106.   On November 23, 2005, Kyphon, along with Dr. Harvinder S. Sandhu, M.D. ("Dr. Sandhu"), filed a lawsuit, *Sandhu and Kyphon, Inc. v Medtronic Sofamor Danek, Inc., et al.,* Case No. 05-2863, in the Western District of Tennessee against the following Medtronic entities:   Medtronic Sofamor Danek, Inc., Medtronic Sofamor Danek USA, Inc., and SDGI Holdings, Inc. (the "Medtronic lawsuit").

107.   In the Medtronic lawsuit, Kyphon and Dr. Sandhu alleged, *inter alia*, that Medtronic's subsidiaries stole Dr. Sandhu's trade secrets relating to the treatment of vertebral compression fractures and, in violation of the patent laws, filed patent applications relating to Dr. Sandhu's trade secrets without naming Dr. Sandhu as an inventor.   Kyphon also alleged that Medtronic violated the patent laws by filing at least two additional patent applications embodying Dr. Sandhu's devices for the treatment of vertebral compression fractures.

108.    On April 26, 2006, Kyphon and Dr. Sandhu amended their complaint against the Medtronic entities to add allegations of infringement of additional Kyphon patents, including United States Patent Numbers 4,969,888; 5,108,404; 6,235,043; 6,440,138 ("the '138 patent") and 6,863,672 ("the '672 patent").

109.    Throughout the Medtronic lawsuit, Medtronic, through its subsidiaries, repeatedly admitted in Court documents that the patents asserted by Kyphon, including the '138 and '672 patents, are invalid and/or unenforceable.  The '138 and '672 patents are the very same patents that Medtronic later agreed with Orthophoenix and IP Nav to transfer to Orthophoenix for the specific purpose of asserting them against Stryker in this lawsuit and against other competitors of Medtronic in other lawsuits.

110.    For example, on August 3, 2006, Medtronic, through its subsidiaries, answered the Amended Complaint filed by Kyphon in the Medtronic lawsuit and stated the following:

<u>**Twenty-Second Defense**</u>

**(Invalidity of Kyphon's Patents)**

The Kyphon patents asserted against Medtronic, namely the '888, '404, '043, '138, and '672 patents are invalid because they fail to satisfy the requirements of 35 U.S.C. § 101, et seq., including, without limitation, sections 101, 102, 103, and 112.

111.    On April 12, 2007, the Medtronic parties filed an Amended Answer to the Amended Complaint admitting that Kyphon's asserted patents, including, for example, the '138 and '672 patents are invalid, and further admitting in a counterclaim that certain of Kyphon's asserted patents, including, for example, the '138 patent, are unenforceable due to inequitable conduct during prosecution of those patents.  On or about March 13, 2007, the Medtronic parties served Interrogatory Responses that set forth in detail and in claim charts how the claims of the '138 patent and '672 patent are invalid.

## Twenty-Second Defense

### (Invalidity of Kyphon's Patents)

The Kyphon patents asserted against Medtronic, namely the '888, '404, '043, '138, and '672 patents are invalid because they fail to satisfy the requirements of 35 U.S.C. § 101, et seq., including, without limitation, sections 101, 102, 103, and 112.

## Twenty-Fourth Defense

### (Unenforceability Due to Inequitable Conduct)

The Kyphon patents asserted against Medtronic, namely the '888, '404, and '138 patents, are unenforceable due to inequitable conduct during the prosecution of those patents.

## Seventh Counterclaim by MSD Inc., MSD USA, and SDGI

### (Declaratory Judgment of Unenforceability Due to Inequitable Conduct)

67.     MSD Inc., MSD USA, and SDGI reassert and incorporate by reference the allegations set forth in paragraphs 1-66 as though fully set forth herein.

68.     This Counterclaim is an action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 et seq.

69.     Kyphon filed suit against Medtronic and alleged in its Complaint that MSD Inc., MSD USA, and SDGI infringe United States Patent Nos. 4,969,888 ("the '888 patent"), 5,108,404 ("the '404 patent"), 6,235,043 ("the '043 patent"), 6,440,138 ("the '138 patent") and 6,863,672 ("the '672 patent"). MSD Inc., MSD USA, and SDGI now seek a declaration of unenforceability due to inequitable conduct as to the '888, '404, and '138 patents, and any applications or patents related thereto.

## United States Patent Application Serial No. 09/055,805 (the "'805 application")

78.     The '805 application was filed on April 6, 1998.  The '805 application was pending before the PTO until its issuance as the '138 patent on August 27, 2002, assigned to Kyphon, Inc.   The named inventors on the '805 application are Mark A. Reiley and Arie Scholten, and the prosecuting attorney was Daniel Ryan of the law firm Ryan Kromholz and Manion.  During the entirety of the time that the '805 application was pending before the PTO, all those substantively involved with the prosecution of the '805 application had a duty to disclose to the PTO information material to the patentability of one or more claims of the application.

79.     On October 20, 2000, prosecuting attorney Daniel Ryan filed a patent application on behalf of Mark A. Reiley.  That application was identified as Application No. 09/693,272 and ultimately issued on August 26, 2003, as U.S. Patent No. 6,610,091 ("the '091 patent").  The '091 patent was directed to devices and surgical methods to treat various types of adult spinal pathologies.

80.     On March 5, 2002, during the prosecution of the '091 patent and while the '805 application was pending, prosecuting attorney Daniel Ryan submitted to the PTO on behalf of Mark A. Reiley, an Information Disclosure Statement citing, inter alia, U.S. Patent No. 5,015,255 to Kuslich ("the Kuslich patent").  The Kuslich patent is prima facie prior art as to the claims of the '805 application.  The Kuslich patent describes all of the elements of one or more claims of the '805 application and constitutes prior art, as it was issued on May 14, 1991.  As such, the Kuslich patent was material to the prosecution of the '805 application.

81.     One or more of the inventors, and/or others substantively involved with the filing and prosecution of the '805 application failed to disclose the Kuslich patent to the PTO for

consideration in the '805 patent application.  In doing the aforesaid act, one or more of the inventors, and/or others associated with the filing and prosecution of the '805 application violated the duty of disclosure and duty of candor, and did so with the intent to deceive the PTO as evidenced by the fact that those with a duty to disclose knew of the existence of this highly material art, yet failed to disclose it to the PTO.  This failure to disclose material prior art, renders the claims of the '138 patent, and all patents and patent applications related to the '805 application, unenforceable.

### Eighth Counterclaim by MSD Inc., MSD USA, and SDGI

#### (Declaratory Judgment of Non-Infringement and Invalidity of the Kyphon Patents)

82.    MSD Inc., MSD USA, and SDGI reassert and incorporate by reference the allegations set forth in paragraphs 1-83 as though fully set forth herein.

83.    The manufacture, use, sale, offer to sell, and/or importation of the Arcuate XP does not infringe and has not infringed any valid claim of Kyphon's '888, '404, '138, '672, or '043 patents. Medtronic, its customers, and all others have the right to manufacture, have made, use, sell, offer to sell, and import the Arcuate XP, unhampered and unrestricted by Counter Defendant Kyphon.

84.    The claims of Kyphon's '888, '404, '138, '672, and '043 patents are invalid for failure to comply with one or more provisions of the Patent Laws of the United States, Title 35, United States Code, §§ 101 et seq., including without limitation Sections 101, 102, 103 and/or 112.

112.    Moreover, in 2006, Medtronic filed suit against Kyphon, Inc. in the United States District Court for the Northern District of California, Case No. 06-02559, admitting that certain of Kyphon's patents, including, for example, the '138 and '672 patents, are invalid, and seeking declaratory judgment to that effect.

<u>**SECOND COUNT**</u>

**(Non-Infringement and Invalidity of the Kyphon Patents)**

36.     Plaintiffs incorporate the allegations of the foregoing paragraphs by reference as if fully set forth herein.

37.     The manufacture, use, sale, offer to sell, and/or importation of Medtronic's osteotome does not infringe and has not infringed any valid claim of Kyphon's '888, '404, '138, '672 and '043 patents.  Plaintiffs, their customers, and all others have the right to manufacture, have made, use, sell, offer to sell, and import Medtronic's osteotome, unhampered and unrestricted by Defendant.

38.     The claims of Kyphon's '888, '404, '138, '672 and '043 patents are invalid for failure to comply with one or more provisions of the Patent Laws of the United States, Title 35, United States Code, §§ 101 et seq., including without limitation Sections 101, 102, 103 and/or 112.

113.     Both the *Harvinder Sandhu and Kyphon, Inc. v. Medtronic Sofamor Danek, Inc., et al.,* Case No. 05-2863 (W.D. Tenn.) case and the *Medtronic, Inc., et al. v. Kyphon, Inc.,* Case No. 3:06-cv-02559 (N.D. Cal.) case terminated in a voluntary stipulation of dismissal with prejudice in November 2007.

**Stryker's Pre-Suit Evidence of**
<u>**Non-Infringement and Invalidity of the Patents-In-Suit**</u>

114.     On May 13, 2013, IP Nav sent a letter to Stryker relating to potential licensing of patents owned by IP Nav's confidential client.  IP Nav later identified this confidential client as Orthophoenix.

115.     At the request of IP Nav, on May 22, 2013, Stryker entered into a confidentiality and forbearance agreement (FBA) with IP Nav in order to engage in discussions relating to patents allegedly owned by Orthophoenix, including the patents-in-suit.

116.     Stryker explained to IP Nav how Orthophoenix's patents, and specifically the patents-in-suit, were not infringed and/or were invalid.  Stryker provided IP Nav with thirteen detailed preliminary briefs and claim charts, numbering over 300 pages in total, which establish summary judgment of non-infringement and/or invalidity of the Orthophoenix patents.

117.    Despite receiving this detailed analysis of non-infringement and invalidity from Stryker, Orthophoenix later filed this lawsuit on October 1, 2013.

**Counter-Defendants' Agreement to Enforce Knowingly
Invalid and Unenforceable Patent Rights**

118.    Upon information and belief, Mr. Erich Spangenberg founded IP Nav in 2003 "as a platform to provide monetization services to patent assertion holding companies owned by Erich and Audrey Spangenberg." http://www.ipnav.com/about-us/. IP Nav is a patent monetization company, advertising that it helps "turn idle patents into cash cows." www.ipnav.com/what-we-do/. IP Nav contends that it "unlocks the value trapped in our clients' IP portfolios," and further states that "IP Nav's clients don't care about the complexities-they care about results: How much money can we expect? How soon can we get it?" *Id*. According to its website, in 2008, IP Nav began accepting more third party patent owners as clients, and, in 2011, IP Nav began actively marketing its services to third party patent owners. http://www.ipnav.com/about-us/.

119.    Upon information and belief, Mr. Spangenberg is currently the Chief Executive Officer and Co-Chairman of IP Nav.

120.    On April 25, 2013, Mr. Spangenberg formed Orthophoenix, a limited liability company organized under the laws of the State of Delaware. Upon information and belief, Orthophoenix shares the same principal place of business as IP Nav, which is 2515 McKinney Avenue, Suite 1000, Dallas, Texas 75201.

121.    By its Complaint, on April 26, 2013, only one day after its formation, Orthophoenix allegedly completed a transaction to acquire certain Medtronic patents from Medtronic, including the patents-in-suit. Upon information and belief, at the time of the sale, Medtronic knew that Orthophoenix and/or IP Nav would be attempting to extract unwarranted

licensing royalties or other monetary payments from Medtronic's competitors by threatening expensive "shakedown" patent litigation and then, if unable to extract royalties, asserting at least certain of those patents against Stryker and other competitors of Medtronic. Stryker believes that discovery will show that as part of this transaction or a related transaction, Medtronic has received or will receive additional consideration for these patents along with the benefit of chilling competition in the relevant market.

122. Upon information and belief, Orthophoenix was formed solely for the purpose of acquiring the Medtronic patents and using those patents to attempt to extract high royalties or other payments from Medtronic's competitors. In fact, Stryker believes that discovery will show that the Medtronic patents are Orthophoenix's sole asset and sole source of potential revenue. Since its inception on April 25, 2013, Orthophoenix has filed eight separate lawsuits against competitors of Medtronic in the District Court for the District of Delaware. This "highly unusual" conspiratorial agreement between Medtronic, IP Nav and Orthophoenix has already been recognized and noted upon by the medical industry. (*See* Ex. A.)

123. At the time Orthophoenix acquired the Medtronic patents, Orthophoenix and IP Nav knew or should have known that Medtronic had previously admitted in court filings in two Medtronic lawsuits involving Kyphon, that one or more of the Medtronic patents are invalid and/or unenforceable. At a minimum, prior to filing the instant lawsuit, Orthophoenix, IP Nav, and Medtronic knew or should have known Orthophoenix was asserting invalid or non-infringed claims against Stryker.

124. On information and belief, IP Nav is Orthophoenix's licensing agent and represents Orthophoenix in monetizing the patents-in-suit. Stryker believes that discovery will show that IP Nav is financing 100% of Orthophoenix's efforts to enforce the Medtronic patents,

including financing the Complaint against Stryker, in return for a percentage of any proceeds obtained from licensing or any other recovery on the Medtronic patents. *See* http://www.ipnav.com/what-we-do/why-ipnav/. For example, IP Nav's website states that it provides patent monetization financing and states that IP Nav will finance "100% of the costs involved in a patent monetization campaign" in return for a "percentage of the gross proceeds." http://www.ipnav.com/resource-center/ideas-and-insights/financing-patent-monetization/.

125.    Stryker believes that discovery will further show that Medtronic conspired with IP Nav and/or Orthophoenix to assert admittedly invalid and non-infringed Medtronic patents against Stryker as part of an overall patent monetization conspiracy aimed at disrupting competition in the relevant market. Medtronic cannot, by sale or otherwise, purge its court admissions through agreements with third parties to assert the invalid patents in its stead.

## Counter-Defendants' Sherman Act Violation

126.    The Sherman Act declares illegal, among other things, "every contract, combination…or conspiracy, in restraint of trade or commerce among the several states." 15 U.S.C. § 1 *et seq*.

127.    Counter-Defendants' acts and conduct are a *per se* or a rule of reason violation of the Sherman Act.

128.    Counter-Defendants' acts and conduct constitute an agreement, conspiracy or combination between two or more entities or persons to restrain trade. The illegal conduct by Counter-Defendants is intended to extort royalties from Medtronic's competitors through threats and costly patent litigation involving invalid and/or non-infringed patents. Such royalties increase the costs of medical devices to the consuming public.

129.    Counter-Defendants know and should have known that the claims of infringement of the patents-in-suit alleged in this Complaint are objectively baseless, unreasonable, and unsupported, at least because the patents-in-suit are invalid.  For example, as stated above, Medtronic previously admitted in court filings that the '138 patent is invalid and unenforceable and the '672 patent is invalid.   Prior to filing the instant lawsuit, Stryker provided to Orthophoenix and IP Nav detailed bases in fact and law as to why each of the patents-in-suit are invalid and/or not infringed.

130.    Despite the fact that Counter-Defendants know and should have known that the manufacture, sale, or use of Stryker's iVAS, Verteport, Aliquot, and Cortoss products did not and does not infringe any valid claim of the patents-in-suit.   Upon information and belief, Counter-Defendants deliberately and in bad faith as part of a scheme caused Orthophoenix to bring this patent infringement action against Medtronic's competitor Stryker.

131.    Counter-Defendants deliberately and in bad faith caused Orthophoenix to bring patent infringement actions against other competitors of Medtronic for purposes of obtaining unwarranted patent royalties or other payments through "shakedown" litigation, including Ascendx Spine, Inc. for infringement of, *inter alia*, the '138 and '672 patents, DFine Inc. for infringement of, *inter alia*, the '138 and '672 patents, Osseon Therapeutics, Inc. for infringement of, *inter alia*, the '672 patent, Sintea Plustek LLC for infringement of, *inter alia*, the '138 and '672 patent, Soteira, Inc. for infringement of, *inter alia*, the '138 and '672 patents, and Wright Medical Technology, Inc. for infringement of the '138 and '672 patents.   Ascendx Spine, Inc., DFine Inc., and Wright Medical Technology, Inc. have all pled that Orthophoenix's asserted patents are not infringed and are invalid.   *Orthophoenix, LLC v. Ascendx Spine, Inc. et al.,* Case No. 13-1001, Docket No. 8; *Orthophoenix, LLC v. DFine, Inc. et al.,* Case No. 13-1003, Docket

75

No. 8; *Orthophoenix, LLC v. Wright Medical Technology, Inc.*, *et al.*, Case No. 13-1007, Docket No. 7.

132.    For at least the reasons set forth in Paragraphs 129 through 131 above, the agreement, conspiracy or combination between the Counter-Defendants is an unreasonable restraint of trade in the relevant product market of minimally invasive vertebral compression fracture treatment, which includes kyphoplasty and vertebroplasty under either a *per se* or a rule of reason analysis.

133.    Counter-Defendants' restraints on trade affect interstate commerce.  The relevant geographic market is the United States.

134.    Counter-Defendants' acts and conduct are harmful to and substantially burden competition, including but not limited to, increasing prices for medical devices to the public, creating a barrier to entry in the relevant product market and attempting under the threat of baseless litigation to force current market participants out of the market through injunctive relief or the payment of unwarranted royalties for invalid and/or unenforceable patents.

135.    The restraint that Counter-Defendants impose is justified by no legitimate business purpose.

136.    Counter-Defendants' acts and conduct constitute a combination or conspiracy and an unreasonable restraint of trade, in violation of the Sherman Act, 15 U.S.C. § 1 et seq.

137.    As a direct result of Counter-Defendants' unlawful conduct, Stryker has suffered substantial injury, loss and monetary damages, including but not limited to, attorneys' fees and injury to Stryker's business reputation and goodwill.

138.     Counter-Defendants' unlawful conduct and illegal activity have and will continue to irreparably harm and injure Stryker, unless and until Counter-Defendants are enjoined by this Court.

## TWELFTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC
### (DECLARATION OF UNENFORCEABILITY OF THE '138 PATENT DUE TO INEQUITABLE CONDUCT)

139.     Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-138.

140.     Subject to Stryker's defenses, an actual, immediate, and justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer and First Amended Answer as to the unenforceability of the '138 patent.

141.     Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the Patent Office.  Mr. Daniel Ryan is an attorney who prosecuted the patent applications that issued into the '138 and '672 patents.  Mark Reiley and Arie Scholten are named inventors on the '138 and '672 patents.  Ryan, Reiley, and Scholten each owed a duty of candor and good faith to the Patent Office while prosecuting or participating in the prosecution of the '138 and '672 patent applications.

142.     The '138 patent is unenforceable as a result of inequitable conduct before the Patent Office based on Ryan's breach of the duty of candor and good faith before the Patent Office.  Ryan made false and misleading statements to the Patent Office in an attempt to get the Patent Office to revive the application for the '138 patent after it became abandoned, and Ryan also failed to disclose material prior art references during the prosecution of the '138 patent, with the intent to deceive the Patent Office.

143.    But for Ryan's false and misleading statements to the Patent Office in a Petition to revive the abandoned application for the '138 patent, the Patent Office would not have revived the application and the '138 patent would not have issued.   Ryan's false and misleading statements to the Patent Office in the Petition are affirmative acts of egregious misconduct.   By making these false and misleading statements, Ryan breached his duty of candor and good faith to the Patent Office.   Ryan knowingly and deliberately made the false and misleading statements with intent to deceive the Patent Office into reviving the application.

144.    But for Ryan's failure to disclose material, non-cumulative prior art references, U.S. Patent Nos. 5,549,679 ("Kuslich 679 patent"), 5,571,189 ("Kuslich 189 patent"), 5,015,255 ("Kuslich 255 patent"), 5,062,845 ("Kuslich 845 patent"), 5,445,639 ("Kuslich 639 patent") (collectively, "the Kuslich references"), which Ryan knew about during the prosecution of the '138 patent application, the Patent Office would not have allowed the claims of the '138 patent application and the claims would not have issued.   Ryan's failure to disclose the Kuslich references, which Ryan knew were material to the prosecution of the '138 patent, are affirmative acts of egregious misconduct.   By failing to disclose the Kuslich references during the prosecution of the '138 patent, Ryan breached his duty of candor and good faith to the Patent Office.   Ryan knowingly and deliberately failed to disclose each of the Kuslich references to the Patent Office with intent to deceive the Patent Office into allowing the claims of the '138 patent.

145.    As discussed in Paragraph 109 and 111 above (which are incorporated by reference herein), Medtronic previously alleged that the '138 patent was unenforceable due to Ryan's failure to disclose the Kuslich '255 patent during prosecution of the '138 patent application.   Stryker further incorporates paragraphs 80 and 81 of Medtronic's Seventh Counterclaim referenced in Paragraph 111 above.

## **Background And The Kuslich References**

146.    Ryan began prosecuting patents for Kyphon in late 1996.  Ryan testified that, at that time, Kyphon was a small entity with one employee and two patents, U.S. Patent Nos. 4,969,888 and 5,108,404, which are now expired.  Ryan's role was to prosecute and procure additional patents on behalf of Kyphon and to grow its patent portfolio.

147.    One of the new patent applications filed and prosecuted by Ryan on behalf of Kyphon was U.S. Patent Application No. 09/055,805 ("the '805 application"), entitled "Structures and Methods for Creating Cavities in Interior Body Regions."  The '805 application eventually issued into the '138 patent.  Mark Reiley and Arie Scholten were named inventors on the '138 patent.

148.    While prosecuting patents for Kyphon, Ryan collected a number of patents issued to an inventor named Stephen Kuslich and assigned on their face to a company called Spine-Tech or Spineology.  This collection included the Kuslich references, i.e., the Kuslich '255 patent (issued on May 14, 1991), the Kuslich '845 patent (issued on Nov. 5, 1991), the Kuslich '639 patent (issued August 29, 1995), the Kuslich '679 patent (issued on August 27, 1996), and the Kuslich '189 patent (issued on November 5, 1996).  Each of these Kuslich references are prior art to the '138 patent.

149.    On April 6, 1998, Ryan filed the '805 application.  As Medtronic previously alleged (see paragraph 111 above), the '805 application was pending before the Patent Office until its issuance as the '138 patent on August 27, 2002.  The claims of the '805 application as filed included claims to, among other things, a tool for creating a cavity that includes a shaft adapted for insertion into bone and a structure carried by the shaft that cuts cancellous bone and forms a cavity in response to rotation of the shaft.

150.    On or about April 13, 1998, Ryan filed an Information Disclosure Statement in the prosecution of an unrelated patent application, Application No. 09/059,796, which related to the use of balloon catheters in bone.  In that Information Disclosure Statement, Ryan disclosed the Kuslich '679 and '189 patents.

151.    Ryan was aware of the Kuslich '189 and '679 patents no later than April 13, 1998.  Indeed, in the late 1990s, Ryan disclosed the Kuslich '189 and '679 patents to the Patent Office while prosecuting several other patent applications.  However, despite knowing about the Kuslich '189 and '679 patents during almost the entire prosecution of the '805 application, Ryan never disclosed the Kulisch '189 and '679 patents to the Patent Office during the prosecution of the '138 patent despite the high materiality of their disclosure.

152.    The Kuslich '189 and '679 patents are directed to an implant for insertion into a cavity that has been made in a vertebral space including in the intervertebral disc and bone of adjacent vertebral bodies.  The Kuslich '189 and '679 patents reference the Kuslich '255 and '845 patents and incorporate the Kuslich '255 patent by reference.  For example, the Kuslich '189 and '679 patents describe "[t]he formation of the enlarged spherical chamber 44" which "is formed through the use of an intervertebral reamer such as that shown and described in U.S. Pat. No. 5,015,255 and copending U.S. patent application Ser. No. 07/350,050."  Application serial number 07/350,050 issued as the Kuslich '845 patent.  Elsewhere in the Kuslich '189 and '679 patents, the specifications state that "the Kuslich Expandable Reamer, U.S. Patent No. 5,015,255" is "incorporated herein by reference."  And, again, elsewhere, the Kuslich 255 patent is referenced as describing "special tools for safe insertion."

153.    A portion of Figure 25 from the Kuslich '189 patent, showing the cavity in the vertebral disk and bone, is depicted below.



*Fig. 25*

154.     As explained in the Kuslich '189 and '679 patents, the Kuslich '255 and '845 patents, which generally share the same specification, describe and depict the use of a tool used percutaneously to "ream[] an enlarged cavity on the interior of the opposing vertebra bodies." The Kuslich '639 patent is a continuation of the Kuslich '845 patent and also generally describes the same reamer as the Kuslich '255 and '845 patents.

155.     The reamers disclosed in the Kuslich '255, '845, and '639 patents (collectively, "the Kuslich Reamer patents") are described as including "an elongate cylindrical shaft" with retractable cutting blades.  The Kuslich Reamer patents describe forming a cavity by deploying the reamer percutaneously, deploying the retractable blades, and then rotating the reamer with the blades.  The tool is used to produce an "enlarged chamber 102 within the disc 12 and surrounding bone 10*a*, and 10*a'*" of adjacent vertebral bodies.

156.     Figures 5 and 16 from the Kuslich '255 patent are reproduced below.



## The False and Misleading Revival Petition in the '805 Patent Application

157.   On or about May 6, 1998, less than a month after Ryan disclosed the Kuslich '189 and '679 patents in Application No. 09/059,796, the Patent Office mailed a "Notice to File Missing Parts of Application" relating to the '805 application ("the Missing Parts Notice"). The Missing Parts Notice indicated that the applicants had failed to submit the filing fee and inventor oaths or declarations when the '805 application was filed.

158.   The Missing Parts Notice stated that the "Applicant is given TWO MONTHS FROM THE DATE OF THIS NOTICE" to respond and file the missing items. The two-month deadline was July 6, 1998.

159.   On or about May 8, 1998, the Missing Parts Notice was received by Ryan's law firm. The July 6, 1998, deadline was docketed on the internal copy of the Missing Parts Notice.

160.   The July 6, 1998, deadline was also separately handwritten and docketed on the cover page of Ryan's docket folder for the '805 application, a folder that housed relevant documents relating to that application.

161.   Although Ryan received docketing reports advising him of upcoming deadlines, Ryan did not respond to the Missing Parts Notice by July 6, 1998.

162.   As Ryan testified, the '805 application became abandoned on July 6, 1998.

163.    Between May 1998 and September 1999, Ryan was actively prosecuting many patent applications on behalf of Kyphon.  Yet, for nearly a year (between May 6, 1998, and April 21, 1999), Ryan did not respond to the Notice of Missing Parts for the '805 application and took no other action relative to the '805 application.

164.    On or about April 21, 1999, the Patent Office issued a "Notice of Abandonment Under 37 C.F.R. 1.53(f) or (g)" for the '805 application ("Notice of Abandonment").  The Notice of Abandonment was received by Ryan's firm on or about April 26, 1999.

165.    After the Patent Office mailed the Notice of Abandonment, Ryan continued to prosecute several patent applications on behalf of Kyphon.  Yet, for at least the next five months, Ryan did not respond to the Notice of Abandonment for the '805 application and again did not take any action with regard to the '805 application.

166.    On or about September 22, 1999, over fourteen months after the '805 application became abandoned and over five months after the Patent Office mailed the Notice of Abandonment, Ryan purported to mail a "Petition for Revival of an Application for Patent Abandoned Unintentionally" ("the Revival Petition").  Ryan signed the Petition and swore that the statements made therein were true and accurate.  A true and correct copy of the petition referenced herein is attached as Exhibit B.

167.    Even though the '805 application became abandoned on July 6, 1998, Ryan's own files repeatedly indicated that July 6, 1998, was the deadline for filing a response, and Ryan never obtained an extension of the deadline before abandonment, Ryan falsely stated in the first paragraph of the Revival Petition that "This application became abandoned on November 6, 1998."

168.    Ryan testified as follows:

83

Q.      But the application didn't become abandoned on November 6, 1998.  It became abandoned in July 1998.  Correct?

MR. CHUNG:  Objection.  Form.

THE WITNESS:  At least on the appearance of it, I think you're right.

169.    Underneath the first paragraph of the Revival Petition, the Revival Petition filed by Ryan stated: "NOTE:  Extensions under 37 C.F.R. 1.136 are available only if asked for 'prior to or with the response.'  Accordingly, if the question of abandonment arises when the provisions of § 1.136 can no longer be used then the application is abandoned when the unextended time for response expired."

170.    Ryan also falsely stated in the second paragraph of the Revival Petition that "This Petition is filed within one year of the date of abandonment" even though the Revival Petition was purportedly mailed at least fourteen months after abandonment.

171.    Ryan knew that the false statements regarding the true abandonment date and the one-year abandonment period were material.  The Revival Petition filed by Ryan stated that "NOTE:  under very limited conditions a petition to revive for unintentional abandonment may exceed the one year limit . . . ."  Ryan further testified that he knew it was important to file the Revival Petition within a year of abandonment:

Q.      You knew it was important to file the petition for revival within a year, correct?

MR. CHUNG: Objection. Form.

Q.      Within a year of abandonment.

A.      Yes

172.    The Patent Office's Notice of Abandonment stated that a Petition for Revival based on unintentional abandonment "must be filed promptly after applicant becomes aware of

the abandonment" and was required to include "a statement that the entire delay was unintentional." The Revival Petition failed to satisfy the standards necessary for revival due to unintentional abandonment. Ryan did not file the Revival Petition promptly after Ryan became aware of the abandonment and Ryan did not provide a statement that the entire delay was unintentional. Ryan's Revival Petition only stated that "This application became abandoned unintentionally," which misleadingly avoided the issue of Ryan's delay and whether the delay was unintentional. Ryan's false statements regarding the date of abandonment further misled the Patent Office by providing the misimpression of lack of delay.

173.    After Ryan misrepresented the abandonment date and period of delay, on or about November 2, 1999, the Patent Office granted the Revival Petition and revived the abandoned '805 application.

174.    If the Revival Petition had been denied, the '805 application would have remained abandoned and the '138 patent, and all related patents that claimed priority to the '138 patent (including the '672 patent), would never have issued.

175.    Each of Ryan's false and misleading statements to the Patent Office in the Petition is an affirmative act of egregious misconduct. Ryan breached his duty of candor and good faith to the Patent Office in making each of the false and misleading statements.

176.    Ryan's false and misleading statements in the Revival Petition were intended to deceive the Patent Office into improperly reviving the '805 application.

177.    But for Ryan's false statements regarding the true abandonment date and Ryan's misrepresentations regarding the delay, the Revival Petition would not have been granted and the '138 patent would not have issued. The false statements regarding the date of abandonment, and

the misleading statements about the unintentional abandonment, were material to patentability and to the Patent Office's decision to grant the Revival Petition of the '805 application.

178.    The most reasonable inference able to be drawn from the evidence is that Ryan deliberately made false and misleading statements in the Revival Petition and that these false and improper statements were made with the intent to deceive the Patent Office into wrongly reviving the '805 application.

179.    The '138 patent is unenforceable due to inequitable conduct due to one or more of Ryan's statements in the Revival Petition.

### Ryan's Failure To Disclose the Kuslich References During the Prosecution of the 805 Application

180.    After the Revival Petition was wrongly granted based on Ryan's false and misleading statements, substantive prosecution on the '805 application began.

181.    On or about December 6, 1999, Ryan submitted an Information Disclosure Statement in the '805 application identifying three prior art references including U.S Patent Nos. 5,108,404 and 4,969,888.  But Ryan did not disclose any of the Kuslich references.

182.    On or about April 6, 2000, Ryan submitted a second Information Disclosure Statement identifying more prior art references.  U.S. Patent No. 3,828,790, which was submitted by Ryan on April 6, 2000, was generally directed to a tool for removing colon polyps.  Despite the fact that the Kuslich references were directed to vertebra, Ryan did not disclose any of the Kuslich references.

183.    In October 2000, the Patent Office rejected the pending claims as anticipated by U.S. Patent Nos. 5,499,981 ("Kordis"), which was a reference that related to cutting heart tissue. The Examiner also cited U.S. Patent No. 5,100,423 ("Fearnot"), which related to ablation of blood vessels.

86

184.     In April 2001, Ryan responded to the Patent Office's rejection.  The claims were amended to recite a surface which directly contacts and shears cancellous bone.  Ryan distinguished the prior art that the Examiner cited as "tissue ablation tools" and relating to electrical energy.  Ryan did not disclose any of the Kuslich references which related to cutting of bone (including cancellous bone) with retractable blades and did not require the use of electrical energy.  Given that the Patent Office was citing references that were unrelated to bone, and unrelated to vertebra, the Kuslich references were material and should have been disclosed to the Patent Office.

185.     On or about April 30, 2001, the Patent Office again rejected the claims in view of the prior art.

186.     Ryan did not respond to that April 2001 Office Action by the due date.

187.     On or about January 8, 2002, the Patent Office mailed a second Notice of Abandonment indicating that the '805 application had once again become abandoned due to Ryan's failure to respond to the April 2001 Office Action.

188.     On or about February 12, 2002, the Patent Office received a request for continued examination in the '805 application, which was filed by Ryan.  That request included several claim amendments but no additional prior art was disclosed.  The claims as amended were generally directed to a "system for treating bone" using a tool which directly contacts and shears cancellous bone using rotational movement.  Ryan again distinguished the prior art cutting tools as "designed to prevent or minimize heart tissue injury…Thus, it would not be obvious to employ this reference to modify a device for directly contacting and shearing cancellous bone."

189.     In the meanwhile, as Medtronic alleged in the prior litigation (see Paragraph 111 above, which is incorporated herein by reference), on or about October 20, 2000, Ryan filed a

separate patent application on behalf of Mark Reiley.  That application, which was not assigned to Kyphon, was identified as Application No. 09/693,272 and ultimately issued as U.S. Patent No. 6,610,091 ("the '272  application" or "the '091 patent").  As alleged by Medtronic (see paragraph 111 above), the '091 patent was directed to devices and surgical methods to treat various types of adult spinal pathologies.

190.    On or about February 25, 2002, Ryan submitted to the Patent Office an Information Disclosure Statement for the '272 application.   In that Information Disclosure Statement, Ryan identified three Kuslich patents:  the Kuslich '255, '639, and '845 patents (the Kuslich Reamer patents).  A true and correct copy of the Information Disclosure Statement for the '272 application is attached as Exhibit C.

191.    Despite the fact that Ryan was making submissions in the '805 application, and the '805 application related to "Structures and Methods for Creating Cavities in Interior Body Regions," neither Ryan nor Reiley disclosed any of the three Kuslich Reamer patents to the Patent Office in connection with the '805 application.

192.    On or about March 8, 2002, the Patent Office sent a Notice of Allowance for the '805 application, allowing the claims as amended.

193.    Ryan and/or Reiley knew about the Kuslich Reamer patents and their material disclosure no later than February 25, 2002.  Each of the Kuslich Reamer patents discloses all of the elements of the claims of the '138 patent as issued.  The Kuslich Reamer patents are highly material to patentability of the claims of the '805 application including the claims that ultimately issued both as it relates to, for example, obviousness and anticipation.  Ryan and/or Reiley breached their duty of candor and good faith to the Patent Office by failing to disclose the Kusilch Reamer patents to the Patent Office.

194.    On or about May 3, 2002, Ryan submitted a third Information Disclosure Statement in the '805 application, identifying more prior art references.  By May 3, 2002, Ryan clearly knew about each of the Kuslich references, having disclosed them in several applications. Again, despite knowing about all of the Kuslich references, including the highly material Kuslich Reamer patents which were only recently disclosed in connection with another application and depicted a reamer that used rotational movement to directly contact and shear cancellous bone, Ryan and/or Reiley did not disclose any of the Kuslich references to the Patent Office.  The references were withheld with intent to deceive the Patent Office.

195.    On or about July 11, 2002, the Patent Office mailed a Supplemental Notice of Allowance for the '805 application.

196.    On August 28, 2002, the '805 application issued as the '138 patent.  The Kuslich references were never disclosed during prosecution of the '138 patent.

197.    The single most reasonable inference to be drawn from the evidence is that Ryan and/or Reiley knew of the materiality of the Kuslich references during the prosecution of the '138 patent application yet failed to disclose the references to the Patent Office with the intent to deceive the Patent Office into allowing the claims of the '138 patent.

198.    But for Ryan's and/or Reiley's failure to disclose the Kuslich references (and in particular the Kuslich Reamer patents) during prosecution of the '805 application, the Patent Office would not have allowed the claims of the '138 patent to issue.  Indeed, once the Kuslich Reamer patents were finally disclosed to the Patent Office in prosecution of a related application, the Examiner did not allow similar claims to issue.

**Ryan Finally Disclosed the Kuslich Reamer Patents During the Prosecution of a Divisional Application And Confirmed Their Materiality To The Already-Issued '138 Patent**

199.    On July 30, 2002, Ryan filed U.S. Application No. 10/208,391 ("the '391 application") as a divisional to the '805 application.  The '391 application claimed priority to the '805 application, purportedly sharing the priority date of April 6, 1998.  The '391 application ultimately issued as the '672 patent-in-suit.

200.    The applicants could not have filed the '391 application had the Patent Office not improperly granted Ryan's Revival Petition in the '805 application.  During prosecution of the '391 application, Ryan did not advise the Patent Office that he had made false or misleading statements in the Revival Petition filed in the '805 application.

201.    As Ryan testified, the original claims of the '391 application were identical to the issued claims of the '138 patent except that the claims required directly contacting and shearing cancellous bone using linear movement rather than rotational movement.

202.    Between July 2002 and May 2004, the prosecution of the '391 application proceeded.  Ryan submitted two Information Disclosure Statements to the Patent Office but never disclosed the Kuslich Reamer patents or any other Kuslich references.

203.    On or about March 22, 2004, after Applicants amended the claims to overcome a rejection, the Patent Office mailed a Notice of Allowance for the '391 application.

204.    On or about June 3, 2004, after the 138 patent had already issued, an associate working for Ryan submitted an Information Disclosure Statement identifying the three Kuslich Reamer patents in the '391 application.  A Request for Continued Examination of the '391 application was filed along with a number of new claims.

205.    The materiality of the Kuslich references to the already-issued '138 patent was confirmed by statements during prosecution of the '391 application.  Applicants argued that the Kuslich Reamer patents were not relevant to the '391 application because the '391 application

90

claimed cavity formation by <u>linear</u> movement and the Kuslich Reamer patents instead related to cavity formation by <u>rotational</u> movement.  Specifically, applicants argued that the Kuslich Reamer patents "do not teach or suggest a surface which directly contacts cancellous bone in response to <u>linear</u> movement of the shaft" (emphasis in original).  Applicants argued that the Kuslich Reamer patents "are directed to devices that utilize <u>rotational</u> movement to remove the disc material to accept a device to promote fusion" (emphasis in original).

206.    As discussed above, the '138 patent claims as issued recite devices that use rotational movement, which the Applicants admitted that the Kuslich Reamer patents disclose.

207.    After the disclosure of the Kuslich Reamer patents in the '391 application, the patent examiner stated that the '391 application would require further search and consideration.

208.    On or about September 17, 2004, an interview was held between the patent examiner and Ryan.  The Kuslich '255 patent was discussed.  Ryan and the Examiner agreed that Ryan would amend the claims of the '391 application to define over the prior art including the Kuslich '255 patent.

209.    On or about September 23, 2004, the Patent Office mailed a Notice of Allowance for the '391 application along with an amendment from the patent examiner that provided a number of changes to the claims, including adding limitations that require that the cavity forming tool not rotate and that the tool form a cavity "wholly within the vertebral body." The changes to the claims of the '391 application are not recited in the issued claims of the '138 patent (where the Kuslich Reamer patents were never disclosed).

210.    On March 8, 2005, the '391 application issued as the '672 patent.

211.    These interactions with the Patent Office after the applicants finally disclosed the Kuslich Reamer patents in the '391 application further demonstrate the materiality of the Kuslich Reamer patents to the '138 patent.

212.    The '138 patent is unenforceable due to the inequitable conduct committed during prosecution of the '138 patent.  Ryan's false statements regarding the date of abandonment, Ryan's improper statement regarding the abandonment being unintentional without mentioning the delay, and Ryan's failure to disclose the Kuslich Reamer patents and other Kuslich references are each affirmative acts of egregious misconduct.  Ryan knowingly and deliberately made the false and misleading statements in the Petition for Revival with intent to deceive the Patent Office into reviving the application, and knowingly and deliberately failed to disclose the Kuslich Reamer patents with intent to deceive the Patent Office into allowing the claims without assessing highly material prior art.

213.    But for Ryan's false and misleading statements to the Patent Office in the Petition for Revival, the Patent Office would not have revived the application for the '138 patent, and the '138 patent would not have issued.  But for Ryan's failure to disclose the Kuslich Reamer patents and other prior art Kuslich references, the Patent Office would not have allowed the claims of the '138 patent.

214.    Based on the foregoing, Stryker is entitled to judgment by this Court declaring the '138 patent unenforceable due to inequitable conduct.

215.    Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

**THIRTEENTH COUNTERCLAIM AS TO ORTHOPHOENIX, LLC
(DECLARATION OF UNENFORCEABILITY OF THE '672 PATENT
DUE TO INEQUITABLE CONDUCT)**

216.    Stryker realleges and incorporates by reference each of the allegations set forth above in paragraphs 1-215.

217.    Subject to Stryker's defenses, an actual, immediate, and justiciable controversy exists between the parties by virtue of Plaintiff's Complaint and Stryker's Answer and First Amended Answer as to the unenforceability of the '672 patent.

218.    The '672 patent was filed on July 30, 2002, and is a division of the '138 patent. The '672 patent claims priority to the '805 application, which issued into the '138 patent.

219.    Because it is a division of the '138 patent, the '672 patent could not have been filed, and would not have issued, if the '138 patent was not improperly revived.

220.    The '672 patent is unenforceable as a result of inequitable conduct before the Patent Office based on Ryan's breach of the duty of candor and good faith before the Patent Office during prosecution of the '138 patent.  But for Ryan's false and misleading statements to the Patent Office in the Revival Petition, the Patent Office would not have revived the application for the '138 patent, and the '672 patent, which claims priority to that patent, would not have issued.  Ryan's false and misleading statements to the Patent Office in the Revival Petition are affirmative acts of egregious misconduct and Ryan never advised the Patent Office of those false and misleading statements during the prosecution of the '672 patent application. Ryan knowingly and deliberately made the false and misleading statements with intent to deceive the Patent Office.

221.    Based on the foregoing, Stryker is entitled to judgment by this Court declaring the '672 patent unenforceable due to inequitable conduct.

222.    Since the conduct of Orthophoenix renders this case to be "exceptional" under 35 U.S.C. § 285, Stryker is entitled to recover its reasonable costs, expenses and attorneys' fees.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and District of Delaware Local Rule 38.1, Stryker demands a trial by jury on all issues so triable including those in the Affirmative Defenses and Counterclaims.

## PRAYER FOR RELIEF

**WHEREFORE,** Stryker prays for judgment as follows:

A.      That judgment be entered dismissing all of Plaintiff's claims for relief in the Complaint with prejudice;

B.      That judgment be entered declaring that all claims for relief sought by the Plaintiff in its Complaint are denied with prejudice;

C.      That judgment be entered declaring that Plaintiff is not entitled to any relief whatsoever;

D.      That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '110 patent, either literally or under the doctrine of equivalents;

E.      That judgment be entered declaring that Stryker does not induce infringement of any valid and enforceable claim of the '110 patent;

F.      That judgment be entered declaring that the '110 patent is invalid;

G.      That judgment be entered declaring that the '110 patent is unenforceable;

H.      That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '981 patent, either literally or under the doctrine of equivalents;

I.      That judgment be entered declaring that Stryker does not induce or contribute to infringement of any valid and enforceable claim of the '981 patent;

J.      That judgment be entered declaring that the '981 patent is invalid;

94

K.      That judgment be entered declaring that the '981 patent is unenforceable;

L.      That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '647 patent, either literally or under the doctrine of equivalents;

M.      That judgment be entered declaring that Stryker does not induce infringement of any valid and enforceable claim of the '647 patent;

N.      That judgment be entered declaring that the '647 patent is invalid;

O.      That judgment be entered declaring that the '647 patent is unenforceable;

P.      That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '954 patent, either literally or under the doctrine of equivalents;

Q.      That judgment be entered declaring that Stryker does not induce or contribute to infringement of any valid and enforceable claim of the '954 patent;

R.      That judgment be entered declaring that the '954 patent is invalid;

S.      That judgment be entered declaring that the '954 patent is unenforceable;

T.      That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '456 patent, either literally or under the doctrine of equivalents;

U.      That judgment be entered declaring that Stryker does not induce or contribute to infringement of any valid and enforceable claim of the '456 patent;

V.      That judgment be entered declaring that the '456 patent is invalid;

W.      That judgment be entered declaring that the '456 patent is unenforceable;

X.      That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '505 patent, either literally or under the doctrine of equivalents;

Y.      That judgment be entered declaring that Stryker does not induce infringement of any valid and enforceable claim of the '505 patent;

Z.      That judgment be entered declaring that the '505 patent is invalid;

AA.     That judgment be entered declaring that the '505 patent is unenforceable;

BB.     That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '138 patent, either literally or under the doctrine of equivalents;

CC.     That judgment be entered declaring that Stryker does not induce infringement of any valid and enforceable claim of the '138 patent;

DD.     That judgment be entered declaring that the '138 patent is invalid;

EE.     That judgment be entered declaring that the '138 patent is unenforceable including due to inequitable conduct;

FF.     That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '672 patent, either literally or under the doctrine of equivalents;

GG.     That judgment be entered declaring that Stryker does not induce or contribute to infringement of any valid and enforceable claim of the '672 patent;

HH.     That judgment be entered declaring that the '672 patent is invalid;

II.     That judgment be entered declaring that the '672 patent is unenforceable including due to inequitable conduct;

JJ.     That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '307 patent, either literally or under the doctrine of equivalents;

KK.     That judgment be entered declaring that Stryker does not induce infringement of any valid and enforceable claim of the '307 patent;

LL.     That judgment be entered declaring that the '307 patent is invalid

MM.     That judgment be entered declaring that the '307 patent is unenforceable;

NN.    That judgment be entered declaring that Stryker does not infringe any valid and enforceable claim of the '734 patent, either literally or under the doctrine of equivalents;

OO.    That judgment be entered declaring that Stryker does not induce infringement of any valid and enforceable claim of the '734 patent;

PP.    That judgment be entered declaring that the '734 patent is invalid;

QQ.    That judgment be entered declaring that the '734 patent is unenforceable;

RR.    That judgment be entered declaring this case "exceptional" and awarding Stryker its reasonable costs and expenses in this action, including reasonable attorneys' fees under 35 U.S.C. § 285 and interest and other applicable statutes or laws;

SS.    That judgment be entered declaring that the acts and conduct of Counter-Defendants are an unlawful violation of the Federal Antitrust Law, including the Sherman Act.

TT.    That judgment be entered preliminarily and permanently enjoining Counter-Defendants and their agents, employees, attorneys, parent companies, subsidiaries, and divisions from violating the antitrust laws and from continuing to participate in the illegal activities described in this Complaint;

UU.    That judgment be entered requiring Counter-Defendants to pay to Stryker the monetary damages resulting from the unlawful violations and that those damages be trebled automatically under the Federal Antitrust Act, including the Sherman and Clayton Acts;

VV.    That judgment be entered requiring Counter-Defendants to pay automatically the attorneys' fees and costs incurred by Stryker in bringing these counterclaims pursuant to the Federal Antitrust Act, including the Sherman and Clayton Acts; and

WW.    Awarding Stryker such other and further relief as this Court may deem just and proper.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Anne Shea Gaza*

Of Counsel:

Sandra A. Frantzen
Deborah A. Laughton
McAndrews, Held & Malloy, Ltd
500 West Madison Street
Chicago, IL 60661
(312) 775-8000
sfrantzen@mcandrews-ip.com
dlaughton@mcandrews-ip.com

Anne Shea Gaza (No. 4093)
Samantha G. Wilson (No. 5816)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6600
agaza@ycst.com
swilson@ycst.com

*Attorneys for Defendant/Counterclaim Plaintiff Stryker Corporation*

Dated:  April 25, 2016

01:18611037.1

## <u>CERTIFICATE OF SERVICE</u>

I, Anne Shea Gaza, hereby certify that on April 25, 2016, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to registered participants.

I further certify that on April 25, 2016, I caused the foregoing document to be served in the manner indicated upon the following counsel of record:

<u>E-MAIL</u>

Richard D. Kirk
Stephen B. Brauerman
Vanessa R. Tiradentes
Sara E. Bussiere
BAYARD, P.A.
222 Delaware Avenue, Suite 900
P.O. Box 25130
Wilmington, DE 19899
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Marc A. Fenster
Amir A. Naini
Adam S. Hoffman
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA  90025
ORTHOPHOENIX@raklaw.com

*Attorneys for Plaintiff/Counterclaim Defendant Orthophoenix LLC and Counterclaim Defendant IP Navigation Group, LLC*

**E-MAIL**

John W. Shaw
Karen E. Keller
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
jshaw@shawkeller.com
kkeller@shawkeller.com

Edward R. Reines
Michele Gauger
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
edward.reines@weil.com
michele.gauger@weil.com

*Attorneys for Counterclaim Defendant Medtronic, Inc*

Dated:  April 25, 2016                          YOUNG CONAWAY STARGATT &
                                                TAYLOR, LLP

                                                */s/ Anne Shea Gaza*
                                                Anne Shea Gaza (No. 4093)
                                                Samantha G. Wilson (No. 5816)
                                                Rodney Square
                                                1000 N. King Street
                                                Wilmington, Delaware 19801
                                                *agaza@ycst.com*
                                                *swilson@ycst.com*

                                                *Attorneys for Defendant/Counterclaim
                                                Plaintiff Stryker Corporation*

2