IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORTHOPHOENIX , LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>STRYKER CORPORATION, et al.,<br><br>　　　　　Defendant and<br>　　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>ORTHOPHOENIX, LLC; IP NAVIGATION GROUP, LLC; MEDTRONIC, INC.,<br><br>　　　　　Counterclaim Defendants. | C.A. No. 13-1628-LPS<br><br>**REDACTED PUBLIC VERSION** |

**MEDTRONIC'S OPENING BRIEF IN SUPPORT OF ITS
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

OF COUNSEL:

Edward R. Reines
Michele Gauger
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

John W. Shaw
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com

*Attorneys for Counter Defendant
MEDTRONIC, INC.*

Dated: June 9, 2016

# **TABLE OF CONTENTS**

Page

I. NATURE AND STAGE OF PROCEEDINGS ...................................................................1

II. SUMMARY OF THE ARGUMENT ..................................................................................1

III. FACTUAL BACKGROUND...............................................................................................3

    A. Initial Indemnity Provision ......................................................................................3

    B. The Orthophoenix Parties Unambiguously Agreed To Reimburse Medtronic In The Settlement Agreement ...............................................................3

    C. The Orthophoenix Parties Reneged On Their Agreement To Reimburse Medtronic ██████████████████████ ..............................................................7

IV. ARGUMENT ........................................................................................................................9

    A. This Court Has Jurisdiction To Enforce The Settlement Agreement. .....................9

    B. The Court Should Enforce The Orthophoenix Parties' Agrement To Reimburse Medtronic ██████████████████ In Connection With This Litigation................................................................................................................10

        1. The Orthophoenix Parties Agreed To Reimburse Medtronic █ ████████████████ Incurred In Connection With This Case ..........10

        2. The Orthophoenix Parties Acknowledged Their Agreement To Reimburse Both During And After The Negotiation................................10

        3. The Orthophoenix Parties Refuse To Honor Their Reimbursement Obligation ...................................................................................................11

    C. The Court Should Order The Orthophoenix Parties To Reimburse Medtronic For All Its Fees And Expenses Incurred With Regard To This Litigation Plus Prejudgment Interest ....................................................................12

V. CONCLUSION....................................................................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Kokkonen v. Guardian Life Ins. Co. of America*,
　511 U.S. 375 (1994) .................................................................................................................. 9

## I. NATURE AND STAGE OF PROCEEDINGS

This case has been settled pursuant to an agreement of the parties effective May 4, 2016. The Court dismissed the claims in this case based on that settlement agreement on May 12, 2016. (D.I. 272). This motion relates to the allocation of fees and costs among the parties that is set forth in the dismissal order based on the parties' May 4 settlement agreement. The Court's dismissal order stated that "Orthophoenix LLC and IP Navigation Group LLC acknowledged a contractual obligation to indemnify Medtronic Inc. for its costs, expenses and attorneys' fees incurred in this matter" and retained jurisdiction to enforce the dismissal order including that provision. (D.I. 272). The fee reimbursement obligation referenced in this Court's order has now been violated, necessitating this motion.

Plaintiff Orthophoenix, LLC ("Orthophoenix") filed this action on October 1, 2013 against Stryker Corporation ("Stryker") alleging patent infringement. Stryker answered and counterclaimed for non-infringement and invalidity on November 18, 2013. (D.I. 8). On May 14, 2014, Stryker filed a motion for leave to amend to add a counterclaim against Orthophoenix, IP Navigation Group, LLC ("IPNav") and Medtronic Inc. ("Medtronic") under Section 1 of the Sherman Antitrust Act. On July 29, 2014, the Court granted that motion thus adding Medtronic to the case as a counterclaim-defendant. (D.I. 23).

## II. SUMMARY OF THE ARGUMENT

As a key part of the settlement agreement resolving this case, Orthophoenix and IPNav[1] expressly agreed that they would reimburse Medtronic for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in connection with this case. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

---

[1] Orthophoenix, its affiliate Marathon Patent Group, and IPNav are referred to collectively as the "Orthophoenix Parties" unless otherwise specified.



Exh. A to Declaration of Edward R. Reines ("Reines Decl.") § 2.7 (Settlement Agreement).[2]

During the negotiations – and also after the execution of the settlement agreement – the Orthophoenix Parties matter-of-factly acknowledged their commitment to reimburse Medtronic for its fees and expenses. For example, after the agreement was signed and Medtronic's invoices had been provided, Medtronic asked the Orthophoenix Parties when they would pay the $563,000.49 in fees and expenses that has been billed so far. The Orthophoenix Parties responded that they would pay that amount ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Exh. B to Reines Decl. at 2 (May 11, 2016 11:53 am Reines email).

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ When no payment was received, the next day, May 24, Medtronic asked the Orthophoenix Parties about the payment. The Orthophoenix Parties reassured Medtronic that the payment would be made that day (May 24) or the next day (May 25). Reines Decl. ¶ 1. As though they planned to pay, the Orthophoenix Parties also informed Medtronic that for their payment they would use the bank account wire information in earlier agreements between the parties. *Id.* ¶ 2. Yet, only hours later, instead of payment, Medtronic received a lengthy letter on behalf of the Orthophoenix Parties denying indemnity and only agreeing to negotiate about whether it should pay a very limited slice of the fees and expenses. Exh. C to Reines Decl. (May 24, 2016 Fenster letter). The Orthophoenix Parties' letter denying indemnity states that questions about the matter should ***not*** be directed to the signatory (Orthophoenix Parties' litigation counsel, Russ, August and Kabat), but to Erich Spangenberg, a principal of the Orthophoenix Parties and the founder of IPNav.

---

[2] Emphasis supplied unless otherwise specified.

The Orthophoenix Parties' refusal to reimburse Medtronic is a clear breach of their obligation to do so. Because this Court's dismissal order reserved jurisdiction over the dismissal order and expressly incorporated the Orthophoenix Parties' obligation to reimburse Medtronic for its fees and expenses, Medtronic moves the Court for an order requiring the Orthophoenix Parties to reimburse Medtronic for all fees and expenses incurred in connection with this case plus interest.

### III. FACTUAL BACKGROUND

#### A. Initial Indemnity Provision

On April 26, 2013, the Orthophoenix Parties purchased a large number of patents from Medtronic, including those asserted in this case. Exh. D to Reines Decl. (Patent Purchase Agreement). ████████████████████████████████████████████████████████████████. Exh. D to Reines Decl. § 4.14 and Exh. E to Reines Decl. § 3.5 (Exh. D to Patent Purchase Agreement). Nevertheless, before settlement of this case Orthophoenix refused to indemnify Medtronic, instead reserving all rights. Exh. F to Reines Decl. at 1 (March 24, 2016 11:10 am Horstman email).

#### B. The Orthophoenix Parties Unambiguously Agreed To Reimburse Medtronic In The Settlement Agreement



████████████████████████████████████████ But to actually consummate such a settlement, Medtronic's participation was critical. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ (Exh. A to Reines Decl. § 2.3) and

██████████████████████████████████████████████████████████

██████████████████████████████████████ (Exh. A to Reines Decl. § 5.2).

████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████ Exh. G to Reines Decl. at 1 (May 2, 2016 8:55 pm Sanchez email).  This was the Second Amendment of the original patent transfer agreements. █████████████████████████████████████████

███████████████████████████ Exh. H to Reines Decl. at 1 (May 5, 2016 12:06 pm Sanchez email) ████████████████████████████████████

██████████████████████████████

Medtronic, for its part, wanted to ensure that it would be reimbursed for the fees and expenses it incurred in connection with the litigation before signing on to the settlement agreement and executing the Second Amendment.  Accordingly, the parties negotiated how fees and expenses would be allocated among the parties against this background. █████

████████████████████████████████████████████████████████

████████████████████████████████████

████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████
████████████████████████████████

4

Exh. A to Reines Decl. § 2.7.

Because Medtronic was (and is) still incurring fees and expenses in connection with this case, it proposed to the Orthophoenix Parties that it would give them ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ – with the understanding that some remaining additional fees and costs had yet to be invoiced and those would follow. Medtronic noted that it was willing to complete the settlement agreement without pre-payment of its fees and expenses so long as the Orthophoenix Parties would reimburse Medtronic "fully" ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

> You'll note we did not include in our draft a date for the payment to Medtronic reimbursing its fees and costs. We think it would be appropriate to set such a date, but it doesn't have to be in the main agreement. I'd suggest we agree in a separate letter that the reimbursement payment will be made within 30 days of Medtronic providing a final statement. You have statements for past fees and expenses. Given the heavy discovery requirements of the last several weeks, we will have additional statements to submit to you. Certainly, if you can pay any of the past statements earlier, Medtronic would appreciate it, but *it is willing to complete the* ▮▮▮▮▮▮▮▮▮▮▮▮ *and then submit a final statement to you so long as there is an agreement that Medtronic's fees and costs will indeed be reimbursed fully.*

Exh. I to Reines Decl. at 1 (Apr. 27, 2016 2:37 pm Reines email).

In finalizing the time for payment, Medtronic again confirmed that the Orthophoenix Parties would reimburse Medtronic for its fees and expenses in connection with this litigation and asked for a proposal for the time of payment. Exh. J to Reines Decl. at 2 (May 2, 2016 10:05 pm Reines email) ("We also need to confirm a date for reimbursement of Medtronic's fees and costs incurred in relation to Ortho's litigation. What do you propose?"). The Orthophoenix Parties confirmed that they would pay Medtronic's fees and expenses and proposed to do so ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Medtronic agreed to that arrangement. *Id.* at 1 (May 3, 2016 5:31 am and 11:54 am Croxall emails; May 3, 2016 11:49

5

am Reines email). In another email, the Orthophoenix Parties reconfirmed that they would reimburse Medtronic ███████████████████████████████ Exh. H to Reines Decl. at 5 (May 3, 2016 9:10 am Sanchez email) ████████████████████████████ ███████

In repeatedly committing to reimburse Medtronic for its fees and expenses in connection with this case, the Orthophoenix Parties asked for the invoices before signing the settlement agreement. *Id.* Medtronic promptly provided the Orthophoenix Parties with all the invoices it had four days before the settlement agreement was signed. Exh. B to Reines Decl. at 4 (May 5, 2016 11:41 am Horstman email) ("I've collected all the invoices submitted to Medtronic and attached to this email."); Exh. K to Reines Decl. at 1 (May 4, 2016 4:00 pm Reines email). Medtronic offered to answer any questions the Orthophoenix Parties had about the invoices – but other than confirming receipt of the invoices they asked no questions. Exh. L to Reines Decl. at 1 (May 4, 2016 2:40 pm Reines email) ("Let us know if you have questions.").

On May 9, Medtronic signed the Second Amendment whereupon all the parties released their signature pages to the settlement agreement. Exh. M to Reines Decl. at 1 (May 9, 2016 9:26 am Sanchez email).

In sum, the Orthophoenix Parties considered Medtronic's agreement to the Second Amendment to be a prerequisite to a settlement and wanted Medtronic to participate in the settlement. In return, ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████ The Orthophoenix Parties asked for Medtronic's invoices before entering into that agreement. Medtronic provided them. The parties signed the settlement agreement.

6

C.  **The Orthophoenix Parties Reneged On Their Agreement To Reimburse Medtronic For** ▬▬▬▬▬▬

Because the Orthophoenix Parties had proposed and ultimately agreed to ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ Medtronic asked the Orthophoenix Parties for notice when it had been ▬▬▬▬▬▬ so it could count ▬▬▬▬ ▬▬ Exh. N to Reines Decl. at 1 (May 11, 2016 10:02 am Reines email). On May 11, two days after the signature pages were exchanged, the Orthophoenix Parties confirmed that ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬ to the Orthophoenix Parties. *Id.* (May 11, 2016 10:03 am Croxall email) ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬



On the day it ▬▬▬▬▬▬▬▬▬▬, the Orthophoenix Parties sought additional invoices from Medtronic as though it were going to live up to its commitment to reimburse Medtronic ▬▬▬▬▬▬. Exh. B to Reines Decl. at 3 (May 11, 2016 10:04 am Croxall email) ("do we have all invoices etc? you indicated that there might be more bills…").

In response Medtronic noted that the invoices had already been provided and requested that the Orthophoenix Parties confirm that they would wire the $563,000.49 total ▬▬▬▬▬▬ with some smaller clean up invoices to follow:

> Yes, with that added to Andy's total, it is $563,000.49 When do you plan to wire that? We can send you the remainder, which should be much smaller, when we have the invoices and totals.

*Id.* at 2 (May 11, 2016 11:50 am Reines email).

The Orthophoenix Parties again confirmed that they would reimburse Medtronic the full $563,000.49 ▬▬▬▬▬▬ in simple terms and without punctuation:

> ▬▬▬▬▬▬ as discussed and already agreed to

*Id.* (May 11, 2016 11:53 am Croxall email). The Orthophoenix Parties inquired whether they could ask questions about the invoices if they had any. Exh. O to Reines Decl. at 1 (May 11,

7

2016 11:58 am Croxall email) ("If I have questions on the bills, I assume I can talk to you Ed?"). Medtronic confirmed that it was available to field any questions about the invoices. *Id.* (May 11, 2016 12:07pm Reines email) ("Absolutely.  Contact info below.").

On Monday, May 23, Medtronic asked for confirmation that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. Exh. P to Reines Decl. at 1 (May 23, 2016 11:27 am Reines email).  Medtronic also forwarded the Special Master bill for $9,429.50 to the Orthophoenix Parties.  Exh. B to Reines Decl. at 2 (May 23, 2016 2:07 pm Reines email).  The Orthophoenix Parties expressed appreciation for that additional bill without suggesting that they would renege on their commitment to reimburse Medtronic the $563,000.49 ▇▇▇▇▇▇▇▇▇▇. *Id.* at 1 (May 23, 2016 3:14 pm Croxall email).

On the morning of May 24, Ed Reines (on behalf of Medtronic) called Doug Croxall (on behalf of the Orthophoenix Parties) to follow up regarding the payment.  Reines Decl. ¶ 1.  Mr. Croxall represented that the payment would be made that day (May 24) or the next day (May 25).  Mr. Reines asked Mr. Croxall to which Medtronic account would the payment be wired so that Medtronic could monitor receipt.  *Id.* ¶ 2.  Again, acting as though they would live up to their agreement, Mr. Croxall responded that the Orthophoenix Parties would use the account identified in the original patent sale agreement.  *Id*.  Because Medtronic preferred a different Medtronic account for receipt, Mr. Reines followed up on the call and emailed Mr. Croxall with a different account number for the payment.  Exh. B to Reines Decl. at 1 (May 24, 2016 11:38 am Reines email).

Within hours after Mr. Croxall stated that the payment would arrive imminently, Mr. Croxall instead forwarded a letter to Mr. Reines from the Orthophoenix Parties' litigation counsel denying an obligation to indemnify.  Exh. Q to Reines Decl. at 1 (May 24, 2016 4:02 pm

8

Croxall email with Fenster letter). Disregarding its commitment to reimburse Medtronic fully, the letter expressed a willingness to discuss reimbursing Medtronic for the fees relating specifically to the antitrust counterclaim (as compared to Medtronic's extensive involvement in discovery of the Orthophoenix Parties' patent infringement claim) and asking Medtronic to "please keep in mind that discovery relating to the antitrust claim was stayed." Exh. C to Reines Decl. at 2.

Both Mr. Croxall's May 24 email and the letter from the Orthophoenix Parties' litigation counsel asked Medtronic to direct any further questions on the topic to Erich Spangenberg.

IV. ARGUMENT

A. **This Court Has Jurisdiction To Enforce The Settlement Agreement.**

In *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375 (1994), the Supreme Court recognized that district courts retain jurisdiction to enforce settlement agreements where they retain jurisdiction to enforce the agreement and where the terms of the settlement agreement are incorporated into the order of dismissal.

Here, this Court's dismissal order expressly retained jurisdiction to enforce the order. (D.I. 272). Moreover, it expressly included as part of its order the Orthophoenix Parties' obligation to indemnify Medtronic for its costs, expenses and attorneys' fees in this matter as set forth specifically in the settlement agreement:

> Except as set forth specifically in the settlement between the parties, wherein ***Orthophoenix LLC and IP Navigation Group LLC acknowledged a contractual obligation to indemnify Medtronic Inc. for its costs, expenses and attorneys' fees incurred in this matter***, the above-identified parties agree that they will bear their own costs, expenses and attorneys' fees incurred in this matter and each party knowingly and voluntarily waives any right, arising under 35 U.S.C. §285 or otherwise, to make a claim for any costs, attorney fees or other expenses associated with the matters settled by this Stipulation of Dismissal.

(D.I. 272 at 1-2). The parties stipulated to the terms of the dismissal.

### B. The Court Should Enforce The Orthophoenix Parties' Agrement To Reimburse Medtronic  Connection With This Litigation

#### 1. The Orthophoenix Parties Agreed To Reimburse Medtronic For  In Connection With This Case

In the settlement agreement, the Orthophoenix Parties agreed to

Exh. A to Reines Decl. § 2.7. This is unambiguous.

#### 2. The Orthophoenix Parties Acknowledged Their Agreement To Reimburse Both During And After The Negotiation

During the negotiation the Orthophoenix Parties

to understand what they were agreeing to reimburse. Exh. B to Reines Decl. at 4 (May 5, 2016 11:41 am Horstman email). Medtronic provided these invoices and was available to answer any questions about the invoices. *Id.*; Exh. L to Reines Decl. at 1 (May 4, 2016 2:40 pm Reines email).

The Orthophoenix Parties acknowledged that they were committing to reimburse

Exh. J to Reines Decl. at 2 (May 2, 2016 10:05 pm Reines email); *id.* at 1 (May 3, 2016 5:31 am and 11:54 am Croxall emails). They agreed to do so             . *Id.* at 1 (May 3, 2016 5:31 am Croxall email).

After the settlement agreement was executed, the Orthophoenix Parties again confirmed that they would reimburse Medtronic and do so             . Medtronic provided the reimbursement total for the then-existing invoices ($563,000.49) and asked for confirmation of when that amount would be reimbursed: "Yes, with that added to Andy's total, it is $563,000.49 When do you plan to wire that?" Exh. O to Reines Decl. at 2 (May 11, 2016 11:50 am Reines email). The Orthophoenix Parties confirmed in response that this amount would be reimbursed

███████████ as discussed and already agreed to." *Id.* (May 11, 2016 11:53 am Croxall email).

### 3. The Orthophoenix Parties Refuse To Honor Their Reimbursement Obligation

The invoices Medtronic provided the Orthophoenix Parties before the execution of the settlement agreement totaled $563,000.49. The parties recognized that there would be some additional invoices for work-in-progress and outstanding bills such as those from the Special Master. But they agreed repeatedly before and after the settlement agreement was executed that the $563,000.49 total would be paid ███████████████████████████ Exh. J to Reines Decl. at 1 (May 3, 2016 5:31 am and 11:54 am Croxall emails); Exh. O to Reines Decl. at 2 (May 11, 2016 11:53 am Croxall email).

According to the Orthophoenix Parties, ████████████████████████████ Accordingly, the ███████████ for the Orthophoenix Parties to reimburse Medtronic landed on Saturday, May 21. On May 23, the first business day afterwards, Medtronic followed up with the Orthophoenix Parties regarding payment and added the Special Master invoice. Exh. B to Reines Decl. at 2 (May 23, 2016 2:07 pm Reines email). The Orthophoenix Parties thanked Medtronic and did not mention that they would renege. *Id.* at 1 (May 23, 2016 3:14 pm Croxall email).

When payment was not received, Medtronic followed up the next day, May 24, and was told it would be reimbursed that day or the next day. Reines Decl. ¶ 1. The parties even discussed the proper Medtronic account for the wire transfer. *Id.* ¶ 2.

Hours after reassuring Medtronic that it would make payment, the Orthophoenix Parties sent Medtronic a letter denying indemnity and disregarding its agreement to reimburse Medtronic for all its fees and costs as well as its repeated confirmation that it would do so. Exh.

Q to Reines Decl. at 1 (May 24, 2016 4:02 pm Croxall email with Fenster letter).  Apparently, the Orthophoenix Parties wanted to negotiate its payment down so that it only reimbursed Medtronic in relation to the antitrust issues.  As it happened, the vast bulk of the fees actually incurred by Medtronic were to address the extensive patent discovery ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ to the Orthophoenix Parties' patent infringement claim.

The Orthophoenix Parties' refusal to reimburse Medtronic ▮▮▮▮▮▮▮ for its fees and expenses that had been invoiced ($563,000.49) is a blatant violation of this Court's dismissal order which expressly states that the Orthophoenix Parties agreed to reimburse Medtronic, the parties' settlement agreement, and repeated assurances given by the Orthophoenix Parties.

### C. The Court Should Order The Orthophoenix Parties To Reimburse Medtronic For All Its Fees And Expenses Incurred With Regard To This Litigation Plus Prejudgment Interest

Medtronic respectfully requests an order requiring the Orthophoenix Parties to reimburse it for all fees and expenses incurred with regard to this litigation.  This includes the $563,000.49 due and owing, which should be paid within ten days.  It also includes additional fees and expenses that were not included in that total because they were work-in-progress or had not been invoiced as of May 9, including $9,429.50 related to services rendered by the Special Master.  It also should include any additional fees and expenses incurred in connection with this litigation including those relating to this motion.

In addition, the Court should order the Orthophoenix Parties to pay prejudgment interest from May 21, 2016 until $563,000.49 is paid and for additional invoices relating to this litigation from when those invoices are provided to the Orthophoenix Parties (including prejudgment interest from May 23, 2016 until the $9,429.50 related to services rendered by the Special Master is paid).  The statutory legal rate of interest in Delaware is "5% over the Federal Reserve

12

discount rate including any surcharge as of the time from which interest is due. . . ." 6 Del. C. § 2301(a).  The Federal Reserve discount rate is 1%.  The proper prejudgment interest rate is 6%.

**V.     CONCLUSION.**

For the reasons discussed herein, the motion to enforce should be granted.

Respectfully submitted,

*/s/ John W. Shaw*_____
John W. Shaw
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com

OF COUNSEL:

Edward R. Reines
Michele Gauger
WEIL, GOTSHAL & MANGES LLP        *Attorney for Counter Defendant*
201 Redwood Shores Parkway         *MEDTRONIC, INC.*
Redwood Shores, CA 94065
(650) 802-3000

Dated: June 9, 2016