**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ORTHOPHOENIX, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) C.A. No. 13-1628 (LPS) |
| v. | ) |
| | ) |
| STRYKER CORPORATION, *et al.*, | ) |
| | ) |
| Defendant and | ) |
| Counterclaim Plaintiff | ) **REDACTED VERSION** |
| | ) |
| v. | ) |
| | ) |
| ORTHOPHOENIX LLC, IP NAVIGATION | ) |
| GROUP, LLC, MEDTRONIC, INC., | ) |
| | ) |
| Counterclaim Defendants. | ) |

**ORTHOPHOENIX, LLC'S AND IP NAVIGATION GROUP, LLC'S ANSWERING
BRIEF IN OPPOSITION TO MEDTRONIC INC.'S MOTION TO ENFORCE
SETTLEMENT AGREEMENT**

OF COUNSEL:

Marc A. Fenster
Adam Hoffman
Amir A. Naini
Jacob Buczko
Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
ahoffman@raklaw.com
anaini@raklaw.com
jbuczko@raklaw.com

BAYARD, P.A.

Richard D. Kirk (rk0922)
Stephen B. Brauerman (sb4952)
Vanessa R. Tiradentes (vt5398)
Sara E. Bussiere (sb5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

Dated: July 5, 2016
**Redacted Version Filed: July 18, 2016**

*Attorneys for Plaintiff Orthophoenix, LLC*

### TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT. ...............................................1

II.    STATEMENT OF FACTS INCLUDING NATURE AND STAGE OF THE PROCEEDINGS. ..........................................................................................................2

     A.     Orthophoenix's ███████████████████ .......................2

     B.     The Stayed █████████ against Medtronic ...............................4

     C.     Medtronic's Representations Regarding Indemnification ..............................4

     D.     The Parties' Settlement ████████████████ ............................5

III.    ARGUMENT. ...........................................................................................................7

     A.     The SLA Created No New Contractual Obligation Between Orthophoenix or IP Navigation Group On One Hand, and Medtronic On the Other. ...................7

     B.     The █████████ Phrase of Section 2.7 of the SLA Refers to ████████ ████████████████████. ...............................................10

     C.     Orthophoenix owes Medtronic Nothing Pursuant to Section 4.14 of the PPA. ..............................................................................................................12

     D.     Even the ██████████ Language of Section 2.7 Refers to █████████ ███████, The Court Should Reform the Contract Based on Mistake ..................13

     E.     Assuming For the Sake of Argument Medtronic is Entitled to Indemnity, it Would Include Only Reasonable Legal Expenses. ................................................15

IV.    CONCLUSION.......................................................................................................17

<u>**TABLE OF AUTHORITIES**</u>

<u>**PAGE**</u>

**Cases**

*Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*,
    794 A.2d 1141 (Del. 2002) ...................................................................... 13

*Continental Ins. Co. v. Rutledge & Co., Inc.*,
    750 A.2d 1219 (Del. Ch. 2000)................................................................. 8

*Cordis Corp. v. Boston Scientific Corp.*
    868 F. Supp. 2d 342 (D. Del. 2012)......................................................... 11

*E. Mem'l Consultants, Inc. v. Gracelawn Mem'l Park, Inc.*,
    364 A.2d 821 (Del. 1976) ........................................................................ 15

*Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*,
    702 A.2d 1228 (Del. 1997) ...................................................................... 11

*James J. Gory Mech. Contracting, Inc. v. BPG Residential Partners V, LLC*,
    2011 WL 6935279, (Del. Ch. Dec. 30, 2011) ......................................... 7

*Mahani v. Edix Media Grp., Inc.*,
    935 A.2d 242 (Del. 2007) ........................................................................ 15

*Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*,
    68 A.3d 665 (Del. 2013) ...................................................................... 14, 15

*Vehicle Interface Technologies, LLC v. Jaguar Land Rover N.A., LLC*,
    12-1285-RGA (D. Del. June 15, 2016)..................................................... 16

Plaintiff-Counterclaim Defendant Orthophoenix, LLC ("Orthophoenix") and

Counterclaim Defendant IP Navigation Group, LLC (IP Navigation) hereby jointly submit their

opposition to Medtronic Inc.'s ("Medtronic") Motion to Enforce Settlement Agreement (D.I.

274).

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT.

Medtronic's Motion to Enforce seeks an unfair windfall supported by neither law nor

fact.

In April 2013, Medtronic and Orthophoenix agreed to a ███████████ provision

in the parties' Patent Purchase Agreement ("PPA"). (D.I. 276, Ex. D.)  The ██████████

███████████████ of the PPA, requires ████████████████████████

████████████████████████████, ████████████████████

██████████████████████ The clause also covered only ███████████████

██████████████████████. Medtronic's defense of Stryker's

antitrust counterclaim, which was stayed shortly after filing, does not qualify for indemnity.

Neither do the "vast bulk of fees" incurred by Medtronic's counsel of choice, Weil Gotshal,

providing discovery to Stryker in the patent case.

Orthophoenix and IP Navigation expressly refused indemnification ████████████ in

early 2015. (Fenster Decl., Ex. A.) Undaunted, Medtronic continued to demand indemnity from

Orthophoenix and IP Navigation for this litigation.  Despite an apparent dispute regarding

indemnity, Medtronic bypassed counsel and sent bills directly to Orthophoenix's principals with

accompanying mis-statements, such as ████████████████████████████

██████████████████████ (*See* D.I. 276, Ex. F; Fenster Decl. Ex. B)

As all parties in this case worked towards settlement and dismissals ██████████,

Medtronic, ███████████████████████████████████████ receiving nothing from

Orthophoenix or IP Navigation, inserted into the Settlement ████████████ ("SLA") █

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████ The only such contract, referred to in the past

tense by this provision, ██████████ The parties' agreed dismissal, entered by the Court,

confirmed that the SLA only "acknowledged" a past obligation.  In other words, the SLA did not

create a new enforceable indemnity provision in favor of Medtronic, it acknowledged the past

obligation ██████.  Medtronic, however, is due nothing under indemnification clause

████████████

Despite Medtronic's earlier agreement ████████████████████████████

█████████████ (*see* D.I. 219, Ex. 10 § 10(h)), it filed this motion.  Medtronic

tendered no consideration in the SLA to either Orthophoenix or IP Navigation, yet it argues the

SLA █████████████████████.  Medtronic argues that, because it

managed to sneak the word ████ into § 2.7 of the SLA, Orthophoenix and IP Navigation now

jointly owe it over $500,000 in fees that otherwise would not be indemnified.  The facts and

black letter contract law forbid this result.  Medtronic's motion should be denied.

## II.   STATEMENT OF FACTS INCLUDING NATURE AND STAGE OF THE PROCEEDINGS.

### A.   Orthophoenix's Limited Indemnity Obligation ████████████

On April 25, 2013, Medtronic and Orthophoenix executed ████████████████

██████ ████████████████████████████████████████████████

██████ (*See generally* D.I. 276, Ex. D.)  Among the terms of that agreement, is ████████████,



which defines ███████████████████████████████████████████

███████████████████████████████



(*Id.* at ███ (bold emphasis added).

The terms of the █████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████ (*Id.*) The ████ also requires that, upon occurrence of such a defined

████████████████████████████████████████████████████████████

████████████████████████████████████████████"[1] (*Id.* (emphasis

---

[1] Medtronic's "Factual Background" section directs the Court to ██████████████ ███████ which Medtronic claims, without explanation, is another applicable indemnity agreement between Orthophoenix and Medtronic. (D.I. 275 at 3, citing D.I. 276, Ex. E at ███ .) This ██████████████ (presented in its entirety at D.I. 93, at ORTHO7722-7729), which Medtronic selectively excerpts, concerns only a limited number of patents, which were either not asserted in this case or stayed by December 12, 2014. (*See* D.I. 70, D.I. 80 at 2-3).

added).)  The ███████████████████████████████████████

████████████  (*Id.*)

**B.      The Stayed ████████████████  against Medtronic**

In October 2013, Orthophoenix sued Stryker Corporation ("Stryker") for infringement of

ten patents.  (D.I. 1.)  Orthophoenix disclosed in the complaint that it was the owner of these

patents through an assignment from Medtronic.  (*Id*. at ¶¶ 13-22.)  Stryker answered and filed

declaratory judgment counterclaims against Orthophoenix alleging noninfringement, invalidity,

and unenforceability of the patents.  (D.I. 8.)  In July 2014, Stryker added an antitrust

counterclaim against Orthophoenix, IP Navigation Group, and Medtronic.  On April 28, 2015,

the Court bifurcated and stayed Stryker's antitrust counterclaim against Medtronic.  (D.I. 101.)

The Court also stayed all discovery and proceedings that relate solely to the antitrust

counterclaim.  (*Id*.)

During the litigation, Medtronic never approached Orthophoenix or IP Navigation

concerning any selection of counsel ████████████████████ .

**C.      Medtronic's Representations Regarding Indemnification**

On January 23, 2015, outside counsel for Medtronic placed a call to litigation counsel for

Orthophoenix and discussed indemnification ██████████ .  (Fenster Decl. ¶ 2, Ex. A.)

Litigation counsel for Orthophoenix and IP Navigation responded that if any indemnification

obligation to Medtronic did exist, ████████████████████████████████

████████████████████████████████ .  (*Id.*)  On February 3, 2015,

litigation counsel for Orthophoenix followed up and advised counsel for Medtronic that all work

going forward would *not* be covered ██████████████████████████ requested

a meeting.  (Fenster Decl., Ex. B.)  Neither Medtronic nor its counsel responded to either

Orthophoenix's request for a meeting, its denial of indemnification or Orthophoenix's request ██

███████████████████████████████████████.  Instead, Medtronic proceeded to incur

considerable litigation expense, including reviewing and producing documents.  (*See* D.I. 276,

Ex. F, depicting approximately $340,000 in expense incurred from January 2015 to March 25,

2016.)

In mid-2015, well after Stryker's antitrust counterclaims against Medtronic were stayed,

Medtronic again contacted Orthophoenix concerning indemnification.  (*See* D.I. 276, Ex. F -June

25, 2015 email from Rodney Young, Chief Patent Counsel of Medtronic to Doug Croxall, CEO

of Marathon Patent Group.)  This time, Medtronic avoided communication with litigation

counsel who earlier denied indemnification.  Medtronic redirected its communications

concerning indemnification directly to Orthophoenix's parent, Marathon Patent Group.  In a June

25, 2015 email, Medtronic represented to Orthophoenix and Marathon Patent Group that ████████

████████████████████████████████  (*Id.*)  The email attached invoices incurred up to

June 2015 and, based on Medtronic's representation regarding indemnification, requested

████████████████.  (*Id.*)

Medtronic then continued to misstate to Marathon Patent Group the scope of its

purported indemnification obligation, leaving counsel for Orthophoenix off the communications.

For example, on February 25, 2016, Andy Horstman (Vice-President of IP Litigation for

Medtronic) advised Doug Croxall that █████████████████████.  (Fenster Decl. Ex.

C.)  On March 25, 2016, Andy Horstman again represented to Marathon Patent Group that

████████████████████████████████████████████████████████

████████████████████ (D.I. 276, Ex. F.)

**D.    <u>The Parties' Settlement</u>** ████████████████████████████

In ▮▮▮ the parties began to negotiate a settlement with defendant-counterclaim plaintiff Stryker. On ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Fenster Decl., Ex. D.) Medtronic's language remains the same ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮ in the final SLA, ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ (*See* D.I. 276. Exs. A, M.)  The SLA also clarifies, ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Medtronic further agreed to the language ▮▮▮▮▮ in a stipulation of dismissal between Medtronic, Orthophoenix, IP Navigation Group and Stryker, filed in Court (at D.I. 272) and ordered by the Court on May 12, 2016.

The SLA obligates ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. On May 9, 2016, Medtronic executed ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Fenster Decl. Ex. F.) The ▮▮▮▮▮▮▮▮▮ is not mentioned in the SLA nor does the ▮▮▮▮▮▮▮▮▮ mention

---

[2] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*See* Fenster Decl. Ex. E.)

[3] The description of Orthophoenix's indemnification obligation in ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (D.I. 219, Ex. 10, § 10(h).)

the SLA or any indemnity to Medtronic.  ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (D.I. 276,

Ex. D.)

      Upon learning that Medtronic was demanding indemnification from Orthophoenix

contrary to the express agreed terms ████████, on May 24, 2016, counsel for Orthophoenix

wrote counsel for Medtronic.  The May 24 letter confirmed that Medtronic did not qualify for

indemnification, explained why, and offered to "work this out in a manner acceptable to both

parties."  (D.I. 276, Ex. Q.)  Medtronic did not respond the letter and instead filed this motion.

## III.   ARGUMENT.

### A.   The SLA Created No New Contractual Obligation Between Orthophoenix or IP Navigation Group On One Hand, and Medtronic On the Other.

      "It is the blackest of black-letter law that an enforceable contract requires an offer,

acceptance and consideration."  *James J. Gory Mech. Contracting, Inc. v. BPG Residential*

*Partners V, LLC*, 2011 WL 6935279, at *2 (Del. Ch. Dec. 30, 2011)[4].  Medtronic argues that

"[i]n the settlement agreement, the Orthophoenix Parties agreed to ████████████████

████████████████████████████████████████"  (D.I. 275 at

10.)  Medtronic, however, fails to establish that the SLA creates any enforceable *new*

indemnification obligation of Orthophoenix.  In particular, Medtronic has not and cannot identify

any consideration it provided in exchange for any alleged new indemnification obligation of

Orthophoenix, or IP Navigation.  Therefore, no new contractual indemnification obligation

between Orthophoenix or IP Navigation on one hand, and Medtronic on the other, was formed ██

████

---

[4] ████████████████████████████████ (*See* SLA, § 6.8.)

"Consideration is 'a benefit to a promisor or a detriment to a promisee pursuant to the promisor's request.'" *James J. Gory Mech. Contracting, Inc.* 2011 WL 6935279, at *2 *citing Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000).  In the SLA, Medtronic promised no benefit to Orthophoenix or IP Navigation and incurred no detriment at the request of Orthophoenix or IP Navigation.  Orthophoenix, IP Navigation and Medtronic were all co-defendants against Stryker's antitrust counterclaims.  ███████████████████████████

████████  (SLA, § 2.3.)  Medtronic had no cross-claims against Orthophoenix or IP Navigation ███████████████████████████████████████████████████.  ████████████ ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ███████████████████████████████████████████.  Therefore there is no enforceable ████████████████████ obligation formed in the SLA between Orthophoenix and IP Navigation in favor of Medtronic.

Medtronic may argue that the █████████████████████████████████████████ was consideration for an alleged new indemnification obligation ██████████████████.  (*See* D.I. 275 at 4).  This argument fails because Medtronic agrees and recites that the ████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████" (Fenster Decl. Ex. F.)  Furthermore, the █████████ obligated Medtronic to ██████████████████████████████████████████████ ████████████████████████████████████████████. ████████████████████████████████████████████ ████████████████████████████████████████

8

███████████████ (D.I. 276, Ex. D, § 4.13.)  Such a "pre-existing duty" cannot constitute

consideration.  *James J. Gory Mech. Contracting, Inc.,* 2011 WL 6935279, at *2 (Del. Ch. Dec.

30, 2011) ("A commitment to honor a pre-existing obligation works neither benefit nor

detriment; therefore, a promise to fulfill a pre-existing duty … cannot support a binding contract

because consideration for the promise is lacking") (internal quotation omitted)

Medtronic may also argue that █████████ is somehow "a detriment to a

[Medtronic] pursuant to [Orthophoenix/IP Navigation's] request," but such an argument fails.  In

§ 2.3(a), Medtronic agreed ████████████████████████

███████████ (*See* D.I. 276, Ex. A at § 2.3(a)).  This was a grant of nothing on behalf

of Medtronic because it holds no interest in ████████████.  On the other hand ██

█████████████████████.  █████ can hardly be considered

a "detriment" to Medtronic, and even if so, it was an exchange ███████████ not

Orthophoenix or IP Navigation.

If Medtronic were to argue that ████████ was somehow consideration to

Orthophoenix and/or IP Navigation that argument would similarly fail.  ███████ only repeats

████████████████.  The ██████████████████

██████████████████████████████

████████████████████ (D.I. 276, Ex. D at §

1.1.)  These empty assurances ███████, ██████████████████

████████████████████████ is of

no benefit to Orthophoenix and/or IP Navigation nor a detriment to Medtronic.

The SLA was ██████████████████████

██████████████████████. No consideration

passed from Medtronic to Orthophoenix or IP Navigation. ████████████ therefore

cannot create a new ███████ obligation enforceable against Orthophoenix and IP

Navigation. Medtronic's motion, including its argument regarding jurisdiction, relies

exclusively on this legally untenable conclusion. Therefore, the motion should be denied in its

entirety.

**B.  The ████████████████████████ Refers to the Existing**
**Contractual Indemnification Provision ██████.**

Assuming, for the sake of argument, that the SLA did constitute an enforceable contract

between Orthophoenix and/or IP Navigation and Medtronic, ████████████████

██████████████████████████████████. ██

██████████████████████████████████

████████████████████████████

██████████████████████ (D.I. 276, Ex. A § 2.7 (emphasis

added).) This clause, introduced into the agreement by Medtronic, reasonably refers to ████

████████████████████.

██████████████ in the past-tense where the parties ████████

██████████. It does not refer to the ████████ (e.g., "hereby agree"). Furthermore,

████████████ states that in the SLA Orthophoenix and IP Navigation Group merely

████████████████████████████████

████████████████ (SLA, Exhibit C). This similarly refers to the existing

indemnity provision ████████, which the parties have been discussing for many

months. Furthermore, as explained above, Medtronic promised nothing of value to

Orthophoenix or IP Navigation in the SLA and incurred no detriment in the SLA. This supports

the interpretation of ███████████████████████████████████████

███████████ but rather merely acknowledging the past obligation ████████

      Though its meaning taken with the entire SLA is clear, assuming ████████████ is

ambiguous, extrinsic evidence supports the construction of the phrase to refer to the pre-existing

indemnification provision ████████  Ambiguity exists when a contractual provision is

"reasonably susceptible to at least two possible meanings" *Eagle Indus., Inc. v. DeVilbiss Health*

*Care, Inc.*, 702 A.2d 1228, 1231 (Del. 1997) (finding indemnification provision ambiguous).

Where there is an ambiguity, "the interpreting court must look beyond the language of the

contract to ascertain the parties' intentions." *Id.* at 1232.  "The primary consideration in

interpreting a contract is to 'attempt to fulfill, to the extent possible, the reasonable shared

expectations of the parties at the time they contracted.'" *Cordis Corp. v. Boston Scientific Corp.*

868 F. Supp. 2d 342, 2012 WL 2320799 (D. Del. June 19, 2012), *citing Comrie v. Enterasys*

*Networks, Inc.*, 837 A.2d 1, 13 (Del. Ch.2003).

      Explained above, the SLA itself evidences that the ████████████████ refers

to the existing ████████████ obligation and does not create a new obligation.  Moreover,

external evidence similarly supports such a construction.  For example, and also explained

above, the parties' dismissal, which was filed in and ordered by this Court, refers to the SLA as

merely "acknowledge[ing]" an indemnity obligation, not setting a new obligation.  Orthophoenix

and Medtronic also explicitly agreed, ███████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████ (D.I.

219, Ex. 10, § 10(h) (emphasis added).)

Further, the entirety of the bargain urged by Medtronic would be objectively unreasonable and frustrate the intent of the parties to be bound only ██████. Under Medtronic's reading of ████████, it would receive a much broader and more burdensome indemnity clause in exchange for nothing tendered to Orthophoenix and/or IP Navigation. This unreasonable result frustrates the parties' intentions. Moreover, prior to execution of the SLA, Medtronic repeatedly represented to Orthophoenix's parent, Marathon Patent Group, that it owed indemnity to Medtronic. The parties never discussed an entirely new obligation ████████ ████████. There is no evidence that the parties intended to be bound by a new indemnity provision, broader and more burdensome than the existing indemnity provision ██ ██. ████ can only reasonably refers to the existing indemnity provision ████████ ██.

**C. Orthophoenix owes Medtronic Nothing ████████.**

Given a) that there was no enforceable new indemnification obligation ████ ██ and/or b) § ████████ existing indemnification obligation between the parties ████████, and/or c) Medtronic agreed ████████ ████████, there can be no question that ████████ ██ remains the operative indemnity provision between Medtronic and Orthophoenix/IP Navigation. Under that limited provision, which requires Medtronic take specific steps in specific circumstances to obtain reasonable expenses, Medtronic is due no indemnification.

████████ includes only a limited indemnity obligation for Orthophoenix ████████. (████, ████). By its plain and unambiguous terms, ████████ ████████ (*Id.*) The only ████████ ████████ was Stryker's antitrust counterclaim against Medtronic, which was stayed by

April 2015.  Neither Orthophoenix nor IP Navigation can be liable for any indemnity after such time.

Moreover, ██████████ explicitly exempts from indemnification ██████████ ██████████ (*Id.*)  While Orthophoenix strongly disagrees with Stryker's counterclaim allegations, Stryker's antitrust counterclaim against Medtronic was due to alleged acts or omissions of Medtronic and therefore *not covered* ██████████.

Assuming for the sake of argument the antitrust counterclaim was covered, ██████████ ██ sets forth ██████████ ██████████ ██. Assuming some ██████████ does occur, <u>Orthophoenix</u> must provide ██████████." (*Id.*)  The indemnity provision only requires Orthophoenix to ██████████ (*Id.*)  Medtronic failed to ask Orthophoenix to provide counsel.  Instead, Medtronic chose its own counsel.  The indemnification provision does not require Orthophoenix to pay expenses of counsel chosen by Medtronic.

Further, explained above, Orthophoenix advised Medtronic that ██████████ ██████████. Counsel for Medtronic refused that request and instead performed work itself.  Medtronic declined indemnification ██████████ and chose instead to use its own counsel of choice, which it was free to do, at its own cost.  Therefore, for this additional reason, neither Orthophoenix nor IP Navigation group owes Medtronic any indemnification for this litigation.

**D. Even the ██████████ Refers to Itself and Not ██████, The Court Should Reform the Contract Based on Mistake**

"Courts of equity have the power to grant reformation of a contract." *Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002).  "There are two doctrines that allow

reformation. The first is the doctrine of mutual mistake. In such a case, the plaintiff must show

that both parties were mistaken as to a material portion of the written agreement. The second is

the doctrine of unilateral mistake. The party asserting this doctrine must show that it was

mistaken and that the other party knew of the mistake but remained silent." *Id*. Under both

doctrines, Orthophoenix/IP Navigation must show that there was a "specific prior understanding"

that "differed materially from the written agreement." *Id*.

Thus, Orthophoenix and IP Navigation are entitled to an "appropriate[5]" equitable

reformation of ██████████ if i) they thought that Medtronic was entitled to reimbursement

of ████████████████████████████████████ ii) either Medtronic

was similarly mistaken or Medtronic knew of Orthophoenix/IP Navigation's mistake and

remained silent; and iii) that Orthophoenix/IP Navigation and Medtronic had specifically

previously agreed that Medtronic would be not entitled ████████████████████

████████████████ *Id*.

All elements exist in this dispute.  First, Medtronic's brief admits that "[d]uring the

negotiations – and also after the execution of the settlement agreement – the Orthophoenix

Parties matter-of-factly acknowledged their commitment to reimburse Medtronic for its fees and

expenses." (D.I. 275 at 2.)  Second, Medtronic's brief, as well as communications from

Medtronic to Orthophoenix, described above, prove that Medtronic remained silent to

Orthophoenix/IP Navigation's mistake, repeatedly demanding reimbursement of all its litigation

---

[5] *See Scion Breckenridge Managing Member, LLC v. ASB Allegiance Real Estate Fund*, 68 A.3d
665, 680 (Del. 2013) ("We expressly overrule any decisions requiring that a case be
'exceptional,' and clarify that what makes a case 'appropriate' for reformation based on
unilateral mistake is the ability to show, by clear and convincing evidence, that despite the
existing written agreement one party maintains is accurate, that existing writing erroneously
expresses the parties' true agreement.").

fees and expenses.  Third, also described above, the parties had an explicit prior agreement

regarding indemnity and reimbursement of fees and expenses ██████████, ████████

████████████████████████████████████.

   Accordingly, assuming the Court construe ██████████ to be a new agreement,

Orthophoenix and IP Navigation respectfully seek "appropriate" equitable reformation of that

provision to refer to the parties existing indemnity agreemen ██████. *See Scion*

*Breckenridge Managing Member, LLC*, 68 A.3d at 680.  Such reformation would avoid the

unfair windfall in favor of Medtronic, which it gained through misrepresentations of fact creating

a mistake of fact, which it purposefully failed to correct.

### E.  Assuming For the Sake of Argument Medtronic is Entitled to Indemnity, it Would Include Only Reasonable Legal Expenses.

   "The rule in most jurisdictions, regardless of whether indemnity is based upon an implied

or an express agreement, is that when a claim is made against an indemnitee for which he is

entitled to indemnification, the indemnitor is liable for any <u>reasonable expenses</u> incurred by the

indemnitee in defending against such claim…" *E. Mem'l Consultants, Inc. v. Gracelawn Mem'l*

*Park, Inc.*, 364 A.2d 821, 825 (Del. 1976) (emphasis added).  "To assess a  fee's reasonableness,

case law directs the Court to consider the factors set forth in the Delaware Lawyers' Rules of

Professional Conduct, which, include:(1) the time and labor required, the novelty and difficulty

of the questions involved, and the skill requisite to perform the legal service properly;(2) the

likelihood, if apparent to the client, that the acceptance of the particular employment will

preclude other employment by the lawyer;(3) the fee customarily charged in the locality for

similar legal services;(4) the amount involved and the results obtained;(5) the time limitations

imposed by the client or by the circumstances;(6) the nature and length of the professional

relationship with the client;(7) the experience, reputation, and ability of the lawyer or lawyers

performing the services; and(8) whether the fee is fixed or contingent." *Mahani v. Edix Media Grp., Inc.*, 935 A.2d 242, 245-46 (Del. 2007)

Assuming for the sake of argument that Orthophoenix and/or IP Navigation does have an obligation to indemnify Medtronic in this litigation, such obligation reaches only to <u>reasonable expenses</u> incurred by Medtronic defending Stryker's claim against it.  Medtronic's invoices, which purportedly include over $500,000[6] of incurred expense defending against Stryker's counterclaims, which were stayed briefly after they were filed, are not reasonable expenses.

First, Medtronic utilized out-of-state counsel, which billed attorneys at hourly rates ranging from $648 per hour to $1,048 per hour.  Weil Gotshal incurred the vast majority of Medtronic's legal expenses in this matter.  "In most cases, the relevant [attorney] rate is the prevailing rate in the forum of the litigation." *Vehicle Interface Technologies, LLC v. Jaguar Land Rover N.A., LLC*, 12-1285-RGA (D. Del. June 15, 2016) *see also*,  factor (3) above.  Medtronic did not provide the rates for its Delaware counsel, which is a more appropriate rate for this jurisdiction.  Any award of attorneys' fees to Medtronic should take into account reasonable forum rates, which would undoubtedly be lower than $650-$1000, plus an hour for all legal tasks.

Second, factor (1) above directs the Court to consider "the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly."  In this case, Medtronic expended drastically large amount of fees on high-billing attorneys performing basic discovery functions, such as "Review Documents for Production"  (*See* D.I. 276, Exs. F and L, including entries for an attorney billing long hours at

---

[6] While Medtronic claims Orthophoenix and IP Navigation owe it $563,000.49 in expenses, its Motion presents invoices for only $449,681.22 ($136,183.10 and $221,860.85 in D.I. 276, Ex. F, $91,637.27 in D.I. 276, Ex. L).

$720 per hour "Review[ing] documents for production.")  In early 2015, Medtronic's antitrust claim was stayed and Medtronic remained active in this litigation only for discovery functions. Medtronic's opening brief admits "the vast bulk of the fees actually incurred by Medtronic were to address the extensive patent discovery sought by Stryker in response to the Orthophoenix Parties' patent infringement claim." (D.I. 275 at 12.) Reasonable attorneys' fees for the discovery work performed amount to well less than those invoiced by counsel for Medtronic.

Furthermore, after the claims against it were stayed, Medtronic incurred considerable unnecessary expense attending depositions and hearings that did not implicate Stryker's antitrust counterclaims.  (*See, e.g.,* D.I. 276, Ex. L "Attend Deposition of Daniel Ryan" on 2/3/16; Ex. F "Attend Claim Construction Hearing" on 12/3/15".)  Such expenditures are not reasonable in this forum and also not related to Stryker's antitrust claim against Medtronic.  They should not be included in any indemnification obligation.  Moreover, as Medtronic knew that Orthophoenix would indemnify it only for reasonable expenses arising from Stryker's antitrust claim, it should have kept accurate records depicting entries associated with Stryker's antitrust claim.  It failed to do so and thus all records dating after February 2015 (*see* Fenster Decl. Ex. B) should not be reimbursed.  This leaves approximately $110,000 of expense incurred prior to February 2015, which as described above, should be further reduced.

IV.   **CONCLUSION.**

For the reasons described in this Opposition, Medtronic's Motion to Enforce Settlement Agreement should be DENIED.

Dated:  July 5, 2016
Redacted Version Filed: July 18, 2016
OF COUNSEL:

Marc A. Fenster
Adam Hoffman
Amir A. Naini
Jacob Buczko
Russ, August & Kabat
12424 Wilshire Boulevard, 12th Floor
Los Angeles, CA 90025-1031
(310) 826-7474
mfenster@raklaw.com
ahoffman@raklaw.com
anaini@raklaw.com
jbuczko@raklaw.com

BAYARD, P.A.

*/s/ Stephen B. Brauerman*
Richard D. Kirk (No. 0922)
Stephen B. Brauerman (No. 4952)
Vanessa R. Tiradentes (No. 5398)
Sara E. Bussiere (No. 5725)
222 Delaware Avenue, Suite 900
Wilmington, DE 19801
(302) 655-5000
rkirk@bayardlaw.com
sbrauerman@bayardlaw.com
vtiradentes@bayardlaw.com
sbussiere@bayardlaw.com

*Attorneys for Plaintiff Orthophoenix, LLC*