IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORTHOPHOENIX , LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>STRYKER CORPORATION, et al.,<br><br>　　　　　　Defendant and<br>　　　　　　Counterclaim Plaintiff,<br><br>　　v.<br><br>ORTHOPHOENIX, LLC; IP NAVIGATION GROUP, LLC; MEDTRONIC, INC.,<br><br>　　　　　　Counterclaim Defendants. | C.A. No. 13-1628-LPS<br><br>**REDACTED PUBLIC VERSION** |

**MEDTRONIC'S REPLY IN SUPPORT OF ITS
MOTION TO ENFORCE SETTLEMENT AGREEMENT**

OF COUNSEL:

Edward R. Reines
Michele Gauger
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000

John W. Shaw
SHAW KELLER LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com

*Attorneys for Counter Defendant
MEDTRONIC, INC.*

Dated: July 15, 2016

# TABLE OF CONTENTS

**Page(s)**

I. Introduction ........................................................................................................................1

II. OP'S Opposition is meritless ............................................................................................2

    A. OP's Opposition Disregards The Consequences Of The Court's Confirmation Of Their Reimbursement Obligation ..................................................2

    B. OP Is Legally Obligated To ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮" ..............2

    C. OP's Proferred Reading Of The Settlement Agreement Clashes With Its Plain Terms .................................................................................................................6

    D. OP's Mistake Arguments Are Meritless .................................................................8

    E. OP Agreed To Pay All Of Medtronic's Expenses ................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acker v. Transurgical, Inc.*,
  No. Civ.A. 201-N, 2004 WL 1230945 (Del. Ch. Apr. 22, 2004) ................................................ 3

*Apfel v. Prudential-Bache Sec., Inc.*,
  616 N.E.2d 1095 (N.Y.1993) .................................................................................................... 3

*Cohen v. Sabin*,
  452 Pa. 447, A.2d 845, 849 (1973) ........................................................................................... 4

*Crown Coal & Coke Company v. Powhatan Mid-Vol Coal Sales, LLC*,
  929 F. Supp. 2d 460 (W.D. Pa. 2013) ....................................................................................... 4

*First Mortg. Co. of Pennsylvania v. Federal Leasing Corp.*,
  456 A.2d 794 (Supreme Court of Delaware 1982) ................................................................... 5

*Guidiville Band of Pomo Indians v. NGV GAMING*,
  531 F.3d 767 (9th Cir. 2008) ..................................................................................................... 4

*In re SemCrude, LP*,
  504 B.R. 39 (Bankr. D. Del. 2013) ............................................................................................ 3

*NCR Corp. v. Lemelson Med., Educ. and Research Found.*,
  2001 WL 1911024 (S.D.N.Y. 2001) .......................................................................................... 9

**Statutes**

17 CFR §4.14 ................................................................................................................................. 5

**Other Authorities**

Restatement (Second) of Contracts § 79 ....................................................................................... 3

Williston on Contracts 3ed § 113 .................................................................................................. 5

I.     **INTRODUCTION**

In the face of a remarkably clear obligation to reimburse Medtronic, Inc. ("Medtronic") for all its expenses related to this action, and confirmation of that obligation before and after the settlement agreement was signed, the Orthophoenix Parties ("OP") in bar-examination-style make every argument they can think up to try to deny responsibility.  Ironically, this shotgun approach increases their exposure because Medtronic has to spend even more reimbursable attorney time to obtain the compensation that was agreed upon as part of the settlement of this matter.

OP argues that they have no obligation to reimburse Medtronic because: (1) there was a lack of consideration for the agreement, (2), the contract was merely a meaningless repetition of an old agreement, (3) the Court should reform the contract because it was based on both unilateral and mutual mistake, and (4) ███████████████ should be interpreted to be limited by an after-the-fact debate over what is reasonable.

OP, without submitting declarations from their principals, portray themselves as unwitting simpletons.  In truth, they are extremely sophisticated licensing experts that tout their savvy and attention to detail.  Their cynical attempt to renege on their agreement to try to negotiate down from the amount they owe is actually a manifestation of their sharpness, not proof that they were oblivious dupes.  To illustrate the point, Mr. Spangenberg notoriously bragged to the NY Times about his willingness to "go thug" in negotiating patent deals and other such rough tactics.[1]

The motion should be granted and OP should be required to reimburse Medtronic for all its fees and expenses with prejudgment interest.

---

[1] http://www.nytimes.com/2013/07/14/business/has-patent-will-sue-an-alert-to-corporate-america.html?_r=0

## II. OP'S OPPOSITION IS MERITLESS

### A. OP's Opposition Disregards The Consequences Of The Court's Confirmation Of Their Reimbursement Obligation

OP's agreement to reimburse Medtronic for its expenses is confirmed by an Order of this Court entered pursuant to mutual stipulation that specifically ratifies the terms of the settlement agreement. (D.I. 272) ("as set forth specifically in the settlement between the parties"). This is an unambiguous legal obligation deserving of the full respect of an order of this Court. OP has not taken any steps to vacate that Order – nor would there be a basis given they are sophisticated parties that stipulated to it.

OP's attempt to collaterally attack their reimbursement agreement based on contract law thus misses the mark. They have failed to identify any authority for the proposition that a Court-approved allocation of fees and costs can be nullified by resort to contract arguments regarding an underlying settlement agreement.

### B. OP Is Legally Obligated To ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

Invoking contract law, OP argues that Medtronic did not provide adequate consideration in return for OP's agreement to ▇▇▇▇▇▇▇▇▇▇▇▇ related to this case. D.I. 280 at 7 ("In particular, Medtronic has not and cannot identify any consideration it provided in exchange for any alleged new indemnification obligation of Orthophoenix, or IP Navigation."). This argument is meritless.

As explained above, this full reimbursement obligation was confirmed by Order of this Court and any attempt to allege impropriety in this Court's Order – which was based on OP's own stipulation – has been waived. This should end the issue.

OP's argument based on an alleged lack of consideration fails even ignoring this Court's unchallenged Order. "Traditional contracts law teaches that a mere peppercorn suffices as

2

consideration." *In re SemCrude, LP*, 504 B.R. 39, 55 (Bankr. D. Del. 2013). "Courts do not inquire into the adequacy of consideration." *Id.* (*quoting* Restatement (Second) of Contracts § 79, Comment C). "'Even if the consideration exchanged is grossly unequal or of dubious value,' the parties to a contract are free to make their bargain." *Acker v. Transurgical, Inc.*, No. Civ.A. 201-N, 2004 WL 1230945, at *4 (Del. Ch. Apr. 22, 2004) (*quoting Apfel v. Prudential-Bache Sec., Inc.,* 616 N.E.2d 1095 (N.Y. 1993)). "Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny." *Id.*

Here, as demonstrated in its opening brief, Medtronic contributed far more than a peppercorn. OP does not deny that to ▇ settlement, it was critical to persuade Medtronic to participate in the settlement agreement. That alone proves Medtronic provided substantial consideration.

OP contends that Medtronic's ▇, D.I. 276-1 at § 2.3, ▇, and its numerous representations regarding ownership ▇ the relevant patent rights *id.* at § 5.2, do not count as consideration.[2] They make two arguments.

First, they argue that Medtronic's ▇ and representations ▇ are worthless so they do not qualify as consideration at all. ▇ ▇, standing alone, proves they are not worthless. Indeed, they were undisputedly critical to making the deal happen, which was ▇ to OP. Moreover, OP's argument that the ▇ and representations are "empty" are inconsistent with Stryker's motion to dismiss for lack of standing. In that motion, Stryker stated that "Medtronic retained important rights for itself, restricting Orthophoenix's ability to ▇

---

[2] OP also contends that Medtronic's agreement to the Second Amendment is disqualified as consideration because there was a pre-existing duty. Medtronic's cooperation in the form and timing of this agreement was not required by any pre-existing obligation.

3

████████████████" (D.I. 91 at 1. This Court never resolved that motion, but Stryker's filing of a motion unchallenged by OP pursuant to FRCP 11, that contends that Medtronic owned the patents, shows that Medtronic's ████████████████████████████████ ████████████████.

OP's position boils down to this: because they do not believe Medtronic had anything to ██████ or represent, Medtronic's legal commitments cannot constitute consideration. This ignores the rule that the compromise of even a doubtful claim is sufficient consideration for a new agreement:

> [T]he compromise of a doubtful claim asserted and maintained in good faith constitutes a sufficient consideration for a new promise, even though it may ultimately be found that the claimant could not have prevailed.

*Guidiville Band of Pomo Indians v. NGV GAMING,* 531 F.3d 767, 791 (9th Cir. 2008)*; see also Crown Coal & Coke Company v. Powhatan Mid-Vol Coal Sales, LLC*, 929 F. Supp. 2d 460, 470 (W.D. Pa. 2013) ("[I]t is... clear that a compromise of a doubtful or disputed claim is proper and that surrender or compromise of a doubtful claim and forbearance to sue thereon is sufficient consideration." (internal quotation marks omitted) (quoting *Cohen v. Sabin,* 452 Pa. 447, 307 A.2d 845, 849 (1973)).

Second, OP argues that, because the ██████ and representations supposedly do not benefit them, they do not qualify as consideration for their full reimbursement obligation. This takes too stingy a view of what constitutes a "benefit." It is undisputed that OP would not have ████████████████████████████████ if Medtronic did not ████████████████ and make all the representations it made about ████████████████. Because this was all part of one transaction, Medtronic's commitments were highly beneficial directly to OP.

4

Moreover, Medtronic's undertaking legal commitments as part of the settlement agreement is itself sufficient consideration even if the benefit had not gone so directly to OP. *See First Mortg. Co. of Pennsylvania v. Federal Leasing Corp.*, 456 A.2d 794, 795-6 (Del. 1982) ("This is equivalent to saying that if the promisee parts with something at the promisor's request, it is immaterial whether the promisor receives anything, and necessarily involves the conclusion that the consideration given by the promisee for a promise need not move to the promisor, but may move to anyone requested by the offer." (quoting Williston on Contracts 3ed § 113)).

There is another independent ground to reject OP's absence of consideration argument. It relates to their indemnity obligation. OP is correct that there was originally a dispute about the scope of indemnity in this matter. Medtronic believed that it was fully indemnified for its expenses in this action. OP disputed, among other things, the scope of such indemnity. Then, as part of the settlement, OP acknowledged its obligation pursuant to Medtronic's reading of the indemnity agreements. Resolution of a legitimate dispute is adequate consideration as the case cited above establish.

And Medtronic is in fact correct that OP owed it a full duty to indemnify. Under §4.14 of the PPA, which defines ▬▬▬▬▬▬▬▬ Medtronic is indemnified for expenses ▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬ of the rights to the assigned patents. D.I. 276-4 at MEDTR0007868. OP argues that this is narrowly limited. But this provision properly includes all the expenses related to this litigation. Medtronic was only a party to this case because of a third party antitrust claim brought against it. Logically, the consequent expenses related to this litigation are reimbursable. But Medtronic need not rely only on this provision; §4.14 further defines an ▬▬▬▬▬▬▬▬▬▬ as including any litigation commenced by OP

5

asserting the assigned patents in which Medtronic is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* There is no question that this definition is met, as Medtronic was required to continue to provide discovery related to the patents-in-suit after the Court's April 28, 2015 stay Order.

In addition, in OP's license of patent rights back to Medtronic, OP agrees ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ D.I. 276-7 at MEDTR0007691. In response, OP contends that the patents that give rise to this indemnity were stayed by December 12, 2014. This is wrong on both counts. The stay order based on IPR proceedings was not entered until April 28, 2015. D.I. 101. And, more to the point, the patents subject to this indemnity provision include patents-in-suit that were not stayed such as ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. D.I. 93-1 at ORTHO_007776-7818 [Schedule A].[3]

OP's invitation for the Court to second-guess the adequacy of consideration for their commitment to reimburse all of Medtronic's expenses is legally improper and should be rejected.

### C. OP's Proferred Reading Of The Settlement Agreement Clashes With Its Plain Terms

OP does not – and cannot – deny that the settlement agreement expressly provides that the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[3] Notwithstanding the clarity of these indemnity provisions, OP contends that it did not owe an indemnity because Medtronic did not accept the representation by OP's counsel Russ, August & Kabat. What is not stated is that the very same Russ, August attorney (noted for mass filing of plaintiff NPE cases) was adverse to Medtronic in a different case in 2013 (and is so again now). In that light, it was sensible for Medtronic to use Weil, Gotshal & Manges as its counsel, especially given that they already had an established and trusting relationship.

6

To attempt to renege on this obligation, OP contorts this language by arguing that the recital that this agreement is ███████ somehow nullifies the unmistakable reference to ███ and that the ████████████████████████████ For this point, OP relies on its own narrow misreading of the parties' earlier indemnity provision and argues that its interpretation somehow trumps the plain language of the provision. OP's disrespect for the plain language of its own agreement should be rejected out of hand.

To try to backfill this untenable position, OP points to extrinsic evidence. D.I. 280 at 11 ("extrinsic evidence supports the construction of the phrase to refer to the pre-existing indemnification provision of the PPA."). But it inexplicably ignores the best extrinsic evidence. Medtronic's counsel stated shortly before signing the settlement agreement that they would sign "so long as there is an agreement that Medtronic's fees and costs will indeed be reimbursed fully." D.I. 276-11 at 1 (Apr. 27, 2016 2:37 pm Reines email). And OP confirmed that it would pay the full amount of indemnity ████████ as discussed and already agreed to." D.I. 276-17 at 2 (May 11, 2016 11:53 am Croxall email).

Instead of addressing the highly probative extrinsic evidence documented in Medtronic's opening brief, OP identifies two items of extrinsic evidence. First, it relies upon this Court's dismissal order, which states that OP is "acknowledging" its indemnity obligation. This position is upside-down. By "acknowledging" that it owed an indemnity obligation set forth in the settlement agreement to reimburse Medtronic for its expenses, OP was *agreeing* to pay Medtronic's expenses (including the specific amount of $563,000.49 supported by invoices), not *refusing* to pay them.

Second, OP contends that the PPA provides that disputes regarding indemnity are to be governed by that agreement. However, nothing in the PPA or anywhere else prevents the parties

7

from entering into a subsequent written agreement, confirmed by this Court, that OP would live up to its indemnity obligations fully.

The extrinsic evidence squarely confirms the plain language of the settlement agreement. OP agreed to fully reimburse Medtronic and their refusal to do so is meritless.

### D. OP's Mistake Arguments Are Meritless

OP half-heartedly argues that it was mistaken when it agreed to fully reimburse Medtronic as part of the settlement agreement. That all these sophisticated licensing professionals (reputed for their bottom-line dollar approach) made a mistake when they negotiated and signed off on the agreement to reimburse Medtronic fully is, in a word, laughable.

Doug Croxall negotiated and signed the settlement agreement for Marathon Patent Group and Orthophoenix. Mr. Croxall made the statements promising payment before and after the settlement agreement was executed. Marathon ran this case through its Orthophoenix shell subsidiary. He is Chief Executive Officer of Marathon, which is a public company that describes itself on its web page as a "patent licensing company." This web page touts that "Marathon executives and advisors have decades of experience licensing patents and an impressive record of success."[4]

Mr. Croxall was advised throughout by Rick Sanchez, Marathon's Executive Vice President of Licensing and IP Counsel. He presents himself as having expertise in "formulating and executing monetization strategies, negotiating patent licenses, managing litigation and prosecution counsel."[5]

Erich Spangenberg signed the agreement on behalf of IPNav. He is founder of IPNav, whose business is patent licensing. Among his calling cards, he was quoted in a New York

---

[4] http://www.marathonpg.com/about/overview
[5] http://www.marathonpg.com/about/management-team

8

Times profile as bragging that, in his patent monetization efforts, he is willing to "go thug."[6] More need not be said.

In addition, the stipulation presented to this Court and upon which it relied in Ordering OP to reimburse Medtronic for its expenses in this case was signed by Steve Brauerman of Bayard and presumptively was reviewed and approved by Russ, August & Kabat, OP's other counsel. Russ, August & Kabat has never denied it reviewed the stipulation of dismissal before it was attached to the settlement agreement and/or after the settlement agreement was executed and before it was signed by Bayard for submission to this Court.

Given that the stipulation expressly refers to the settlement agreement as setting forth the obligation of OP to reimburse Medtronic for its expenses, it is reasonable to infer that Russ, August & Kabat reviewed at least that portion of the settlement agreement before authorizing the stipulation tendered to this Court. They have never denied it.

Because all these experienced professionals reviewed and signed documents acknowledging OP's obligation to reimburse fully Medtronic, its argument that it signed the settlement agreement by mistake is meritless. *See, e.g., NCR Corp. v. Lemelson Med., Educ. and Research Found.*, 2001 WL 1911024, *6-7 (S.D.N.Y. 2001). Any doubt about the weakness of this position is confirmed by the failure of Mr. Croxall, Mr. Spangenberg, or Mr. Brauerman to submit a declaration stating they were mistaken. The absence of such proof speaks loudly.

Mr. Fenster *does* submit a declaration. But it does not support OP's mistake argument. In it he states how he discussed indemnity with Medtronic's counsel. He does not deny seeing the settlement agreement or stipulation before they was executed and does not contend he was ever mistaken about anything.

---

[6] http://www.nytimes.com/2013/07/14/business/has-patent-will-sue-an-alert-to-corporate-america.html?_r=0

### E. OP Agreed To Pay All Of Medtronic's Expenses

OP's attempt to reduce the amount of its reimbursement ignores that it had the relevant invoices before it agreed to pay ▇ expenses and even repeatedly agreed to pay the specific liquidated amount of $563,000.49. As explained in Medtronic's motion, Medtronic offered to go through the invoices to answer any questions and no questions were ever asked – until now. The Orthophoenix team did not question the billing rates, efficiency or competence of Medtronic's attorneys. There is no legitimate basis to permit it to do so now, after it expressly agreed to pay ▇ expenses and the liquidated amount of $563,000.49. Medtronic's invoices more than reasonably support the expenses sought from OP. Moreover, the time to challenge the expenses expired with the agreement to pay all the expenses while in possession of the invoices.

Medtronic intends to submit to the Court, after this briefing is complete, a final amount due and owing (subject to prejudgment interest) that includes the expense of this motion. This motion is obviously an expense of this litigation that is fully reimbursable under the settlement agreement and this Court's dismissal Order. To the extent there are other reimbursable expenses in this litigation, including fees related to discovery disputes presented to the Special Master, a final accounting will include all reimbursable expenses.

                                        Respectfully submitted,

                                        */s/ John W. Shaw*_____
                                        John W. Shaw
                                        SHAW KELLER LLP
                                        300 Delaware Ave., Suite 1120
                                        Wilmington, DE 19801
OF COUNSEL:                          (302) 298-0700
                                        jshaw@shawkeller.com

Edward R. Reines
Michele Gauger
WEIL, GOTSHAL & MANGES LLP        *Attorney for Counter Defendant*
201 Redwood Shores Parkway          *MEDTRONIC, INC.*
Redwood Shores, CA 94065
(650) 802-3000

Dated: July 15, 2016