IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORTHOPHOENIX, LLC, | : |
| Plaintiff, | : |
| v. | : C.A. No. 13-1628-LPS |
| | : UNSEALED |
| STRYKER CORPORATION, *et al.*, | : 03/30/17 |
| Defendants. | : |
| STRYKER CORPORATION, | : |
| Counterclaim-Plaintiff, | : |
| v. | : |
| ORTHOPHOENIX, LLC, IP NAVIGATION GROUP, LLC, and MEDTRONIC, INC., | : |
| Counterclaim-Defendants. | : |

John W. Shaw, SHAW KELLER LLP, Wilmington, DE

Edward R. Reines and Michele Gauger, WEIL, GOTSHAL & MANGES LLP, Redwood Shores, CA

    Attorneys for Medtronic, Inc.

Richard D. Kirk, Stephen B. Brauerman, Vanessa R. Tiradentes, and Sara E. Bussiere, BAYARD, P.A., Wilmington, DE

Marc A. Fenster, Adam Hoffman, Amir A. Naini, and Jacob Buczko, RUSS, AUGUST & KABAT, Los Angeles, CA

    Attorneys for Orthophoenix, LLC.

**MEMORANDUM OPINION**

March 28, 2017
Wilmington, Delaware

*[signature]*

**STARK, U.S. District Judge:**

Presently before the Court is Medtronic, Inc.'s ("Medtronic") motion to enforce the parties' settlement agreement. (D.I. 274) Counterclaim co-defendants Medtronic and Orthophoenix, LLC ("Orthophoenix") dispute whether Orthophoenix agreed to pay Medtronic's legal fees as part of the settlement agreement in this case. Under the terms of the parties' Stipulation of Dismissal (D.I. 272)[1], the Court has jurisdiction to enforce their settlement agreement.

## I.  BACKGROUND[2]

### A.  The Orthophoenix/Medtronic Patent Purchase Agreement

In April 2013, Medtronic assigned patents to Orthophoenix. The parties signed a Patent Purchase Agreement setting forth the terms of the sale. (*See* D.I. 276-4, -5, -6) The Purchase Agreement includes an indemnity provision, which provides that, in the event of a third-party claim against Medtronic, Orthophoenix would "provide counsel to Medtronic to defend such claim and . . . pay for the reasonable legal expenses of such counsel and such claim," unless the claim arose from Medtronic's own actions. (D.I. 276-4 at § 4.14) A license agreement accompanying the Purchase Agreement also requires Orthophoenix to "defend, indemnify and hold Medtronic harmless from any claim, damage, or liability, including attorneys' fees, relating to [Orthophoenix's] enforcement or defense of any of the Patents." (D.I. 276-7 at § 3.5)

---

[1] The Court's dismissal order, drafted by the parties, states in pertinent part: "Orthophoenix LLC and IP Navigation Group LLC acknowledged a contractual obligation to indemnify Medtronic Inc. for its costs, expenses and attorneys' fees incurred in this matter." (D.I. 272 at 1)

[2] This background is taken from the parties' briefing on the motion.

1

### B. Medtronic's Pursuit of Indemnification in this Lawsuit

In October 2013, Orthophoenix filed a lawsuit alleging that Defendant Stryker Corporation ("Stryker") infringed the patents Medtronic assigned. Stryker answered with antitrust counterclaims against Orthophoenix and Medtronic.[3] (*See* D.I. 24 at ¶¶ 118-138)

In September 2014, Orthophoenix moved to bifurcate and stay discovery of the antitrust claims. (*See* D.I. 41) Meanwhile, the patent case proceeded. Although Medtronic was not a party to the patent case, Stryker sought discovery from Medtronic. (*See* D.I. 281-1) In January 2015, Medtronic called Orthophoenix's litigation counsel to verify that Orthophoenix would indemnify Medtronic for the fees Medtronic incurred in responding to Stryker's discovery requests. (*See id.*) Orthophoenix's litigation counsel responded that Orthophoenix would ***not*** indemnify Medtronic, because the fees arose from Orthophoenix's patent case against Stryker, and the Purchase Agreement's indemnity provision covered only fees "arising directly from or in connection with a third party claim *against Medtronic*." (D.I. 281-2 (emphasis added)) Orthophoenix's counsel contended that only the antitrust counterclaim in which Medtronic was named as a co-defendant could be considered a claim *against Medtronic*, and that, as a result, Orthophoenix was not responsible for costs Medtronic incurred as a result of Orthophoenix's patent case against Stryker. (*See id.*)[4]

---

[3]Stryker also named as a co-defendant IP Navigation Group, LLC ("IPNav"), a company related to Orthophoenix.

[4]Medtronic did not respond to Orthophoenix's litigation counsel, but Medtronic's inside counsel later sought indemnification directly from Marathon Patent Group, Orthophoenix's parent company. (*See* D.I. 276-8 at 2, 36; D.I. 281-3 at 2)

### C. The Stryker/Orthophoenix/Medtronic Settlement Agreement

In early 2016, the parties began to negotiate a settlement. In the days before they signed a final agreement, Orthophoenix and Medtronic discussed whether and how Medtronic would be reimbursed for the legal fees it incurred during the litigation. On April 27, Medtronic emailed Marathon Patent Group, Orthophoenix's parent company, regarding the relevant provisions of the draft agreement.[5] In the email, Medtronic discussed its expectations regarding reimbursement:

> You'll note we did not include in our draft a date for the payment to Medtronic reimbursing its fees and costs. We think it would be appropriate to set such a date, but it doesn't have to be in the main agreement. I'd suggest we agree in a separate letter that the reimbursement payment will be made within 30 days of Medtronic providing a final statement. You have statements for past fees and expenses. Given the heavy discovery requirements of the last several weeks, we will have additional statements to submit to you. Certainly, if you can pay any of the past statements earlier, Medtronic would appreciate it, but it is willing to complete the agreement with Stryker and then submit a final statement to you so long as there is an agreement that Medtronic's fees and costs will indeed be reimbursed fully.

(D.I. 276-11 at 2)

Five days later, Medtronic emailed Marathon to confirm the logistics of the reimbursement. Medtronic wrote that it "need[ed] to confirm a date for reimbursement of Medtronic's fees and costs incurred in relation to Ortho's litigation," and asked Marathon to propose one. (D.I. 276-12 at 3) Marathon responded by proposing that it would reimburse

---

[5]In its brief, Orthophoenix makes much of the fact that Medtronic approached Marathon and Marathon's CEO, Doug Croxall, rather than speaking with the members of Orthophoenix's outside litigation team who had participated in the parties' earlier discussions of indemnification under the Patent Purchase Agreement. Orthophoenix does not, however, allege that Medtronic misled Marathon's CEO regarding the parties' earlier discussions.

3

Medtronic ten days after Stryker sent the settlement payment. (*See id.* at 2; *see also* D.I. 276-10 at 6) Marathon also requested "full detail of all invoices." (D.I. 276-12 at 2) Medtronic responded that Marathon "should have invoices from earlier in the case" and promised that future invoices would "be [at] that same level of detail." (*Id.*) Medtronic also confirmed that "ten days works for Medtronic for the reimbursement of its fees and costs." (*Id.*)

On May 4, Medtronic asked Marathon to confirm that Marathon had received copies of invoices for Medtronic's legal fees for the month of April. (*See* D.I. 276-13 at 2; *see also* D.I. 276-14) Marathon responded by asking Medtronic how the new invoices related to earlier invoices, and whether additional invoices were forthcoming. Marathon wrote:

> Can you send any additional invoices? So to be clear it is this invoice plus the email from the other day? I am just trying to get all the invoices from MedTronic and want to make sure we have all of them.

(D.I. 276-13 at 2)

The next day, Medtronic sent Marathon a compilation of all of the invoices for which it sought reimbursement. (*See* D.I. 276-16 at 2) Medtronic stated that, per the earlier discussion regarding the timing of the payment, Medtronic expected Marathon to pay the invoiced amount within ten days of the date Marathon received Stryker's settlement payment. (*See id.*) Medtronic also explained that it expected Marathon to pay any additional legal expenses incurred during the settlement process, and would forward the associated invoices when they became available. (*See id.*) Marathon did not object.

On May 9, the parties signed a Settlement Agreement and License Agreement ("Settlement Agreement"). (*See* D.I. 276-15) Section 2.7 states:

4

> [B]y contract, the Orthophoenix Parties and IP Navigation Parties have agreed to indemnify and will reimburse the Medtronic Parties for all fees and expenses incurred with regard to the Subject Litigations and the Medtronic Parties will not pay their own fees, costs and expenses.

(D.I. 276-1 at § 2.7) Exhibit C to the Settlement Agreement indicates that through this provision, "Orthophoenix LLC and IP Navigation Group LLC acknowledged a contractual obligation to indemnify Medtronic Inc. for its costs, expenses and attorneys' fees incurred in this matter." (*Id.* at 43) The language of this Exhibit C later was included in the Court's dismissal order, which was drafted by the parties, without objection from any party. (*See* D.I. 272 at 1)

### D. Communications Following Settlement

On May 11, Medtronic contacted Marathon to ascertain whether Stryker had wired its settlement payment to Marathon, and sought confirmation that Marathon would pay the legal fees outlined in Medtronic's May 5 email within ten days of Marathon's receipt of Stryker's payment. (*See* D.I. 276-16 at 2) Marathon responded that Stryker's wire was "pending as of this morning," and then sent an immediate follow-up email asking whether Medtronic had sent "all invoices." (*Id.*; D.I. 276-2 at 4) Medtronic clarified the total amount of existing invoices, noting that a few additional invoices would arrive later. (*See* D.I. 276-2 at 3-4) Medtronic concluded that the invoices to date summed to about $563,000, then reiterated its question about when Marathon would send the payment. (*See* D.I. 276-2 at 3) Marathon responded that it would do so "within ten days as discussed and already agreed to." (*Id.*) Later that day, Marathon asked Medtronic where Marathon should direct any questions regarding the invoices. (*See* D.I. 276-17 at 2) Medtronic responded that Marathon should contact Medtronic's outside counsel, with whom Marathon was already in contact, with questions. (*See id.*)

On May 23, Medtronic asked Marathon to "send [Medtronic] confirmation of the payment." (D.I. 276-18) The following day, one of Medtronic's outside attorneys, Ed Reines, called Marathon's CEO, Doug Croxall, for more information regarding the payment. (*See* D.I. 276 at ¶ 1) Reines testifies that Croxall told him that payment would be made "that day" or "the next day," and that Marathon would wire the money to the Medtronic account listed in the Medtronic/Orthophoenix Purchase Agreement. (*Id.* at ¶¶ 1-2) Reines stated that Medtronic preferred that Marathon use a different account, and sent Croxall alternative account information via email. (*See* D.I. 276-2 at 2)

A few hours later, Croxall forward Reines a letter indicating that Marathon no longer intended to send the payment. (*See* D.I. 276-19) The letter, signed by Marathon's outside counsel, stated that outside counsel did not believe Orthophoenix was required to reimburse Medtronic for any of its expenses, pursuant to the terms of the parties' earlier Patent Purchase Agreement. (*See id.* at 4) The letter stated that, in order "[t]o facilitate Orthophoenix' review of Medtronic's indemnification request, [Medtronic should] identify which of the expenses relates to investigation and defense arising from Stryker's antitrust claim against Medtronic." (*Id.*)

E. **The Present Motion**

On June 9, 2016, Medtronic filed the instant Motion to Enforce the Parties' Settlement Agreement. (D.I. 274) Medtronic argues that the Settlement Agreement requires Orthophoenix to pay all of the fees and expenses Medtronic incurred in connection with this case, plus interest. Orthophoenix responds that the Settlement Agreement does not require Orthophoenix to pay Medtronic's legal expenses, but instead simply confirms Orthophoenix's obligations to

6

reimburse any amounts due under the Medtronic/Orthophoenix Patent Purchase Agreement. The Court heard oral argument on the pending motion on September 26, 2016. (*See* D.I. 295 ("Tr."))

## II. LEGAL STANDARDS

A district court has jurisdiction to enforce a settlement agreement in a case pending before it. *See Hobbs & Co. v. Am. Inv'rs Mgmt., Inc.*, 576 F.2d 29, 33 & n.7 (3d Cir. 1978). Motions for the enforcement of settlement agreements resemble motions for summary judgment, and courts employ a similar standard of review. *See Tiernan v. Devoe*, 923 F.2d 1024, 1031-32 (3d Cir. 1991). Accordingly, a court must treat all of the non-movant's assertions as true, and, "when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." *Id.* at 1032. Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where material facts are in dispute, the Court should hold an evidentiary hearing before enforcing the settlement agreement. *See Tiernan*, 923 F.2d at 1031.

## III. DISCUSSION

Orthophoenix cites a number of reasons it contends it is not obligated to pay Medtronic's legal fees. As discussed below, all are meritless. Medtronic is entitled to receive all of its legal fees, plus interest.

### A. The Settlement Agreement is Enforceable against Orthophoenix

Orthophoenix argues that the Settlement Agreement is not an enforceable contract between Medtronic and Orthophoenix but, instead, "was an agreement between those parties, on one hand and Stryker on the other." (D.I. 280 at 9; *see also* D.I. 276-1) According to Orthophoenix, Medtronic provided Orthophoenix no consideration in exchange for the

purportedly expanded indemnification obligations Orthophoenix undertook under the Settlement Agreement. Medtronic responds that its commitments under the Settlement Agreement, including releasing claims against Stryker and making various representations regarding the parties' rights to the disputed patents, constitute adequate consideration.

"Absent fraud or unconscionability, the adequacy of consideration is not a proper subject for judicial scrutiny." *Underbrink v. Warrior Energy Servs. Corp.*, 2008 WL 2262316, at *10 (Del. Ch. May 30, 2008).[6] Orthophoenix alleges neither fraud nor unconscionability in this case. Instead, Orthophoenix argues that Medtronic's acquiescence was immaterial to the settlement because Medtronic merely relinquished unasserted claims and acknowledged undisputed legal relationships between Medtronic and Orthophoenix. (*See* D.I. 280 at 7-10) Essentially, Orthophoenix argues that Medtronic's participation in the Settlement Agreement was only nominal, and urges the Court to infer from this that Orthophoenix did not make any binding commitments to Medtronic.

The factual circumstances do not support Orthophoenix's view that Medtronic's commitments under the Settlement Agreement were unimportant or valueless. It is undisputed that Stryker's willingness to sign the Settlement Agreement hinged on Medtronic's participation, which indicates that Stryker perceived some value in obtaining Medtronic's assurances and release of future claims. (*See* D.I. 282 at 6) The record also includes independent evidence that Stryker took those concerns seriously: Stryker filed a Motion to Dismiss this case (unresolved at the time of the settlement), which alleged that Orthophoenix lacked standing to sue because

---

[6]The Settlement Agreement contains a choice of law provision, providing that it is to be "construed under the law of the State of Delaware." (D.I. 276-1 at § 6.8) Neither party disputes that Delaware law should apply. (*See* D.I. 275 at 12-13; D.I. 280 at 7)

Medtronic retained rights to the patent-in-suit. (*See* D.I. 91 at 1)[7] This suggests that Stryker believed Medtronic might assert a claim under the patents-in-suit against Stryker. Taken together with Medtronic's waiver of rights to pursue attorneys' fees and costs from Stryker (*see* D.I. 272 at 2), the undisputed facts establish that Medtronic's participation in the Settlement Agreement was valuable to Stryker, and constituted part of the consideration that Stryker accepted in exchange for its obligations under the Settlement Agreement.

Given that Medtronic contributed valuable consideration to the settlement, the Court will not accept Orthophoenix's invitation to dissect the Settlement Agreement in order to ascertain whether Medtronic's participation is "sufficient" inducement to justify Orthophoenix's commitment to indemnify Medtronic for its legal fees. Nor will the Court speculate as to whether Orthophoenix could have obtained the same settlement terms without Medtronic's participation. Complex, multi-party litigation often gives rise to settlement agreements that include multilateral exchanges of value, and it is not for the Court to evaluate each individual exchange. As such, Orthophoenix's contractual commitments to Medtronic must be enforced.

### B. The Settlement Agreement Obliges Orthophoenix to Pay Medtronic's Legal Fees

The portion of the Settlement Agreement pertaining to Orthophoenix's reimbursement of Medtronic's fees and expenses states that "***by contract***, the Orthophoenix Parties and IP Navigation Parties have agreed to indemnify and will reimburse the Medtronic Parties for ***all fees and expenses*** incurred with regard to the Subject Litigations and ***the Medtronic Parties will not pay their own fees, costs and expenses***." (D.I. 276-1 at § 2.7) (emphasis added) Medtronic

---

[7]Orthophoenix at no point characterized the motion as frivolous. (Tr. at 50-51)

9

contends that the words "all" and "will not pay" indicate that Orthophoenix agreed to reimburse every fee and expense Medtronic incurred as a result of this case. Orthophoenix contends, instead, that the words "by contract" merely acknowledge Orthophoenix's Patent Purchase Agreement with Medtronic, and require Orthophoenix to reimburse only those fees that would be due under that Patent Purchase Agreement.

Considering both the language of the agreement itself and extrinsic evidence related to its formation, there is no genuine dispute that Medtronic's interpretation is the correct one. First, the Settlement Agreement explicitly states that Orthophoenix must reimburse "all" of Medtronic's fees and expenses. Second, the term "by contract" most naturally reads as an expression of the parties' intent to create a binding obligation through the Settlement Agreement, and as clarification that the Settlement Agreement (as opposed to some statutory or equitable requirement) defines the scope of that obligation. Finally, because elsewhere in the Settlement Agreement the parties referred to the Patent Purchase Agreement by name, their use of the general term "contract" in the disputed provision indicates that they did not mean there to refer to the Patent Purchase Agreement. (*See, e.g.*, D.I. 276-1 at § 5.4(D))

The extrinsic evidence is consistent with this interpretation. The parties' discussions while drafting the Settlement Agreement demonstrate both that Medtronic believed that the agreement would require Orthophoenix to reimburse all of its fees, and that Orthophoenix should have been aware of Medtronic's expectations. In an email on April 27, Medtronic sent Marathon a "redlined" version of the draft Settlement Agreement, which highlighted Medtronic's proposed changes and comments, including the language regarding reimbursement. (*See* D.I. 281-4 at 7-8) In a follow-up email later in the day, Medtronic again confirmed that it expected to be

reimbursed for its expenses, explaining that it was flexible regarding the timing of the reimbursement, "so long as there is an agreement that Medtronic's fees and costs will indeed be reimbursed fully." (D.I. 276-11 at 2) In the same email, Medtronic referred to the past invoices that it expected to be reimbursed, as well as its expectation that Orthophoenix would pay the costs associated with recent discovery efforts. (*See id.*) Since the antitrust action was stayed at the time, the referenced recent discovery effort could only reasonably be understood to be related to the patent case. Medtronic was seeking an agreement that those costs would be "fully" reimbursed. (*Id.*)

Orthophoenix contends that even if Medtronic's interpretation of the parties' agreements is correct, Medtronic is not entitled to recovery at this time because Medtronic did not satisfy the conditions precedent to having its counsel of choice paid for by Orthophoenix. (*See* D.I. 280 at 4-5) (citing D.I. 281 ¶ 2, Exs. A & B; D.I. 276 Ex. F) In Orthophoenix's view, the Patent Purchase Agreement required Medtronic to request indemnification, and thereafter provided Orthphoenix the opportunity to designate counsel to represent Medtronic. (*See* D.I. 280 at 4-5, 13) Further, according to Orthophoenix, here Orthophoenix advised Medtronic that it would select Russ, August & Kabat – Orthophoenix's litigation counsel – to represent Medtronic. (*See id.*) By retaining a different firm, Orthophoenix continues, Medtronic waived its opportunity to have its legal fees and costs covered by Orthophoenix. The Court disagrees. First, even were Orthophoenix's view correct, the parties' subsequent execution of the Settlement Agreement – by which Orthophoenix unambiguously agreed to pay Medtronic's legal fees and costs – would render the prior conduct irrelevant. Second, it appears, as Medtronic argues, that potential conflicts of interest would have made it (at best) inadvisable for the same firm to represent both

11

entities. (*See* D.I. 282 at 6 n.3; Tr. at 33-35)

Thus, the Court determines that the only reasonable interpretation of the Settlement Agreement obliges Orthophoenix to pay all of Medtronic's fees and expenses related to this litigation.[8]

### C. Orthophoenix is Not Entitled to Reformation

Orthophoenix argues that, even assuming that the Settlement Agreement is enforceable and requires full reimbursement of Medtronic's fees, the Court should reform the contract on the grounds of unilateral mistake.[9] Under the doctrine of unilateral mistake, a Court may reform a contract if one party was mistaken as to the meaning of a contractual provision, and the other party knew of the mistake but remained silent. *See Cerberus*, 794 A.2d at 1151. Under this alternative, Orthophoenix alleges that it was mistaken about the meaning of the indemnification provisions of the Settlement Agreement.

Even taking as true Orthophoenix's representation about its own confusion, Orthophoenix has not alleged facts that support Orthophoenix's assertion that Medtronic knew of Orthophoenix's mistake. As outlined above, Medtronic made clear during the drafting process that Medtronic believed that the Settlement Agreement would require Orthophoenix to reimburse

---

[8]Because the Court finds that the Settlement Agreement governs Orthophoenix's reimbursement obligation, the Court need not reach the question, addressed in Orthophoenix's brief, of what obligation the Patent Purchase Agreement would (instead) impose.

[9]Orthophoenix also argues that the doctrine of mutual mistake applies in this case. Under the doctrine of mutual mistake, a Court may reform a contract if the parties to the contract were both mistaken as to the meaning of the contract. *See Cerberus Int'l, Ltd. v. Apollo Mgmt., L.P.*, 794 A.2d 1141, 1151 (Del. 2002). Here, Medtronic correctly understood that the Settlement Agreement requires Orthophoenix to pay all of Medtronic's legal fees, making the doctrine of mutual mistake inapplicable.

*all* of Medtronic's attorneys' fees. In addition to stating so in its correspondence, Medtronic identified for Orthophoenix which invoices it expected Orthophoenix to pay pursuant to the terms of the Settlement Agreement and forwarded copies for Orthophoenix's review. (*See, e.g.*, D.I. 276-11 at 2; D.I. 276-16) Orthophoenix did not question or object to Medtronic's representations about what reimbursement Medtronic would receive. To the contrary, Orthophoenix's parent, Marathon, was reaffirming that it *would* pay Medtronic's fees and costs just hours before Orthophoenix backed out of its agreement. (*See* D.I. 276 at ¶¶ 1-2) Given this, there is no reason to believe that Medtronic was aware of Orthophoenix's objectively unreasonable view that Medtronic did not expect Orthophoenix to pay all of its legal fees. As such, there is no genuine dispute of material fact that Orthophoenix is not entitled to reformation of the Settlement Agreement based on unilateral mistake.[10]

### D. Medtronic is Entitled to Receive All of Its Legal Fees

The Settlement Agreement requires Orthophoenix to pay "all" of Medtronic's legal fees. The undisputed evidence shows that Orthophoenix was aware of the approximate amount in question prior to signing the Settlement Agreement. (*See* D.I. 276-16 at 2) Although the total amount was not finalized at the time the Settlement Agreement was signed, Medtronic advised Orthophoenix of the type of expenses that would be invoiced in the future and Orthophoenix was aware of the rates charged by Medtronic's attorneys. (*Id.*) Orthophoenix did not object based on

---

[10]Nor does the record permit a reasonable factfinder to agree with Orthophoenix's contention that Medtronic somehow "managed to *sneak* the word 'all' into § 2.7" of the Settlement Agreement. (D.I. 280 at 2) (emphasis added) There is no basis to find that Orthophoenix's experienced counsel, nor the "extremely sophisticated licensing experts" at Orthophoenix and Marathon (D.I. 282 at 1), were fooled by some nefarious action taken by Medtronic.

the information it had before it, does not allege facts suggesting that it could not have fairly anticipated the final total, and does not argue that any of Medtronic's fees or expenses were incurred in bad faith. (*See* Tr. at 60, 64-65) For these reasons, the Court will not rewrite the contract to reduce Orthophoenix's obligation to reflect an extrinsic standard of "reasonableness."

### E. Medtronic is Entitled to Interest

Medtronic requests prejudgment interest at a rate of 6% running from May 21, 2016 on $563,000.49 and from May 23, 2016 on $9,429.50. (*See* D.I. 275 at 12) Orthophoenix contends that prejudgment interest should only apply to "readily ascertainable" sums and that the expenses here were not "readily ascertainable" because they represent all legal fees, not the reasonable fees associated only with work subject to indemnification under the Purchase Agreement. (*See* D.I. 294 at 1)

Having already rejected Orthophoenix's position and concluded that Orthophoenix is obligated by the ***Settlement Agreement*** to pay ***all*** of Medtronic's expenses, the Court agrees that an award prejudgment interest is warranted here. "In Delaware, prejudgment interest is awarded as a matter of right. Such interest is to be computed from the date payment is due." *Esprit Health, LLC v. Univ. of Delaware*, 2015 WL 9305644, at *1 (D. Del. Dec. 21, 2015) (quoting *Citadel Holding Corp. v. Roven*, 603 A.2d 818, 826 (Del. 1992)). Some courts have limited awards of prejudgment interest to only "those cases in which the amount of damages owed by the defendant is so readily ascertainable . . . that the defendant could have opted to simply pay the plaintiff immediately, rather than force him or her to obtain judicial relief through litigation." *Lum v. Nationwide Mut. Ins. Co.*, 1982 WL 1585, at *5 (Del. Super. Ct. Apr. 27, 1982). Here, Orthophoenix could have done just that: paid the invoiced bills ten days after receiving the

settlement payment from Stryker, as it had agreed to do. Instead, Orthophoenix repudiated its obligation to reimburse Medtronic. (*See* D.I. 276-19) The Court determines that prejudgment interest should begin to run on the date of that repudiation, May 24, 2016, on the total amount invoiced to Orthophoenix as of that date, $572,429.99. (*See* D.I. 276-2 at 3; D.I. 293 at 2) As Orthophoenix does not dispute that the Delaware legal rate, defined in 6 Del. C. § 2301(a), is the appropriate interest rate here (*see* D.I. 294), the Court will use that rate. *See Esprit Health*, 2015 WL 9305644, at *2. Medtronic represents that the Delaware legal rate applicable here is 6%. (*See* D.I. 280 at 13; D.I. 293 at 2)

The Court also finds that Medtronic is entitled to post-judgment interest. In the Third Circuit, "post-judgment interest begins to run on a judgment awarding attorney's fees where that judgment fixes the amount owed to the prevailing party." *Eaves v. Cty. of Cape May*, 239 F.3d 527, 534 (3d Cir. 2001). Thus, the Court will award post-judgment interest to Medtronic, running from the date of its order.

## V. CONCLUSION

For the reasons discussed above, the Court will grant in full Medtronic's Motion to Enforce the Settlement Agreement. An appropriate Order follows.